Filed at_____ 5:02 P M
_____ 6/17 ___, 20 16
_____ BCL
Deputy Clerk, U.S. District Court
Middle District of Georgia

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

KENNETH JOHNSON and JACQUELYN )
   JOHNSON,
KENNETH JOHNSON and JACQUELYN )
JOHNSON, as Personal Representatives of
   KENDRICK LAMAR JOHNSON, and )
   JACQUELYN JOHNSON, as Administrator
   for and on Behalf of The Estate of, )
   KENDRICK LAMAR JOHNSON,
                      )
        Plaintiffs
v. )

                      )

BRANDEN BELL;
BRIAN BELL; )
RICK BELL, in his individual capacity and
   Parent of Gbit Bell and Brian Bell; )     **CIVIL ACTION**
RYAN HALL;
CHRIS PRINE, in his individual and )     **FILE NO.:** _7:16-cv-141_
   official capacity;
FRANK SIMMONS, in his individual and )
   official capacity;
WILLIAM "WES" TAYLOR in his individual )
   and official capacity;
JAMES D. THORNTON, in his individual and )     JURY TRIAL DEMANDED
   official capacities;
THE LOWNDES COUNTY SCHOOL               *
DISTRICT )
FRED WETHERINGTON, indi-    *
vidually and in his official capacity as the        *
Chairman of Lowndes County Board of Education individual capacities;
JAY FLOYD
RAY MCGRAW, in his official and individual )
   capacities;
JACK WINNINGHAM, in his official and )
   individual capacities;
WANDA EDWARDS, in her official and )
   individual capacities;
STRYDE JONES, in his official and individual )
   capacities;
AARON PRITCHETT, in his official and )
   individual capacities;
LOGAN HENDERSON, in his official and )
   individual capacities;
RANDY LIGHTSEY, in his official and )

individual capacities;
MICHAEL ADAMS, in his official and            )
    individual capacities;
JACK PRIDDY, in his official and individual   )
    capacities;
KERRY QUINN, in his official and individual   )
    capacities;
CHRISTI GRIFFIN, in her official and          )
    individual capacities;
BRYCE WHITENER, in his official and           )
    individual capacities;
CHRISTOPHER BURKE, in his official and        )
    individual capacities;
ROY BLACK in his official and individual      )
    capacities;
HOWARD FISHER, in his official individual     )
    capacities;
 MARK MASKULE, in his                         )
    official and individual capacities;
ROY HART, in his official and individual      )
    capacities;
JOHN MARION, in his official and individual   )
    capacities;
WES HORNE, in his official and individual     )
    capacities;
AGENT KRISTEN PERRY, in her official          )
    and individual capacities;
LINDSAY MARCHANT, in his official             )
    and individual capacities;
STEVE CALLAHAN, in his                        )
    official and  individual capacities;
AMY BRASWELL,                                 )        **CIVIL ACTION**
    in her official and individual capacities;
STEVE TURNER, in his official                 )
    and individual capacities;                         **FILE NO.:_____**
DR. MARYANNE GAFFNEY-KRAFT,                   )
    in her official and individual capacities;         JURY TRIAL DEMANDED
RODNEY BRYAN, in his official and             )
    individual capacities;
STEVE 0WENS d/b/a OWENS TRANSPORT )
SERVICE; LARRY HANSON, in his official
and individual capacities;                    )
CITY OF VALDOSTA, GEORGIA, a
Municipal Corporation;                        )
JOE DOES, an unknown persons; and
JANE DOES, unknown persons,                   )

      Defendants.                             )

# COMPLAINT FOR DAMAGES

NOW COME Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON, who now file and recommence their previously filed actions against the above named defendants within the statute of limitations or within six (6) months following any dismissal that may have attended the particular action. This case or lawsuit may contain actions which were not previously filed and therefore this action is not intended to be a recommencement of those or that action. All court costs associated with any previously filed action reasserted herein have been paid in full following the submission of a good faith inquiry to the Clerk's office by the undersigned, accompanied by the receipt of written confirmation. This action, as previously filed, is not and was not a void action, nor one in which the previous actions were dismissed on the merits. This action is based upon substantially the same causes of action as asserted in and brought by plaintiffs in the Superior Court of Lowndes County, Georgia, Case Numbers  2013 CV 1230, 2014 CV 997, 2014 CV 1592 and 2015 CV 706, and therefore is the result, at least as to some actions contained herein, of plaintiffs' voluntary dismissals as set forth and pursuant to O.C.G.A. §§ 9-11-41 and 9-2-63.

## PRELIMINARY STATEMENT

Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON are the parents of KENDRICK LAMAR JOHNSON, who died while attending school on or about January 10, 2013 at Lowndes High School located in Valdosta, Lowndes County, Georgia, bring this action against Defendants BRANDON BELL, BRIAN BELL, and RYAN HALL, each of whom were assisted each other, as well as, by certain unknown individuals, hereinafter referred to as JANE DOE I and JOHN DOE I, for various actions or conduct which led to or directly caused the death

of KENDRICK LAMAR JOHNSON. Each of the afore-named defendants are liable to Plaintiffs for the wrongful death of their minor son, KENDRICK LAMAR JOHNSON.

Thereafter, the aforesaid defendants, along with each of the defendants named in the above styled caption, deliberately and unlawfully conspired to hide and cover up: (a) the perpetration of an assault and other circumstances upon Kendrick Lamar Johnson on or about January 10, 2013, (b) their involvement as assailants or persons who assisted in causing said assault or the death of KENDRICK LAMAR JOHNSON, ( c) the identities of persons who directly or indirectly contributed to or assisted in causing the assault and ultimately the death of KENDRICK LAMAR JOHNSON, and (d) the involvement of each other as participants in a conspiracy to unlawfully interfere with an investigation by law enforcement agencies that purportedly was designed to discover the true circumstances surrounding the death of KENDRICK LAMAR JOHNSON.

In addition, not only did each of the defendants identified in the above styled action, maliciously, conspire and engage in a deliberate and corrupt effort to cover up the involvement of Defendants as assailants and co-conspirators, but the aforesaid conspiracy also deliberately, maliciously and unlawfully interfered with the rights of Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON to have access to the courts of this state and thereby frustrate their desire to seek legal redress. Accordingly, each of the defendants named herein are liable to said plaintiffs for the damages they have suffered due to a civil conspiracy carried out by them and which sought to interfere with their due process and equal protection rights under the Constitution for the State of Georgia. Accordingly, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON seek equitable relief in the form of declaratory judgment and injunctive relief against all state actors, including but not limited to Defendants  DR. MARYANNE GAFFNEY-KRAFT, and  RODNEY BRYAN, as well as all other defendants

named herein, and who are sued in their individual capacity, as well as, official capacity as members of the Georgia Bureau of Investigation.

In the course of interfering with the rights of Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON to have access to the courts and thus frustrate their desire to seek legal redress, each of the defendants have caused said plaintiffs to suffer great physical and emotional pain and, as a consequence, are liable for intentional infliction of emotional distress, as well as, other state law violations.

Plaintiffs now bring this action under 42 U.S.C. §§1983 and 1985 to seek redress for the aforesaid violations of rights of KENDRICK LAMAR JOHNSON (sometimes referred to herein as "plaintiffs' decedent") and the significant damages he suffered. Each of the plaintiffs herein sues the Defendants LOWNDES COUNTY SCHOOL DISTRICT, FRED WETHERINGTON, WES TAYLOR, and JAY FLOYD pursuant to O.C.G.A. §51-4-5 to recover funeral expenses, as well as, compensation for the pain and suffering experienced by KENDRICK LAMAR

## JURISDICTION AND VENUE

1. This action is for and on behalf of the parents of Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON for the wrongful death of their minor son and decedent, Kendrick Lamar Johnson, who died on or about January 10, 2013. Each of the plaintiffs herein sues the defendants, in their various capacities as specified in the above styled caption. Accordingly, this Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. §§1983 and 28 U.S.C. §§1331, 1343(a)(3), and 1343(a)(4). Supplemental jurisdiction is also properly invoked pursuant to 42 U.S.C. § 1367(a) and as permitted by State law.

2. Venue is properly invoked insofar as one or more of the defendants are residents of Lowndes County, Georgia and live within the Valdosta Division of the Middle District of

Georgia. Moreover, many if not all of the alleged activities leading to the Plaintiffs' injuries arose within the Valdosta Division of the Middle District of Georgia. As such, the foregoing circumstances provide a statutory basis for asserting that venue lies in this Court.

## PARTIES

3. Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON appear herein as individuals who are entitled to bring this action for the wrongful death because they are the parents of Kendrick Lamar Johnson, who was a minor at the time of his death and who left no surviving spouse or children of his own.

In addition, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON, appear herein as the personal representatives of their minor son, KENDRICK LAMAR JOHNSON, with Plaintiff JACQUELYN JOHNSON, serving as temporary Administrator for and on behalf of the Estate of KENDRICK LAMAR JOHNSON. As a result, Plaintiffs also bring this action against the Defendants in their representative capacity and sue the Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR, and JAY FLOYD pursuant to O.C.G.A. §51-4-5 to recover funeral expenses, as well as, compensation for the pain and suffering experienced by KENDRICK LAMAR JOHNSON from his injuries, all of which was accompanied by his death on or about January 10, 2013.

4. At all times material to this Complaint, Defendant RICK BELL is an Agent of the Federal Bureau of Investigation ("FBI") and who is being sued in his individual capacity. Defendant RICK BELL may be served with service of process at his residence in Lowndes County, Georgia or at the office of the FBI, located at 6061 Gate Pkwy N, Jacksonville, Florida 32256.

5. At all times material to this Complaint, Defendant BRANDON BELL was the oldest son of Defendant RICK BELL, an Agent with the FBI and who is being sued in his individual capacity and as a child of Defendant RICK BELL. Defendant BRANDON BELL may be served with service of process at his residence on the campus of Valdosta State University, located in Valdosta, Lowndes County, Georgia.

6. At all times material to this Complaint, Defendant BRIAN BELL was the youngest son of Defendant RICK BELL, an Agent with the FBI and who is being sued in his individual capacity and as a child of Defendant RICK BELL.  Defendant BRIAN BELL may be served with service of process at the residence of his parents, Defendant RICK BELL and Karen Bell, which is located in the city of Point Verde Beach, St. Johns County, Florida.

7. At all times material to this Complaint, Defendant RYAN HALL may be served with service of process at 827 Ione Church Road, Pavo, Georgia.

8. At all times material to this Complaint, Defendant WILLIAM WESLEY "WES" TAYLOR was the Superintendent of the LOWNDES COUNTY SCHOOL DISTRICT and who is being sued in his individual capacity, as well as, his official capacity. Service of process may also be accomplished by serving Defendant WILLIAM WESLEY "WES" TAYLOR at 1592 Norman Drive, Valdosta, Georgia.

9. At all times material to this Complaint, Defendant CHRIS PRINE was the Sheriff of Lowndes County, Georgia and who is being sued in his individual and official capacities. Defendant CHRIS PRINE may be served with service of process at 120 Prison Farm Road, Valdosta, Georgia.

10.  At all times material to this Complaint, Defendant CITY OF VALDOSTA is a municipal corporation located in Lowndes County, Georgia. This Defendant may be served with

service of process by serving it upon its city manager, Larry H. Hanson, at 216 E. Central

Avenue, Valdosta, Georgia.

11. At all times material to this Complaint, Defendant LARRY H. HANSON was the

city manager for the city of Valdosta, Georgia. This Defendant is being sued in his individual

and official capacity. He may be served with service of process by serving it upon him at 216 E.

Central Avenue, Valdosta, Georgia.

12. At all times material to this Complaint, Defendant FRANK SIMMONS was the Chief

of Police of the Valdosta Police Department and who is being sued in his individual, as well as, in

his official capacity. Defendant FRANK SIMMONS may be served with service of process at 500

North Toombs Street, Valdosta, Georgia.

13. At all times material to this Complaint, Defendant STRYDE JONES was a Lieutenant

of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his

official capacity. Defendant STRYDE JONES may be served with service of process at 120

Prison-Farm Road, Valdosta, Georgia.

14. At all times material to this Complaint, Defendant STEVE OWENS was the owner of

Steve Owens Transport Service and who is being sued. Defendant STEVE OWENS may be

served with service of process at 4659 Wheeler Road, Quitman, Georgia.

15. At all times material to this Complaint, Defendant JAMES D. THORNTON was a

Criminalist of the Valdosta-Lowndes Regional Crime Laboratory and who is being sued in his

individual, as well as, in his official capacity. Defendant JAMES D. THORNTON may be served

with service of process at 1708 North Ashley Street, Valdosta, Georgia.

16. At all times material to this Complaint, Defendant WES HORNE was a Crime Scene

Specialist of the Georgia Bureau of Investigation and who is being sued in his individual, as well

as, in his official capacity. Defendant WES HORNE may be served with service of process at the

headquarters of the GBI, located at 3121 Panthersville Road, Decatur, Georgia.

17. At all times material to this Complaint, Defendant JACK WINNINGHAM was a Staff Sergeant/Investigator of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant JACK WINNINGHAM may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

18. At all times material to this Complaint, Defendant DR. MARYANNE GAFFNEY-KRAFT was the Medical Examiner of the Georgia Bureau of Investigation and who is being sued in her individual, as well as, in his official capacity. Defendant DR. MARYANNE GAFFNEY-KRAFT_may be served with service of process at the headquarters of the GBI, located at 3121 Panthersville Road, Decatur, Georgia.

19. At all times material to this Complaint, Defendant STEVE TURNER was the Special Agent in Charge of the Region 9 Office of the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in his official capacity. Defendant STEVE TURNER may be served with service of process at the headquarters of the GBI, located at 3121 Panthersville Road, Decatur, Georgia.

20. At all times material to this Complaint, Defendant KRISTEN PERRY was an Agent of the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in her official capacity. Defendant KRISTEN PERRY may be served with service of process at the headquarters of the GBI, located at 3121 Panthersville Road, Decatur, Georgia.

21. At all times material to this Complaint, Defendant LINDSAY MERCHANT was an Agent of the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in his official capacity. Defendant LINDSAY MERCHANT may be served with service of process at the headquarters of the GBI, located at 3121 Panthersville Road, Decatur, Georgia.

22. At all times material to this Complaint, Defendant MIKE CALLAHAN was an Agent of the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in his official capacity. Defendant MIKE CALLAHAN may be served with service of process at the headquarters of the GBI, located at 3121 Panthersville Road, Decatur, Georgia.

23. At all times material to this Complaint, Defendant AMY BRASWELL was an Agent of the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in her official capacity. Defendant AMY BRASWELL may be served with service of process at the headquarters of the GBI, located at 3121 Panthersville Road, Decatur, Georgia.

24. At all times material to this Complaint, Defendant AARON PRITCHETT was a Sergeant of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant AARON PRITCHETT may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

25. a At all times material to this Complaint, Defendant LOWNDES COUNTY SCHOOL DISTRICT was a corporation or entity organized and existing under the laws of the State of Georgia charged with the duty of facilitating the educational development of minors who are residents within Lowndes County, Georgia.

.    b. At all times material to this Complaint, Lowndes High School was an agency and facility organized and existing under the authority of the Defendant LOWNDES COUNTY SCHOOL DISTRICT.  Service of process may be accomplished upon  Defendant LOWNDES COUNTY SCHOOL DISTRICT by serving FRED WETHERINGTON at 5781Coppage Road, Hahira, Georgia.

c. At all times material to this Complaint, Defendant FRED WETHERINGTON was the Chairman of Defendant LOWNDES COUNTY SCHOOL DISTRICT and is being sued in his official and individual capacity. Service of process may also be accomplished by serving Defendant FRED WETHERINGTON at 5781Coppage Road, Hahira, Georgia.

d. At all times material to this Complaint, Defendant LOWNDES COUNTY SCHOOL DISTRICT acted through its agents, employees, teachers, administrators, staff and representatives, including but not limited to Defendants FRED WETHERINGTON, WES TAYLOR and JAY FLOYD, each of whom were acting under color of state statutes, ordinances, regulations, customs and usages of the State of Georgia and, in their actions and appearances, pursuant to the scope of their authority.

26. At all times material to this Complaint, Defendant RAY MCGRAW was a Crime Scene Specialist with the Valdosta-Lowndes Regional Crime Laboratory and who is being sued in his individual, as well as, in his official capacity. Defendant RAY MCGRAW may be served with service of process at 1708 North Ashley Street, Valdosta, Georgia.

27. At all times material to this Complaint, Defendant WANDA EDWARDS was a Captain of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in her official capacity. Defendant WANDA EDWARDS may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

28. At all times material to this Complaint, Defendant LOGAN HENDERSON was a Major of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant LOGAN HENDERSON may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

29. At all times material to this Complaint, Defendant RANDY LIGHTSEY was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant RANDY LIGHTSEY may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

30. At all times material to this Complaint, Defendant MICHAEL ADAMS was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant MICHAEL ADAMS may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

31. At all times material to this Complaint, Defendant JOHN MARION was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant JOHN MARION may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

32. At all times material to this Complaint, Defendant JACK PRIDDY was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant JACK PRIDDY may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

33. At all times material to this Complaint, Defendant KERRY QUINN was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant KERRY QUINN may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

34. At all times material to this Complaint, Defendant CHRISTI GRIFFIN was a Deputy of the Lowndes County Sheriff Office and who is being sued in her individual, as well as, in his

official capacity. Defendant CHRISTI GRIFFIN may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

35. At all times material to this Complaint, Defendant BRYCE WHITENER was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant BRYCE WHITENER may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

36. At all times material to this Complaint, Defendant CHRISTOPHER BURKE was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant CHRISTOPHER BURKE may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

37. At all times material to this Complaint, Defendant TROY BLACK was a Detective of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant TROY BLACK may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

38. At all times material to this Complaint, Defendant HOWARD FISHER was a Detective of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant HOWARD FISHER may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

39. At all times material to this Complaint, Defendant MARK MASKULE was a Detective of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant MARK MASKULE may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

40. At all times material to this Complaint, Defendant ROY HART was a Detective of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his

official capacity. Defendant ROY HART may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

41. At all times material to this Complaint, Defendant RODNEY BRYAN was a death investigator with the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in his official capacity. Defendant RODNEY BRYAN may be served with service of process at the headquarters of the GBI., located at 3121 Panthersville Road, Decatur, Georgia.

## FACTS COMMON TO ALL CLAIMS

42. On January 10, 2013, KENDRICK LAMAR JOHNSON (hereinafter sometimes referred to as "plaintiffs' decedent" or "plaintiffs' son" or "plaintiffs' child"), an African-American student, was attending Lowndes High School in Valdosta, Lowndes County, Georgia.

43. At some point during the afternoon of January 10, 2013, plaintiff's decedent failed to attend the balance of his scheduled classes.

44. Upon information and belief, plaintiff's decedent entered an area upon the Lowndes High School campus where, after being induced by a fellow female student, Defendant JANE DOE1, to go to said location, he was encountered by defendant BRANDON BELL and defendant BRIAN BELL, both of whom were fellow male students at said high school.

45. Upon information and belief, when plaintiff's decedent arrived at the aforementioned location, he was violently assaulted by persons, including but not limited to defendants BRANDON BELL, BRIAN BELL, and RYAN HALL, in the course thereof, suffered a fatal injury which led to his death.

46. Upon information and belief, following the aforesaid assault upon plaintiffs' decedent, defendants BRANDON BELL, BRIAN BELL, RYAN HALL, JANE DOE1 and certain individuals who are currently unknown to plaintiffs, but who is identified as JOHN DOE

1, not only failed to render aid to plaintiffs' decedent or notify school authorities of his condition, but instead, sought to hide the body of plaintiff's decedent.

47. Upon information and belief, following the aforesaid assault upon plaintiffs' decedent, defendants BRANDON BELL, BRIAN BELL, RYAN HALL, JANE DOE1 and JOHN DOE1 notified defendant Lowndes County School Superintendent WILLIAM "WES" TAYLOR, defendant RICK BELL, a Federal Bureau of Investigation ("FBI") Special Agent and father of defendants BRANDON BELL and BRIAN BELL, and defendant CHRIS PRINE, the Sheriff of Lowndes County, Georgia, of the circumstances surrounding the assault of plaintiffs' decedent, as well as, the location of his body.

48. Upon information and belief, Defendant RICK BELL, Defendant WILLIAM "WES" TAYLOR and Sheriff Chris Prine discussed amongst themselves the circumstances surrounding the assault of plaintiffs' decedent and entered into an agreement and plan to illegally cover up the true cause of death to plaintiffs' decedent, as well as, if not more importantly, the involvement of defendants BRANDON BELL, BRIAN BELL, RYAN HALL, JANE DOE1 and JOHN DOE1 in causing the fatal injuries suffered by plaintiffs' decedent.

49. Upon information and belief, the aforesaid agreement by Defendant RICK BELL, Defendant WILLIAM "WES" TAYLOR and Sheriff Chris Prine to hide and cover up the involvement of defendants BRANDON BELL, BRIAN BELL, RYAN HALL, JANE DOE1 and JOHN DOE1, as well as, the true cause of plaintiffs' decedent's death, amounted to an illegal conspiracy to obstruct justice, to interfere with  Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON's access to the courts, and to deny them their rights to due process and equal protection of the laws as set forth by the Constitution of the State of Georgia.

50. Upon information and belief, Defendant RICK BELL, Defendant WILLIAM "WES" TAYLOR and Sheriff Chris Prine engaged in conduct which was designed to carry out said conspiracy.

51. Upon information and belief, the conduct engaged in by Defendant RICK BELL, Defendant WILLIAM "WES" TAYLOR and Sheriff Chris Prine consisted of gaining access to the old gymnasium located at Lowndes High School and placing the body of plaintiffs' decedent upside down inside a rolled up gym mat and placing same in a corner of the aforesaid gymnasium with the idea that the body of plaintiffs' decedent would be discovered following the beginning of classes on January 11, 2013.

52. Upon information and belief, and in furtherance of said conspiracy, Sheriff Chris Prine solicited and engaged the involvement of subordinates and members of the Lowndes County Sheriff's Department for purposes of controlling the old gym and areas which were proximal to it. The purpose behind controlling these areas was to ensure the appearance that plaintiffs' decedent had died as a result of an unfortunate accident.

53. Those subordinates and members of the Lowndes County Sheriff's Department who were notified of the plan and conspiracy to disguise the true cause of Kendrick Johnson's death, as well as, the involvement of those responsible for causing same, included, but is not limited to Defendants JAMES THORNTON, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, and JOHN MARION.

54. Upon information and belief, said conspiracy also involved the purported discovery of the body of plaintiffs' decedent by Lori Taylor and Liana Taylor, both of whom are the daughters of Defendant WILLIAM "WES" TAYLOR and students at Lowndes High School.

55. On the morning of January 11, 2013, Plaintiff JACQUELYN JOHNSON came to said high school to inquire as to the whereabouts of plaintiffs' decedent inasmuch as he had failed to return home from said high school the evening before.

56. Upon information and belief, Lori Taylor and Laina Taylor, who were in the old gym and near the aforesaid gym mat containing Kendrick Johnson's body, alerted school officials as to the presence of the body in the said rolled-up gym mat while it was still in the said rolled-up gym mat.

57. Shortly thereafter, and while waiting in the administrative offices of said high school, Plaintiff JACQUELYN JOHNSON was advised that the dead body of her son had been located in the old gym.

58. In the several hours which followed various members of other law enforcement agencies appeared at said high school for the alleged purpose of investigating the death of plaintiff's decedent.

59. Of the various law enforcement agencies which arrived at the aforesaid high school shortly following the discovery of the body of plaintiffs' decedent, there were representatives of each of the law enforcement agencies from within Lowndes County, Georgia, including, but not limited to, the Lowndes County Sheriff's Department, the City of Valdosta Police Department, the Valdosta-Lowndes, Regional Crime Laboratory ("VLRCL") and the Georgia Bureau of Investigation ("GBI").

60. In addition to the aforesaid law-enforcement agencies, one of the first responders to arrive at the aforesaid high school included two (2) emergency medical technicians ("EMT") who examined the body plaintiffs' decedent while it was still in the aforesaid old gym.

61. Of the various observations which were made by said EMTs, they noted that there was a bruise to the right side of the jaw of plaintiffs' decedent. In preparing their report regarding their observations of the body of plaintiffs' decedent, said EMTs characterized the location of said body as a "crime scene."

62. Notwithstanding the aforesaid observations of said EMTs, who upon information and belief were the first and only medical experts to examine the body of plaintiffs' decedent while it was still in the aforesaid old gym, defendant law enforcement officers JAMES THORNTON, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, and JOHN MARION (hereinafter sometimes referred to as "Defendant Lowndes County Deputies") furthered the aforesaid conspiracy by failing to follow appropriate investigative procedures to ensure against the contamination of the area surrounding where the body of plaintiffs' decedent was allegedly discovered or located.

63. Upon information and belief, members of the Georgia Bureau of Investigation, including but not limited to Defendants STEVE TURNER, RODNEY BRYAN, AMY BRASWELL, MIKE CALLAHAN, LINDSAY MARCHANT, KRISTEN PERRY, and WES HORNE (hereinafter sometimes referred to as "Defendant GBI Agents") became aware of the

aforesaid conspiracy and also joined the aforesaid conspiracy by failing to follow appropriate investigative procedures to ensure against the contamination of the area surrounding where the body of plaintiffs' decedent was allegedly discovered or located.

64. Upon information and belief, City of Valdosta Police Chief Defendant FRANK SIMMONS also became aware of the aforesaid conspiracy and joined the aforesaid conspiracy by failing to follow appropriate investigative procedures to ensure against the contamination of the area surrounding where the body of plaintiffs' decedent was allegedly discovered or located.

65. After Plaintiff JACQUELYN JOHNSON was notified that the body that had been located in the gymnasium was believed to be her son, she along with other family members who arrived at the aforesaid high school, requested but were refused permission by afore-named Defendant GBI Agents, the afore-named Defendant Lowndes County Deputies, Defendant Frank Simmons, and Sheriff Chris Prine to identify the body of her son; all that is a part of and in furtherance of the aforesaid conspiracy.

66. Notwithstanding the discovery of a dead body and the presence of defendant law-enforcement officials, said defendants knowingly and with malicious intent failed to notify the Lowndes County Coroner for approximately six (6) hours following the alleged discovery of the body of plaintiffs' decedent.

67. The aforesaid failure of the defendant law-enforcement officials to immediately notify the Lowndes County Coroner was in deliberate violation of the laws of the state of Georgia, more specifically identified as O.C.G.A § 45-16-24, which states, in relevant part, that "it shall be the duty of any law enforcement officer or other person having knowledge of such death to notify immediately the corner or county medical examiner of the county in which the

acts or events resulting in the death occurred or the body is found." The afore-named Defendant GBI Agents, the afore-named Defendant Lowndes County Deputies, Defendant FRANK SIMMONS, and defendant CHRIS PRINE deliberately failed to notify the County Coroner for Lowndes County in furtherance of the aforesaid conspiracy.

68. Notwithstanding the discovery of a dead body, the aforesaid observations of said EMTs, as well as, the location of blood of an unidentified source that was observed upon the surfaces of walls that were proximal to the location of the body of plaintiffs' decedent, defendant CHRIS PRINE, expressed to the news media on January 11, 2013 that there was no evidence of "foul play" and that the cause of death was accidental based upon a theory that plaintiff's decedent died as a result of him attempting to retrieve a tennis shoe by entering into the center opening of the aforesaid rolled-up gym mat and thereafter becoming stuck and without the ability to free himself. The afore-named Defendant GBI Agents, the afore-named Defendant Lowndes County Deputies, and Defendant FRANK SIMMONS, were aware of the announcements made by defendant CHRIS PRINE and the falsity of same, and in furtherance of the conspiracy, deliberately failed to correct the reports made by defendant CHRIS PRINE or to notify the appropriate governmental entities or other law enforcement personnel of the falsity of the aforesaid reports made by defendant CHRIS PRINE , as well as, the conspiracy itself.

69. On or about January 12, 2013, Plaintiff KENNETH JOHNSON requested permission to view the body of plaintiffs' decedent, but in furtherance of the aforesaid conspiracy, was also refused permission by afore-named Defendant GBI Agents, the afore-named Defendant Lowndes County Deputies, Defendant Frank Simmons, and defendant CHRIS PRINE.

70. Following the aforementioned denial of permission by defendants to allow plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON to view and identify the body of their deceased son, plaintiffs contacted the news media and conducted a press conference to voice their concerns regarding the kind of treatment that they were receiving from said defendant members of the law enforcement community, more particularly defendant CHRIS PRINE , Defendant STRYDE JONES with the Lowndes County Sheriff's Department, and Defendant JAMES THORNTON of the Valdosta-Lowndes, Regional Crime Laboratory.

71. Upon information and belief, defendant CHRIS PRINE, Defendant STRYDE JONES the afore-named Defendant GBI Agents, the afore-named  Defendant Lowndes County Deputies, and Defendant FRANK SIMMONS, reconsidered their position regarding the Plaintiffs' request to view the body of their son and, as a consequence, granted them permission to come to the Valdosta-Lowndes, Regional Crime Laboratory for purposes of viewing the body.

72. On January 13, 2013, plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON went to the Valdosta-Lowndes, Regional Crime Laboratory where they were met by Sheriff Chris Prine, Defendant STRYDE JONES and Defendant JAMES THORNTON for purposes of viewing the body of plaintiffs' decedent. On that occasion, plaintiff KENNETH JOHNSON entered the room where the body of plaintiffs' decedent was being stored and where he noted that the room temperature appeared to be much warmer than what he had anticipated inasmuch as he thought that said room and the vault that the decedent's body was being stored in was designed to preserve the remains through a process similar akin to refrigeration. Upon information and belief, each aforementioned defendant, including but not limited to Sheriff Chris Prine, Defendant STRYDE JONES and Defendant JAMES THORNTON, was aware of the

effort to advance the decomposition of Kendrick Johnson's remains as a part of the aforesaid conspiracy, and yet failed to take any action to prevent the destruction or elimination of the evidence that would otherwise be preserved through appropriate handling of said remains.

73. At that time, Sheriff Chris Prine explained to Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON that plaintiff's decedent had entered the center hole of the aforementioned gym mat "feet first" and that while at the bottom of the hole, plaintiffs' decedent bent over to retrieve his tennis shoe and became stuck in such a way that he could not free or remove himself from the hole.

74. Upon hearing the foregoing explanation, Plaintiff KENNETH JOHNSON stated to Sheriff Chris Prine that his explanation was not possible, whereupon Defendant STRYDE JONES stated to Plaintiff KENNETH JOHNSON that he (KENNETH JOHNSON) did not understand that "when you die, your muscles relax and then you fall forward." The aforesaid explanation offered by Sheriff Chris Prine and Defendant STRYDE JONES was communicated to plaintiffs in furtherance of the aforesaid conspiracy.

75. Approximately two (2) or more days later, an ex-employee of the Lowndes County Sheriff's Department contacted plaintiff KENNETH JOHNSON and stated to him that he (KENNETH JOHNSON) misunderstood what Sheriff Chris Prine and defendant STRYDE JONES had attempted to explain to plaintiffs and that their explanation was meant to explain that plaintiff's decedent had entered the center hole of the gym mat head first instead of feet first.

76. Due to the aforesaid findings of "no foul play" and a theory offered by Sheriff Chris Prine, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON were desirous of having a further investigation into the cause and circumstances of their son's death.

77. Concurrent therewith, Plaintiffs contacted Harrington's Funeral Home and Antonio Harrington for purposes of properly handling the remains of plaintiff's decedent, as well as, making the arrangements for the funeral services and internment of his remains.

78. On or about January 14, 2013, the remains of Plaintiffs' minor child were transported by Defendant STEPHEN WESLEY OWENS of Defendant OWEN'S TRANSPORT SERVICE from the Valdosta-Lowndes, Regional Crime Laboratory to the GBI's Crime Lab located in Macon, Georgia for purposes of undergoing an official autopsy. Upon completion of said autopsy, Defendant STEPHEN WESLEY OWENS transported the remains of plaintiff's decedent back to Valdosta during the early afternoon hours of January 14, 2013, delivered said remains of Plaintiffs' decedent to Harrington's Funeral Home, all of which was pursuant to an understanding and oral agreement entered into between Plaintiffs and Defendants.

79. Antonio Harrington expressed to Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON his concerns as to the aforesaid explanation for their child's death and recommended that they should get a "second opinion" as to the cause of death notwithstanding the then-unknown-findings of official autopsy. Plaintiffs concurred with Antonio Harrington's recommendation.

80. On or about January 16, 2013, an occasion on which Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON visited The Harrington's Funeral Home, said plaintiffs inquired of Antonio Harrington whether they could collect the clothing that plaintiff's decedent was wearing at the time that is body was discovered Lowndes High School. Responsive to said request, Antonio Harrington advised Plaintiffs that he was unaware that their child had any clothes when his remains were returned from the aforesaid GBI Crime Lab.

81. In addition to the aforesaid inquiry about their minor child's clothing,  Plaintiffs never authorized Antonio Harrington nor his staff to destroy or dispose of any of the plaintiffs' decedent's body parts, including but not limited to his internal organs.

82. In the course of attempting to ascertain the whereabouts of plaintiffs' decedent's clothing, Plaintiffs contacted the GBI Crime Lab in Macon, Georgia based upon Antonio Harrington's representations to them that the subject clothing was not returned with the remains of plaintiffs' decedent.

83. Upon making contact with employees at the aforesaid GBI Crime Lab, Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were advised that all personal effects, including but not limited to plaintiff's decedent's clothing, was placed in a body bag and returned to Valdosta, Georgia with the aforesaid remains.

84. In addition to making contact with the aforesaid GBI Crime Lab for purposes of locating the said clothing which was worn by their son, plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON inquired as to the length of time that it would take the GBI Crime Lab to complete the autopsy report. Upon information and belief, the aforesaid clothing disappeared while in the possession of Defendant STEPHEN WESLEY OWENS and as such, said defendant disposed of said clothing as a part of the aforesaid conspiracy to hide or cover up the true circumstances surrounding Kendrick Johnson's death.

85. After several months of repeatedly calling the GBI Crime Lab to establish the status of the autopsy report, on or about May 2, 2013 the autopsy report which had been authored and prepared Defendant MARYANNE GAFFNEY-KRAFT was released to the Defendant Lowndes County Sheriff's Department and ultimately, to Plaintiffs JACQUELYN JOHNSON and

KENNETH JOHNSON. This autopsy report concluded that the cause of death of Plaintiffs'
decedent was positional asphyxia and the manner of death was concluded to be accidental.

86. Upon information and belief, the autopsy report which had been authored and
prepared Defendant MARYANNE GAFFNEY-KRAFT and who was aided by Defendant
RODNEY BRYAN, was false and misleading, and, as such, a part of the aforesaid conspiracy to
hide or cover up the true circumstances surrounding Kendrick Johnson's death.

87. Inasmuch as Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were
in receipt of conflicting evidence and reports, as well as, being beleaguered by many unanswered
questions, Plaintiffs made arrangements to have the remains of their son's remains exhumed for
purposes of conducting a second and independent autopsy.

88. Yet, in spite of the absence of any ordinance, regulation, or state law requiring that
the next of kin obtain a court order before they would be allowed to remove the remains of their
loved one, in this instance, the city manager the Defendants LARRY HANSEN and the CITY
OF VALDOSTA required that the Plaintiffs JACQUELYN JOHNSON and KENNETH
JOHNSON petition the Superior Court of Lowndes County for a court order before allowing
them to exhume the remains of the plaintiffs' decedent. Upon information and belief, the
aforesaid actions on the part of Defendants LARRY HANSEN and the CITY OF VALDOSTA
were a part of the aforesaid conspiracy to interfere with Plaintiffs access to the courts for
purposes of seeking the truth of what occurred to their son and, legal redress for any and all
damages which they may have suffered.

89. On or about June 14, 2013, Plaintiffs' minor child was disinterred, and thereafter, the
remains of plaintiff's decedent were transported to Orlando, Florida on June 15, 2013 for

purposes of undergoing a second and independent autopsy by Dr. William R. Anderson, a licensed forensic pathologist in Orlando, Florida.

90. On or about June 15, 2013, as Dr. Anderson began to examine the inside of said minor child's abdomen, he devised that all of the internal organs were missing and that said decedent's body was stuffed with waded newspaper.

91. In addition, Dr. Anderson observed that the brain of Plaintiffs' decedent was also missing. Upon information and belief, the autopsy by Dr. Anderson was made more complicated and thus deprived him of the ability to conduct the type of autopsy that was otherwise contemplated and more informative in nature.

92. Notwithstanding the foregoing circumstances, Dr. Anderson established that Plaintiffs' decedent had suffered an injury to the right side of his upper neck, and that the cause of death was blunt force trauma, an injury that was consistent with one that had been "inflicted" upon plaintiffs' decedent and "non-accidental" in nature.

93. Inasmuch as the right side of plaintiffs' decedent's upper neck had not been sectioned by Defendant MARYANNE GAFFNEY-KRAFT, the forensic pathologist who performed the official autopsy for the GBI, Dr. Anderson reached out to said defendant or her office to establish whether or not she wanted to examine his findings, including the tissue samples which were taken from plaintiffs decedent during his autopsy of June 15, 2013.

94. Upon information and belief, Defendant MARYANNE GAFFNEY-KRAFT nor anyone from her agency ever accepted Dr. Anderson's aforesaid invitation to examine his tissue specimens and thus establish whether or not said defendant had missed a critical piece of evidence in reaching her opinion as to whether the cause of death was altogether accidental or

possessed features indicating an assault or blunt force trauma. In fact, Dr. Anderson's invitation was roundly rejected.

95. Upon information and belief, the refusal of Defendant MARYANNE GAFFNEY-KRAFT to examine the aforesaid tissue specimens was a part of and in furtherance of the aforesaid conspiracy of which Defendant MARYANNE GAFFNEY-KRAFT had become a participant. Moreover, as a forensic pathologist with the Georgia Bureau of Investigation, Defendant MARYANNE GAFFNEY-KRAFT had a duty to examine the tissue specimens which Dr. Anderson collected during his autopsy as well as, his findings and conclusions as a fellow forensic pathologist.

96. Following the discovery of their son's missing organs, plaintiffs sought to inquire of Antonio Harrington whether he was aware of what had happened to the organs of plaintiff's decedent. Of the several responses which Antonio Harrington offered, he advised that the Coroner for Lowndes County, Georgia, had informed him that defendant RODNEY BRYAN, a death investigator with the GBI, told him via telephone that the viscera or internal organs were disposed of during the GBI's official autopsy due to decomposition.

97. Prior to the completion of the aforesaid official autopsy by the defendants MARYANNE GAFFNEY-KRAFT and the GBI, an Open Records Act ("ORA") request, pursuant to OCGA §50-18-70 *et seq.*, was initially placed upon the Lowndes County Sheriff's Department on behalf of plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON on January 28, 2013.

98. Notwithstanding that Sheriff Chris Prine had announced that the Sheriff's Department had completed its investigation on or about May 4, 2013 and as a consequence thereof, was no

longer exempt from complying with the plaintiffs' ORA request, it was not until October 30,
2013 and November 6, 2013 that Sheriff Chris Prine ultimately released the Sheriff's
Department's full investigative file, including copies of surveillance images recorded at
Lowndes high school on January 10, 2013 and January 11, 2013.

99. The Sheriff's compliance with plaintiffs aforesaid Open Records Act request,
however, was not voluntary, but the result of a court order which was issued on October 30,
2013 and grossly deficient in several respects. The refusal of Sheriff Chris Prine to release the
Sheriff's Department's full investigative file, was in furtherance of the aforesaid conspiracy and
thus designed to withhold information from Plaintiffs and to interfere with their access to the
courts for purposes of seeking legal redress.

100. Of the materials that were reproduced by said Sheriff's Department for plaintiffs'
examination, plaintiffs were advised that certain documents or materials were being withheld for
various reasons, including but not limited to the desire to protect the privacy of minors whose
identity was otherwise disclosed or suggested in the documents.

101. As a result, said Sheriff's Department withheld photographs and moving images that
plaintiffs were otherwise entitled to receive.

102. In addition to the refusal to disclose entire documents or allow for their review, said
Sheriff's Department redacted many if not most of the documents it produced by eliminating any
information that disclosed or suggested the identity of individuals it maintained or considered to
be minors, as though the alleged minors were entitled to privacy or confidentiality under the
Open Records Act, which they do not.

103. The aforesaid refusal to comply with plaintiffs' ORA request constituted a deliberate and malicious effort to withhold information from plaintiffs who were legitimately entitled to receive same as a means of determining the true cause of their son's death, as well as, the identities and involvement of the individuals who were connected with or responsible for his death.

104. The aforesaid refusal by Sheriff Chris Prine and each of the various other defendant law enforcement officers, including but not limited to Defendant Lowndes County Deputies and Defendant GBI Agents, conducted a kind of investigation that was in furtherance of the aforesaid conspiracy and, therefore, was designed to not only deliberately and maliciously cover-up the less-than-adequate effort by said law enforcement agencies to investigate the death of plaintiffs' decedent, but to also cover-up the identities of those individuals responsible for said decedent's death.

105. In addition, the aforesaid refusal by Sheriff Chris Prine to comply with plaintiffs' ORA request was designed to deliberately and maliciously cover-up how the defendants from the various law enforcement agencies deliberately and maliciously mishandled the subject investigation in such a way that anyone who might ever be charged with plaintiffs' decedent's death would never be convicted due to a patently flawed investigation.

106. Upon receipt of the Lowndes County Sheriff's Investigative File regarding the death of Kendrick Johnson, documents therein reveal that the only students whose parents, including but not limited to Defendant RICK BELL retained an attorney in response to two or more requests to be interviewed and who ultimately refused to be interviewed at all were Defendants BRIAN BELL and BRANDON BELL. Upon information and belief, the failure on the part of

Defendant Lowndes County Deputies and Defendant GBI Agents to interview Defendants BRIAN BELL and BRANDON BELL was in furtherance of the aforesaid conspiracy and designed to shield Defendants BRIAN BELL and BRANDON BELL, as well as others, from possible criminal prosecution.

107. During the latter part of November 2014, the Lowndes County Sheriff's office chose to interview for the first time members of the high school's wrestling team in response to allegations that school documents showed that the alibi of Defendants BRANDON BELL and BRIAN BELL were questionable. Upon information and belief, this failure of to promptly interview the high school's wrestling team was in furtherance of the said conspiracy.

108. As a result of Plaintiffs discovering that their son's organs were missing, that their son's clothing was missing, as well as, the failure of Defendant Lowndes County Deputies and Defendant GBI Agents to interview Defendants BRIAN BELL and BRANDON BELL, plaintiffs filed petition the County Coroner's Office for Lowndes County seeking to have the coroner convene a coroner's inquest.

109. In response, Plaintiffs aforesaid request and petition, Bill Watson, Coroner for Lowndes County, Georgia, refused to convene a coroner's inquest on the grounds that he regarded the findings of Defendant MARYANNE GAFFNEY-KRAFT to be conclusive. Upon information and belief, the aforesaid corner's refusal to conduct a coroner's inquest was the result of unlawful intimidation on the part of defendant Lowndes County School Superintendent WILLIAM "WES" TAYLOR, defendant Federal Bureau of Investigation ("FBI") Special Agent and father of Brandon and Brian Bell, RICK BELL, and Lowndes County Sheriff Chris Prine.

110. Upon information and belief, Coroner Bill Watson received unlawful and malicious threats from defendant Lowndes County School Superintendent WILLIAM "WES" TAYLOR, defendant Federal Bureau of Investigation ("FBI") Special Agent and father of Brandon and Brian Bell, RICK BELL, and Lowndes County Sheriff Chris Prine, all as a part of the aforesaid conspiracy to interfere with plaintiffs' access to the courts and efforts to seek legal redress.

## FIRST CAUSE OF ACTION
### WRONGFUL DEATH
(Against Defendants BRANDON BELL,  BRIAN BELL, RICK BELL, RYAN HALL,
JOHN DOE and JANE DOE)

The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

111. Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON are husband and wife, not divorced, and are the parents of KENDRICK LAMAR JOHNSON, who died on January 10, 2013, at the age of 17 years, leaving no spouse or children.

112. Prior to January 10, 2013, defendant BRIAN BELL attacked plaintiff's decedent while on a school bus that had taken the high school' s football team to a game that was being played out of town. As a result of the brief fight which followed, defendant BRANDON BELL told plaintiffs' decedent that "it ain't over." In addition, defendant RICK BELL advised plaintiff's decedent that he should come to his home to fight his son defendant BRIAN BELL because the fight on the bus was not a fair fight.

113. At all times relevant herein, defendants BRANDON BELL, BRIAN BELL and RICK BELL had been seeking revenge for the fight that had taken place on the aforesaid school bus.

114. On January 10, 2013, defendants BRANDON BELL, BRIAN BELL, RICK BELL, RYAN HALL, JOHN DOE and JANE DOE caused an unjustified assault upon plaintiffs' decedent.

115. The aforesaid assault upon plaintiffs' decedent was also in response to a parental command made by defendant RICK BELL, who also engaged in parental ratification of the misconduct by defendants BRANDON BELL and BRIAN BELL. Accordingly, defendant RICK BELL is also liable for the wrongful death of plaintiffs' decedent pursuant to O.C.G.A. Sec. 51-2-2.

116. As a direct and proximate result of the defendants BRANDON BELL, BRIAN BELL, RICK BELL, RYAN HALL, JOHN DOE and JANE DOE's unlawful and reckless disregard for the rights of others, plaintiffs' decedent suffered a violent and needless death.

117. Plaintiffs have been damaged through losing their youngest son and through his homicide in an amount that shall be proven at the time of trial.

### SECOND CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against All Defendants)

.       The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

118. Each of the Defendants named herein and whose specific conduct is identified in the preceding section entitled "Facts Common to All Claims," Paragraphs 42 to 110, inclusive, engaged in a conspiracy to conduct an orchestrated and corrupt effort to cover up the misconduct of certain individuals, more particularly that of defendants BRANDON BELL,  BRIAN BELL, and RICK BELL, and as a consequence, was directed toward the Plaintiffs, as described herein. As such, said defendants' conduct was intentional, unlawful, and malicious. It is so outrageous that it is not tolerated by civilized society.

119. As a direct and proximate result of the conduct as set forth and identified in Paragraphs 42 to 110, herein, the Plaintiffs suffered serious mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

120. In their conduct, each of the Defendants named herein, and as specifically set forth in Paragraphs 42 to 110, herein, acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from each of the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies and acts of corruption.


### THIRD CAUSE OF ACTION
### FAILURE TO PROPERLY HIRE, TRAIN, AND SUPERVISE
### (Against Defendants Chris Prine, Frank Simmons, and City of Valdosta)

. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

121.  At all material times, the Defendants CHRIS PRINE, FRANK SIMMONS, and CITY OF VALDOSTA owed a duty to the Plaintiffs to properly hire, train and supervise all individuals whom it placed in a position of responsibility relative to the proper execution of a criminal investigation.

122. The aforementioned duties include, but are not limited to: the hiring, retention, training and supervision of all agents, employees and representatives of the Defendants CHRIS PRINE, FRANK SIMMONS, and CITY OF VALDOSTA in connection with the criminal investigation; their association with other persons and entities to accomplish the performance of a proper investigation; the individual, proper and respectful performance of all steps of the related processes; and the ascertainment that all such duties were being fully and properly undertaken and performed.

123. Said Defendants' conduct, in their individual capacities, were so willful, wanton, and malicious that plaintiffs are entitled to punitive damages against them in their individual capacities.

## FOURTH CAUSE OF ACTION
**VIOLATION OF PLAINTIFFS' RIGHT TO DUE PROCESS UNDER STATE LAW**
**(Against Defendants  Chris Prine, Shannon Salters, Ray Mcgraw, Jack Winningham, Wanda Edwards, Stryde Jones, Aaron Pritchett, Logan Henderson, Randy Lightsey, Michael Adams, Jack Priddy, Kerry Quinn, Christi Griffin, Bryce Whitener, Christopher Burke, Troy Black, Howard Fisher, Mark Maskule, Roy Hart, John Marion Frank Simmons, Steve Turner, Rodney Bryan, Amy Braswell, Mike Callahan, Lindsay Marchant, Kristen Perry, Wes Horne, Rodney Bryan, and Maryanne Gaffney-Kraft)**

The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

124. At all material times, the Defendants VERNON KEENAN, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, JOHN MARION FRANK SIMMONS, STEVE TURNER, RODNEY BRYAN, AMY BRASWELL, MIKE CALLAHAN, LINDSAY MARCHANT, KRISTEN PERRY, WES HORNE, RODNEY BRYAN, AND MARYANNE GAFFNEY-KRAFT owed a duty to the Plaintiffs to properly investigate the circumstances surrounding the death of their son, Kendrick Lamar Johnson, and in the course thereof, determine the identities of all individuals who were in any way responsible for causing their son's death.

125. As law enforcement officers and state actors, the aforesaid defendants identified in the paragraph above violated the due process clause under the State Constitution for the State of Georgia by neglecting their duty to properly investigate the circumstances surrounding the death of plaintiffs' aforesaid son.

126. As a result of the failure of Defendants VERNON KEENAN, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, JOHN MARION FRANK SIMMONS, STEVE TURNER, RODNEY BRYAN, AMY BRASWELL, MIKE CALLAHAN, LINDSAY MARCHANT, KRISTEN PERRY, WES

HORNE, RODNEY BRYAN, AND MARYANNE GAFFNEY-KRAFT to perform the

investigation into the death of plaintiffs' son as set forth in the preceding paragraph, as well as,

by interfering with their due process right to have access to the courts for legal redress, the

aforesaid defendants have violated the due process clause under the State Constitution for the

State of Georgia.

127. Said Defendants' conduct, in their individual and official capacities, have damaged

plaintiffs, and as a consequence, are demanding compensation in an amount that shall be proved

at trial.

## FIFTH CAUSE OF ACTION
## VIOLATION OF PLAINTIFFS' RIGHT TO EQUAL PROTECTION
## UNDER STATE LAW
**(Against Defendants Chris Prine, Shannon Salters, Ray Mcgraw, Jack Winningham, Wanda Edwards, Stryde Jones, Aaron Pritchett, Logan Henderson, Randy Lightsey, Michael Adams, Jack Priddy, Kerry Quinn, Christi Griffin, Bryce Whitener, Christopher Burke, Troy Black, Howard Fisher, Mark Maskule, Roy Hart, John Marion Frank Simmons, Steve Turner, Rodney Bryan, Amy Braswell, Mike Callahan, Lindsay Marchant, Kristen Perry, Wes Horne, Rodney Bryan, and Maryanne Gaffney-Kraft)**

The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every

allegation contained in the preceding paragraphs and further allege:

128. At all material times, the Defendants CHRIS PRINE, SHANNON SALTERS, RAY

MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON

PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK

PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER

BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, JOHN

MARION FRANK SIMMONS, STEVE TURNER, RODNEY BRYAN, AMY BRASWELL,

MIKE CALLAHAN, LINDSAY MARCHANT, KRISTEN PERRY, WES HORNE, RODNEY BRYAN, AND MARYANNE GAFFNEY-KRAFT owed a duty to the Plaintiffs to properly investigate the circumstances surrounding the death of their son, Kendrick Lamar Johnson, and in the course thereof, determine the identities of all individuals who were in any way responsible for causing their son's death.

129. As law enforcement officers and state actors, the aforesaid defendants identified in the paragraph above violated the equal protection clause under the State Constitution for the State of Georgia by neglecting their duty to properly investigate the circumstances surrounding the death of plaintiffs' aforesaid son and, minimally in a manner that would have been the same as that afforded any other individuals had plaintiffs been Caucasian or members of the white race.

130. As a result of the failure of Defendants CHRIS PRINE, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, JOHN MARION FRANK SIMMONS, STEVE TURNER, RODNEY BRYAN, AMY BRASWELL, MIKE CALLAHAN, LINDSAY MARCHANT, KRISTEN PERRY, WES HORNE, RODNEY BRYAN, AND MARYANNE GAFFNEY-KRAFT to perform the investigation into the death of plaintiffs' son as set forth in the preceding paragraph, as well as, by interfering with their due process right to have access to the courts for legal redress, the aforesaid defendants have violated the equal protection clause under the State Constitution for the State of Georgia.

131. Said Defendants' conduct, in their individual and official capacities, have damaged plaintiffs, and as a consequence, are demanding compensation in an amount that shall be proved at trial.

## SIXTH  CAUSE OF ACTION
### PLAINTIFFS' PETITION FOR INJUNCTIVE RELIEF
### (Against Defendants Chris Prine and Maryanne Gaffney-Kraft)

The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

132.  At all material times, the Defendant CHRIS PRINE, and investigators within the Lowndes County Sheriff's Department has the authority to make an official request that Defendant MARYANNE GAFFNEY-KRAFT  examining the tissue specimens collected by Dr. William Anderson during the course of his autopsy, and thereafter re-examining her findings to determine whether she should correct any aspect of her conclusions as a forensic pathologist for the Georgia Bureau of Investigation, and, as required by law.

133. At all material times,  Defendant MARYANNE GAFFNEY-KRAFT has a duty to perform the services set forth by her terms of employment as a forensic pathologist for the Georgia Bureau of Investigation, and, as otherwise required by law.

134. Following the aforesaid receipt of an autopsy report that was based upon an autopsy that was performed by Dr. William Anderson of Orlando, Florida, which disputed the official findings of the autopsy performed by Defendant MARYANNE GAFFNEY-KRAFT several months before, Defendant MARYANNE GAFFNEY-KRAFT was requested by Dr. Anderson to examine tissue specimens when he removed them from the remains of plaintiffs' decedent.

135. Moreover, based upon the, the official findings of the autopsy performed by Defendant MARYANNE GAFFNEY-KRAFT, said defendant omitted any acknowledgment that she reviewed or considered a medical report submitted by the EMT's (emergency medical technicians) who observed the body of plaintiffs' decedent at the time that it was first discovered. The medical report submitted by the EMT's revealed the presence of a bruise at a location which was consistent with Dr. Anderson's findings.

136. As taxpayers and citizens of the State of Georgia, plaintiffs are owed a duty on the part of Defendant MARYANNE GAFFNEY-KRAFT to exercise reasonable judgment in carrying out her role as a forensic pathologist associated with the investigation into the cause of death of Plaintiffs' son, Kendrick Lamar Johnson, regardless of whether said defendant agrees with the findings of others within her field of expertise.

137. To date, Defendant MARYANNE GAFFNEY-KRAFT nor any member of the Georgia Bureau of Investigation, has shown an inclination or desire to examine tissue specimens which Dr. Anderson removed from an area of the remains of plaintiffs' decedent and that was never "sectioned" and thus examined nor addressed by Defendant MARYANNE GAFFNEY-KRAFT. This failure on the part of Defendant MARYANNE GAFFNEY-KRAFT constitutes a violation of state law requiring that death and other such investigations be performed in a competent and reasonable manner.

138. Plaintiffs have no adequate legal remedy available to them and the injury that will result is imminent and irreparable.

139. As a consequence, plaintiffs pray that this court will direct Defendant VERNON KEENAN and Defendant MARYANNE GAFFNEY-KRAFT to make arrangements for the

examination of the tissue specimens collected by Dr. William Anderson and upon doing so, give proper consideration to such evidence as dictated by her honest and professional judgment.

## TWELFTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (As Against Defendants Ryan Hall and Richard Bell)

The plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs of each complaint or amended complaint and further allege:

140. On a date currently unknown to plaintiffs, but which occurred after January 29, 2014, the defendants RYAN HALL and RICK BELL met in a parking lot of Lowndes High School.

141. Upon information and belief, Defendants RYAN HALL and RICK BELL conspired with one another on said occasion for purposes of presenting false and misleading information to law enforcement officials, including but not limited to a federal grand jury.

142. Upon information and belief, Defendants RYAN HALL and RICK BELL conspired with one another on said occasion for purposes of presenting false and misleading information to a federal grand jury which had subpoenaed Defendant RYAN HALL to appear and give sworn testimony in connection with an investigation into the death of plaintiffs' decedent, Kendrick Johnson.

143. Upon information and belief, Defendant RICK BELL delivered, or cause to be delivered, printed materials pertaining to the school attendance records of Defendant RYAN HALL as a part of a conspiracy to mislead investigators, the grand jury, and plaintiffs into

believing that the death of plaintiffs' decedent was due to accidental circumstances, and that regardless of whether the death of plaintiffs' decedent was accidental or intentional, Defendant RYAN HALL was not involved due to his presence at another location in the school.

144. The aforesaid conduct of Defendants RYAN HALL and RICK BELL was both intentional, as well as, extreme and outrageous.

145. As a direct and proximal result of the aforesaid intentional misconduct of Defendants RYAN HALL and RICK BELL, plaintiffs were forced to endure severe emotional distress.

146. In their conduct, said Defendants acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from each of the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies and acts of corruption.

## THIRTEENTH CAUSE OF ACTION
### FRAUD THROUGH STATEMENTS AND SILENCE
**(As Against Defendants Wes Taylor, Chris Prine, Frank Simmons, Richard "Rick" Bell, and Stryde Jones)**

The plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs of each complaint or amended complaint and further allege:

147. On January 10, 2013, Plaintiffs contacted members of the law enforcement agencies within Valdosta, Lowndes County, Georgia, including the City of Valdosta Police Department

and the Lowndes County Sheriff's Office, all for purposes of establishing the whereabouts of plaintiffs' decedent.

148. On the morning of January 11, 2013, Plaintiff JACQUELYN JOHNSON contacted staff members of the Lowndes High School for purposes of establishing the whereabouts of their son, Kendrick Johnson.

149. Upon contacting personnel with each of the aforesaid law enforcement agencies, as well as, the Lowndes County High School, Plaintiff JACQUELYN JOHNSON was advised that they did not know, or were unaware as to the whereabouts of plaintiffs' son, Kendrick Johnson.

150. On or about January 11, 2013, the body of Kendrick Johnson was discovered in the old gymnasium at Lowndes high school, approximately eight (8) hours after Plaintiff JACQUELYN JOHNSON had made inquiry to members of the aforesaid local law enforcement agencies.

151. Upon information and belief, Lowndes County School Superintendent Defendant WES TAYLOR, Lowndes County Sheriff Defendant CHRIS PRINE, Valdosta Police Chief Defendant FRANK SIMMONS, Defendant RICK BELL, and Lowndes County Sheriff's Investigator Defendant STRYDE JONES, were each aware on January 10, 2013 that plaintiffs' son, Kendrick Johnson had died or was severely injured on January 10, 2013, and that his body was on the campus of Lowndes High School.

152. Upon information and belief, each of the aforesaid defendants were, by virtue of their role as public safety officers, school administrators and public officials, under a duty to disclose to plaintiffs the location and condition of plaintiffs' decedent.

153. Contrary to said duty, each of the aforesaid defendants misled plaintiffs insofar as denying knowledge of plaintiffs' decedent's whereabouts or their possession of information that

would have been responsive to plaintiffs' inquiry regarding the whereabouts of their son, Kendrick Johnson.

154. Contrary to said duty, each of the aforesaid defendants misled plaintiffs insofar as refusing to disclose, i.e. through their silence, that they had knowledge or were in possession of information that would have been responsive to plaintiffs' inquiry regarding the whereabouts of their son, Kendrick Johnson.

155. The aforesaid defendants carried out the aforementioned through the engagement and execution of a conspiracy for purposes of misleading plaintiffs regarding the whereabouts of their son, Kendrick Johnson, and for purposes of shielding and thus protecting Defendants BRIAN BELL, BRANDON BELL, and RYAN HALL from accepting responsibility for their part in causing the death of Kendrick Johnson.

156. As a direct and proximal result of the aforesaid misconduct by Defendants WES TAYLOR, CHRIS PRINE, FRANK SIMMONS, RICK BELL, and STRYDE JONES, Plaintiffs were restrained from taking action that may have saved the life of their son, Kendrick Johnson, or lead to the prompt identification of their son's cause of death, as well as, the persons who were responsible.

WHEREFORE, the Plaintiffs request the following relief:

a. An award of compensatory damages for each Plaintiff, in an amount deemed appropriate by the enlightened conscience of the trier of fact, jointly and severally, against the Defendants;

b. An award of punitive damages, jointly and severally, against the Defendants;

c. An award of pre-judgment and post-judgment interest;

d. An award of costs, including, but not limited to, discretionary costs, attorneys' fees and expenses incurred in pursuing this case;

e. Any other and further relief this Court deems just and proper; and

f. Any other and further relief to which they may be entitled.

**FOURTEENTH CAUSE OF ACTION**
**Against Defendant Chris Prine**
**UNDER STATE LAW**

159. On January 10, 2013, KENDRICK LAMAR JOHNSON (hereinafter sometimes referred to as "plaintiffs' decedent" or "plaintiffs' son" or "plaintiffs' child"), an African-American student, was attending Lowndes High School in Valdosta, Lowndes County, Georgia.

160. At some point during the afternoon of January 10, 2013, plaintiff's decedent failed to attend the balance of his scheduled classes.

161. Upon information and belief, plaintiff's decedent entered an area upon the Lowndes High School campus where, after either being induced by a fellow student to go to said location or because of plaintiff's decedent's relationship to a fellow student, plaintiffs' decedent encountered by Brandon Bell and Brian Bell, both of whom were fellow male students at said high school and the children of a local FBI agent, Rick Bell.

162. Upon information and belief, when plaintiff's decedent arrived at the aforementioned location, he was violently assaulted by persons, including but not limited to Brandon Bell and BRIAN BELL, and, in the course thereof, suffered a fatal blow which led to his death.

163. Following the death of plaintiffs' decedent, if not during the course of said assault, defendants placed the body of plaintiffs' decedent inside of a rolled-up gym mat and secluded same in the far southwest corner of the gymnasium that is commonly referred to as the "old gym."

164. On the morning of January 11, 2013, Plaintiff JACQUELYN JOHNSON came to said high school to inquire as to the whereabouts of plaintiff's decedent who had failed to return home from said high school the evening before.

165. Upon information and belief, Lori Taylor and her younger sister Laina Taylor, who were students at said high school and who are the daughters of Lowndes County School District school superintendent Wes Taylor, alerted school officials as to the location of the body of plaintiffs' decedent while it was still in the said rolled-up gym mat.

166. While waiting in the administrative offices of said school, Plaintiff JACQUELYN JOHNSON was advised that the dead body of her son had been located in the old gym.

167. In the several hours which followed various members of the law enforcement agencies appeared at said high school for the alleged purpose of investigating the death of plaintiff's decedent.

168. Representatives of the various law enforcement agencies who arrived at the aforesaid high school shortly following the discovery of the body of plaintiffs' decedent included the Lowndes County Sheriff's Department, the City of Valdosta Police Department, the Valdosta-Lowndes, Regional Crime Laboratory ("VLRCL") and the Georgia Bureau of Investigation ("GBI").

169. In addition to the aforesaid law-enforcement agencies, one of the first responders to arrive at the aforesaid high school included two (2) emergency medical technicians ("EMT") who examined the body plaintiffs' decedent while it was still in the aforesaid old gym.

170. Of the various observations which were made by said EMTs, they noted that there was bruise to the right side of the jaw of plaintiffs' decedent. In preparing their report regarding their observations of the body of plaintiffs' decedent, said EMTs characterized the location of said body as a "crime scene."

171. Notwithstanding the aforesaid observations of said EMTs, who upon information and belief were the first and only medical experts to examine the body of plaintiffs' decedent while it was still in the aforesaid old gym, each of the defendant law enforcement officers failed to follow appropriate procedures to ensure against the contamination of the area surrounding where the body of plaintiffs' decedent was allegedly discovered or located.

172. After Plaintiff JACQUELYN JOHNSON was notified that the body that had been located in the gymnasium was believed to be her son, she along with other family members who arrived at the aforesaid high school, requested but were refused permission by persons acting under the authority and supervision of defendant to identify the body.

173. Notwithstanding the discovery of a dead body and the presence of defendant law-enforcement officials, said defendants knowingly and with malicious intent failed to notify the Lowndes County Coroner for approximately six (6) hours following the alleged discovery of the body of plaintiffs' decedent.

174. The aforesaid failure of the defendant Sheriff CHRIS PRINE to immediately notify the Lowndes County Coroner was in deliberate violation of the laws of the state of Georgia,

more specifically identified as O.C.G.A § 45-16-24, which states, in relevant part, that "it shall be the duty of any law enforcement officer or other person having knowledge of such death to notify immediately the corner or county medical examiner of the county in which the acts or events resulting in the death occurred or the body is found."

175. Notwithstanding the discovery of a dead body, the aforesaid observations of said EMTs, as well as, the location of blood of an unidentified source that was observed upon the surfaces of walls that were proximal to the location of the body of plaintiffs' decedent, Defendant CHRIS PRINE, expressed to the news media on January 11, 2013 that there was no evidence of "foul play" and that the cause of death was accidental based upon a theory that plaintiff's decedent died as a result of him attempting to retrieve a tennis shoe by entering into the center opening of the aforesaid rolled-up gym mat and thereafter becoming stuck and without the ability to free himself.

176. On or about January 12, 2013, Plaintiff KENNETH JOHNSON requested permission to view the body of plaintiffs' decedent, but was also refused permission by defendants.

177. Following the aforementioned denial of permission by defendants to allow plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON to view and identify the body of their deceased son, plaintiffs contacted the news media and conducted a press conference to voice their concerns regarding the kind of treatment that they were receiving from said defendant members of the law enforcement community, more particularly the Lowndes County Sheriff's Department and the Valdosta-Lowndes, Regional Crime Laboratory.

178. Upon information and belief, defendant Sheriff CHRIS PRINE and members of the Lowndes County Sheriff's Department, the City of Valdosta Police Department, and the Valdosta-Lowndes, Regional Crime Laboratory reconsidered their position regarding the Plaintiffs' request to view the body of their son and, as a consequence, granted them permission to come to the Valdosta-Lowndes, Regional Crime Laboratory for purposes of viewing the body.

179. On January 13, 2013, plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON went to the Valdosta-Lowndes, Regional Crime Laboratory where they were met by defendant Sheriff CHRIS PRINE and other members of the Sheriff's Department for purposes of viewing the body of plaintiffs' decedent. On that occasion, plaintiff KENNETH JOHNSON entered the room where the body of plaintiffs' decedent was being stored and noted that the room temperature appeared to be much warmer than what he had anticipated inasmuch as he thought that said room and the vault that the decedent's body was in was designed to preserve the remains through a process similar to refrigeration.

180. At that time, defendant Sheriff CHRIS PRINE explained to plaintiffs that plaintiff's decedent had entered the center hole of the aforementioned gym mat "feet first" and that while at the bottom of the hole, plaintiffs' decedent bent over to retrieve his tennis shoe and became stuck in such a way that he could not free or remove himself from the hole.

181. Upon hearing the foregoing explanation, plaintiff KENNETH JOHNSON stated to Sheriff CHRIS PRINE that his explanation was not possible, whereupon STRYDE JONES stated to plaintiff KENNETH JOHNSON that he (KENNETH JOHNSON) did not understand that "when you die, your muscles relax and then you fall forward."

182. Approximately two (2) or more days later, an ex-employee of the Lowndes County Sheriff's Department contacted plaintiff KENNETH JOHNSON and stated to him that he (KENNETH JOHNSON) misunderstood what defendant Sheriff CHRIS PRINE and STRYDE JONES had attempted to explain to plaintiffs and that their explanation was meant to explain that plaintiff's decedent had entered the center hole of the gym mat head first instead of feet first.

183. Due to the aforesaid findings of "no foul play" and a theory offered by defendant Sheriff CHRIS PRINE, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON were desirous of having a further investigation into the cause and circumstances of their son's death.

184. Concurrent therewith, Plaintiffs contacted Harrington's Funeral Home and Antonio Harrington for purposes of properly handling the remains of plaintiff's decedent, as well as, making the arrangements for the funeral services and internment of his remains.

185. On or about January 14, 2013, the remains of Plaintiffs' minor child were transported by Stephen Wesley Owens of Owen's Transport Service from the Valdosta-Lowndes, Regional Crime Laboratory to the GBI's Crime Lab located in Macon, Georgia for purposes of undergoing an official autopsy. Upon completion of said autopsy, Stephen Wesley Owens transported the remains of plaintiff's decedent back to Valdosta during the early afternoon hours of January 14, 2013 delivered said remains of Plaintiffs' decedent to Harrington's Funeral Home, all of which was pursuant to an understanding and oral agreement entered into between Plaintiffs and Defendants.

186. Antonio Harrington expressed to Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON his concerns as to the aforesaid explanation for their child's death and recommended that they should get a "second opinion" as to the cause of death notwithstanding

the then-unknown-findings of official autopsy. Plaintiffs concurred with Antonio Harrington's recommendation.

187. On or about January 16, 2013, an occasion on which Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON visited The Harrington's Funeral Home, said plaintiffs inquired of Antonio Harrington whether they could collect the clothing that plaintiff's decedent was wearing at the time that is body was discovered Lowndes High School. Responsive to said request, Antonio Harrington advised Plaintiffs that he was unaware that their child had any clothes when his remains were returned from the aforesaid GBI Crime Lab.

188. In addition to the aforesaid inquiry about their minor child's clothing, Plaintiffs discussed with Antonio Harrington the manner in which the remains would be prepared in contemplation of funeral proceedings. During said discussion, Antonio Harrington recommended that due to the level of decomposition that had been suffered to the face of Plaintiffs' minor child, that the funeral be a "closed casket" ceremony. In response, Plaintiffs vehemently opposed Antonio Harrington's recommendation and, thereafter, insisted that the ceremony be an "open casket" funeral. Upon being so advised, Antonio Harrington agreed to properly embalm the remains of plaintiff's decedent, as well as, make it presentable for the anticipated "open casket" funeral service. In connection therewith, , Antonio Harrington nor his staff were ever authorized by Plaintiffs to destroy or dispose of any of the plaintiffs' decedent's body parts, including but not limited to his internal organs.

189. In the course of attempting to ascertain the whereabouts of plaintiffs' decedent's clothing, Plaintiffs contacted the GBI Crime Lab in Macon, Georgia based upon Antonio

Harrington's representations to them that the subject clothing was not returned with the remains of plaintiffs' decedent.

190. Upon making contact with employees at the aforesaid GBI Crime Lab, Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were advised that all personal effects, including but not limited to plaintiff's decedent's clothing, was placed in a body bag and returned to Valdosta, Georgia with the aforesaid remains.

191. In addition to making contact with the aforesaid GBI Crime Lab for purposes of locating the said clothing which was worn by their son, plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON inquired as to the length of time that it would take the GBI Crime Lab to complete the autopsy report.

192. After several months of repeatedly calling the GBI Crime Lab to establish the status of the autopsy report, on or about May 2, 2013 the autopsy report which had been authored and prepared by Dr. Maryanne Gaffney-Kraft was released to the Lowndes County Sheriff's Department and ultimately, to Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON. This autopsy report concluded that the cause of death of Plaintiffs' decedent was positional asphyxia and the manner of death was concluded to be accidental.

193. Inasmuch as Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were in receipt of conflicting evidence and reports, as well as, being beleaguered by many unanswered questions, Plaintiffs made arrangements to have the remains of their son's remains exhumed for purposes of conducting a second and independent autopsy.

194. Yet, in spite of the absence of any ordinance, regulation, or state law requiring that the next of kin obtain a court order before they would be allowed to remove the remains of their

loved one, in this instance, the city manager the City Of Valdosta required that the Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON petition the Superior Court of Lowndes County for a court order before allowing them to exhume the remains of the plaintiffs' decedent.

195. On or about June 14, 2013, Plaintiffs' minor child was disinterred, and thereafter, the remains of plaintiff's decedent were transported to Orlando, Florida on June 15, 2013 for purposes of undergoing a second and independent autopsy by Dr. William R. Anderson, a licensed forensic pathologist in Orlando, Florida.

196. On or about June 15, 2013, as Dr. Anderson began to examine the inside of said minor child's abdomen, he devised that all of the internal organs were missing and that said decedent's body was stuffed with waded newspaper.

197. In addition, Dr. Anderson observed that the brain of Plaintiffs' decedent was also missing. Upon information and belief, the autopsy by Dr. Anderson was made more complicated and thus deprived him of the ability to conduct the type of autopsy that was otherwise contemplated and more definitive in nature.

198. Notwithstanding the foregoing circumstances, Dr. Anderson established that Plaintiffs' decedent had suffered an injury to the right side of his upper neck, and that the cause of death was blunt force trauma, an injury that was consistent with one that had been "inflicted" upon plaintiffs' decedent and "non-accidental" in nature.

199. Inasmuch as the right side of plaintiffs' decedent's upper neck had not been sectioned by Dr. Maryanne Gaffney-Kraft, the forensic pathologist who performed the official autopsy for the GBI, Dr. Anderson reached out to said defendant or her office to establish whether or not she wanted to examine his findings, including the tissue samples which were

taken from plaintiffs decedent during his autopsy of June 15, 2013. Upon information and belief, Dr. Maryanne Gaffney-Kraft nor anyone from her agency ever accepted Dr. Anderson's aforesaid invitation to examine his tissue specimens and thus establish whether or not said defendant had missed a critical factor in reaching her opinion as to whether the cause of death was altogether accidental or possessed features indicating an assault or blunt force trauma. In fact, Dr. Anderson's invitation was roundly rejected.

200. Prior to the completion of the aforesaid official autopsy by Dr. Maryanne Gaffney-Kraft and GBI, an Open Records Act ("ORA") request, pursuant to OCGA §50-18-70 *et seq.*, was initially placed upon the Lowndes County Sheriff's Department on behalf of plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON on January 28, 2013.

201. Notwithstanding that defendant Sheriff CHRIS PRINE had announced that the Sheriff's Department had completed its investigation on or about May 4, 2013 and as a consequence thereof, was no longer exempt from complying with the plaintiffs' ORA request, it was not until October 30, 2013 and November 6, 2013 that defendant Sheriff CHRIS PRINE ultimately released the Sheriff's Department's full investigative file, including copies of surveillance images recorded at Lowndes high school on January 10, 2013 and January 11, 2013. Said defendant Sheriff's compliance with plaintiffs aforesaid Open Records Act request, however, was the result of a court order which was issued on October 30, 2013 directing the Sheriff's Department to comply, as opposed to a voluntary act.

202. Of the materials that were reproduced by said Sheriff's Department for plaintiffs' examination, plaintiffs were advised that certain documents or materials were being withheld for

various reasons, including but not limited to the desire to protect the privacy of minors whose identity was otherwise disclosed or suggested in the documents.

203. In addition, said Sheriff's Department under the specific direction of defendant Sheriff CHRIS PRINE withheld photographs and moving images that plaintiffs were otherwise entitled to receive.

204. In addition to the refusal to disclose entire documents or allow for their review, said Sheriff's Department, under the specific direction of defendant Sheriff CHRIS PRINE, redacted many if not most of the documents it produced by eliminating any information that disclosed or suggested the identity of individuals it maintained or considered to be minors, as though the alleged minors were entitled to privacy or confidentiality under the Open Records Act, which they do not.

205. As a consequence of said Sheriff's Department's refusal to comply with the clear mandates of the Open Records Act, plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were forced to file a lawsuit against defendant Sheriff CHRIS PRINE.

206. The aforesaid refusal to comply with plaintiffs' ORA request constituted a deliberate and malicious effort to withhold information from plaintiffs who were legitimately entitled to receive same as a means of determining the true cause of their son's death, as well as, the identities and involvement of the individuals who were connected with or responsible for his death, including, but not limited to Brandon Bell and Brian Bell, the aforesaid sons of FBI Agent Rick Bell.

207. The aforesaid refusal by defendant Sheriff CHRIS PRINE and the various members of the Lowndes County Sheriff's Department was designed to also deliberately and maliciously

cover-up the deliberate effort by said law enforcement agencies to conduct a flawed investigation into the death of plaintiffs' decedent and thereby protect persons including, but not limited to, said Brandon Bell and Brian Bell, the aforesaid sons of FBI Agent Rick Bell.

208. In addition, the aforesaid refusal by defendant Sheriff CHRIS PRINE to comply with plaintiffs' ORA request was designed to deliberately and maliciously cover-up how various members of Lowndes County Sheriff's Department and the Georgia Bureau of Investigation deliberately and maliciously mishandled their investigation in such a way that anyone who would ever be charged with plaintiffs decedent's death would not be criminally convicted or held accountable as a result of civil prosecution.

## SECOND CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

209. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

210. The defendant Sheriff CHRIS PRINE's conduct directed toward the Plaintiffs, as described herein, was intentional malicious. It is so outrageous that it is not tolerated by civilized society.

211 As a direct and proximate result of the Defendants' conduct, the Plaintiffs suffered serious mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

212. By virtue of his conduct, defendant Sheriff CHRIS PRINE acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages

from the Defendants in such amount as shall be necessary and appropriate to punish defendant Sheriff CHRIS PRINE and to deter him and anyone else from ever committing similar misconduct in the future.

### THIRD CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

213. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

214. At all material times herein, the defendant Sheriff CHRIS PRINE owed a duty to the Plaintiffs to act with the ordinary care of a reasonable person with respect to all aspects of any service or treatment which a member of the public is entitled to, including but not limited to, the competent handling of a criminal investigation, particularly in ones involving victims such as plaintiffs. These duties include, but are not limited to: the hiring, retention, training and supervision of all agents, employees and representatives of the defendant Sheriff CHRIS PRINE and the Lowndes County Sheriff's Department.

215. The defendant Sheriff CHRIS PRINE also owed a duty to avoid and disassociate himself, as well as, members of the Lowndes County Sheriff's Department from the commission of any acts or conduct that was calculated to interfere with the lawful investigation and prosecution of any individuals or entities who may be engaged in seeking preferential treatment and protection from criminal prosecution.

216. At all times material herein, the defendant Sheriff CHRIS PRINE, by virtue of his direct involvement and that of those whom he was under a duty to supervise, sought to protect

and give preferential treatment to said Brandon Bell and Brian Bell, the aforesaid sons of FBI Agent Rick Bell.

217. In the course of failing to provide appropriate supervision of those under his command, the defendant Sheriff CHRIS PRINE enabled his subordinates in association with other persons and entities to undermine a criminal investigation into the death of plaintiffs' decedent, and in doing so, caused and continue to cause the plaintiffs to suffer severe emotional distress and great pain and suffering.

## FOURTH CAUSE OF ACTION
## CONSPIRACY TO CAUSE INFLICTION OF EMOTIONAL DISTRESS

218. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

219. At all times material herein, the defendant Sheriff CHRIS PRINE conspired with and sought the cooperation of a number of individuals, including but not limited to FBI Agent Rick Bell, School System Superintendent Wes Taylor, Lieutenant Stryde Jones, Sergeant Jack Winningham, GBI Crime Scene Specialist Wes Horne, funeral home director Antonio Harrington, Steve Owens of Owens Transport, and Dr. Maryanne Gaffney-Kraft, all for the purpose of covering up the commission of criminal conduct and activities, including but not limited to those of Brandon Bell and Brian Bell as relates to the death of plaintiff's decedent.

220. On repeated occasions, the Lowndes County Sheriff's Department has maintained that said Brandon Bell and Brian Bell were never considered to be suspects even though their father, FBI Agent Rick Bell, is a law enforcement officer himself and someone who is keenly aware of the importance of conducting fair, honest and thorough investigations, nevertheless

refused to allow his sons to be interviewed by investigators on at least two (2) or more separate occasions.

221. In addition to the foregoing, the defendant Sheriff CHRIS PRINE's efforts to protect and serve the interests of fellow law enforcement, including but not limited to FBI Agent Rick Bell, involved obtaining the assistance of persons who desecrated the remains of their son.

222. As a direct and proximate result of the Defendants' conduct, the Plaintiffs suffered serious mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

223. By virtue of the foregoing conduct , the defendant Sheriff CHRIS PRINE acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies.

## FIFTH CAUSE OF ACTION
## VIOLATION OF STATE CONSTITUTION GUARANTEEING EQUAL PROTECTION

224. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

225. The Lowndes County Sheriff's Department, as previously alleged, has maintained that said Brandon Bell and Brian Bell were never considered to be suspects even though their father, FBI Agent Rick Bell refused to allow his sons to be interviewed by investigators on at least two (2) or more separate occasions.

226. In this regard, defendant Sheriff CHRIS PRINE violated the equal protection clause of the Constitution for the State of Georgia by engaging in race discrimination.

227. In this regard, the Lowndes County Sheriff's Department, on the other hand, insisted upon taking into custody for questioning an African-American male whose initials were "BB", the same as Brandon Bell and Brian Bell. At all times relevant here to, Brandon Bell and Brian Bell are Caucasian.

228. In this regard, the Lowndes County Sheriff's Department, on the other hand, insisted upon taking into custody for questioning an African-American male whose initials were "BB", the same as Brandon Bell and Brian Bell. At all times relevant here to, Brandon Bell and Brian Bell are Caucasian. Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON are African-Americans.

229. As a direct and proximate result of the Defendants' conduct, the Plaintiffs suffered violation of their constitutional rights and the social stigma that no reasonable person could be expected to endure or adequately cope with.

230. By virtue of the foregoing conduct , the defendant Sheriff CHRIS PRINE acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies.

## TWELFTH CAUSE OF ACTION

## CONSPIRACY TO DEPRIVE PLAINTIFFS OF EQUAL PROTECTION OF THE LAWS OR OF EQUAL PRIVILEGES AND IMMUNITIES UNDER THE LAWS
### ( pursuant to Title 42 U.S.C. Secs. 1983 and 1985(3)Against Chris Prine )

231. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

232. At all material times, the Defendant CHRIS PRINE, as the chief policymaker for the Sheriff's Department, owed a duty to conduct a proper criminal investigation into the death of plaintiffs' decedent, Kendrick Johnson, or more specifically, the misconduct of certain individuals, including but not limited to BRANDON BELL,  BRIAN BELL, and RICK BELL.

233. Defendant CHRIS PRINE sought to engage in a conspiracy to hide or cover up the misconduct of persons responsible for the death of plaintiffs' decedent.

234. The aforesaid conspiracy on the part of members of the Lowndes County Sheriff's Department, including but not limited to Defendant CHRIS PRINE along with FRANK SIMMONS, JAMES THORNTON, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, JOHN MARION, STEVE OWENS and WES TAYLOR, came about for purposes of preventing the proper investigation and prosecution of persons responsible for causing the death of plaintiffs' decedent, Kendrick Johnson.

235. In this regard, Defendant CHRIS PRINE conspired to violate plaintiffs' right to equal protection of the laws or of equal privileges and immunities under the law, all of which is actionable pursuant to Title 42 U.S.C. Sec. 1983.

236. Defendant CHRIS PRINE, and those under his supervision within the Lowndes County Sheriff's Department, were indifferent towards the constitutional rights of plaintiffs with respects to the equal enforcement of law which plaintiffs were entitled to receive.

237. Defendant CHRIS PRINE's failure to adequately train the aforesaid members of the Lowndes County Sheriff's Department, as stated above, is a custom of such regular and long-standing nature that it constitutes a policy.

238. Defendant CHRIS PRINE's failure to properly supervise the aforesaid members of the Lowndes County Sheriff's Department in a way designed to prevent the formation of unlawful conspiracies, as stated above, is a custom of such regular and long-standing nature that it constitutes a policy.

239. Defendant CHRIS PRINE knew or should of known that members of the Lowndes County Sheriff's Department were not being properly supervised nor trained in the proper handling of a criminal investigation.

240. Defendant CHRIS PRINE failed to establish policies regarding the lawful and proper method of conducting criminal investigations.

241. Defendant CHRIS PRINE, by virtue of his own direct involvement in the mishandling of the investigation into the death of Kendrick Johnson, established a policy that members of the Lowndes County Sheriff's Department were guided by and carried out his example as "departmental policy."

242. Defendant CHRIS PRINE knew or should have known that the failure to establish policies on the proper manner in which to conduct criminal investigations, as well as, by his own example, would result in a depravation of plaintiffs' constitutional rights.

243. Defendant CHRIS PRINE's failure to establish policies on the proper manner in which to conduct criminal investigations was the "moving force" of the ddeprivation of plaintiffs' 14th Amendment rights to equal protection and due process under the United States Constitution.

244. When Defendant CHRIS PRINE allowed the investigation into the death of Kendrick Johnson to be thwarted, mishandled and misdirected for purposes of protecting the persons responsible for Kendrick Johnson's death, he deprived plaintiffs of rights, privileges and immunities secured by the Constitution and the laws of the United States.

245. When Defendant CHRIS PRINE ordered or directed that the investigation into the death of Kendrick Johnson to be thwarted, mishandled and misdirected for purposes of protecting the persons responsible for Kendrick Johnson's death, he deprived plaintiffs of rights, privileges and immunities secured by the Constitution and the laws of the United States.

246. When Defendant CHRIS PRINE conspired with others so that the investigation into the death of Kendrick Johnson would be thwarted, mishandled and misdirected for purposes of protecting the persons responsible for Kendrick Johnson's death, he deprived plaintiffs of rights, privileges and immunities secured by the Constitution and the laws of the United States.

247. As a result of Defendant CHRIS PRINE's foregoing misconduct, plaintiffs' rights under the United States Constitution were violated and resulted in emotional and psychological injuries, as well as a denial of access to the courts.

**THIRTEENTH CAUSE OF ACTION**
**CONSPIRACY TO DEPRIVE PLAINTIFFS OF EQUAL PROTECTION OF THE LAWS OR OF EQUAL PRIVILEGES AND IMMUNITIES UNDER THE LAWS**
**( pursuant to Title 42 U.S.C. Secs. 1983 and 1985(3))**

The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

248. Defendant CHRIS PRINE, and those under his supervision within the Lowndes County Sheriff's Department, were indifferent towards the constitutional rights of plaintiffs with respects to the equal enforcement of law which plaintiffs were entitled to receive.

249. Defendant CHRIS PRINE's failure to adequately train the aforesaid members of the Lowndes County Sheriff's Department, as stated above, is a custom of such regular and long-standing nature that it constitutes a policy.

250. Defendant CHRIS PRINE's failure to properly supervise the aforesaid members of the Lowndes County Sheriff's Department in a way designed to prevent the formation of unlawful conspiracies, as stated above, is a custom of such regular and long-standing nature that it constitutes a policy.

251. Defendant CHRIS PRINE knew or should of known that members of the Lowndes County Sheriff's Department were not being properly supervised nor trained in the proper handling of a criminal investigation.

252. Defendant CHRIS PRINE failed to establish policies regarding the lawful and proper method of conducting criminal investigations.

253. Defendant CHRIS PRINE, by virtue of his own direct involvement in the mishandling of the investigation into the death of Kendrick Johnson, established a policy that members of the Lowndes County Sheriff's Department were guided by and carried out his example as "departmental policy."

254. Defendant CHRIS PRINE knew or should have known that the failure to establish policies on the proper manner in which to conduct criminal investigations, as well as, by his own example, would result in a depravation of plaintiffs' constitutional rights.

255. Defendant CHRIS PRINE's failure to establish policies on the proper manner in which to conduct criminal investigations was the "moving force" of the deprivation of plaintiffs'14th Amendment rights to equal protection and due process under the United States Constitution.

256. The unlawful and conspiratorial involvement of FRANK SIMMONS, JAMES THORNTON, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, JOHN MARION, STEVE OWENS and WES TAYLOR, in their effort to cover up the involvement of persons responsible for the death of Kendrick Johnson, was the result of Defendant CHRIS PRINE's and the Lowndes County Sheriff's Department's policy and/or custom of generally failing to properly and adequately train those within is and its employ on the proper methods of conducting criminal investigations.

257. Defendant CHRIS PRINE's failure to establish policies for the proper and lawful investigation of crimes and other such instances resulted in injuries suffered by plaintiffs, and as a consequence, FRANK SIMMONS, JAMES THORNTON, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK

PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER

BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, and JOHN

MARION are liable in Respondent Superior.

## 14TH CAUSE OF ACTION
### (Claim for Wrongful Death as Against All Defendants)

258. Plaintiffs reallege and incorporate as if set forth fully verbatim herein, the

allegations of paragraphs 1 through 57 of the Complaint.

259. On or about January 10, 2013, Defendants failed to properly supervise members of

the staff at Lowndes High School, who in turn were responsible for supervising students at said

high school, including but not limited to Brandon Bell and Brian Bell, and in doing so, failed to

protect Kendrick Lamar Johnson from a physical assault and other related risks of harm.

260. As a direct and proximal result of defendants' aforesaid failure, Kendrick Lamar

Johnson was violently assaulted, severely injured, and died at some time between January 10,

2013 and January 11, 2013.

261. Defendants' failure to protect Kendrick Lamar Johnson from foreseeable acts of

violence and injuries by ensuring that the staff at said high school were properly trained on how

to supervise students is ministerial and mandated by law. As such, each Defendant in the

foregoing regard exhibited reckless and grossly and wantonly negligent misconduct, and are

therefore liable to Plaintiffs in and I now

### 15TH CAUSE OF ACTION
### Claim for Wrongful Death as Against Defendants Wes Taylor and Jay Floyd)

262. Plaintiffs reallege and incorporate as if set forth fully verbatim herein, the allegations of paragraphs 1 through 57 of the Complaint.

263. On or about January 10, 2013, the video surveillance system at Lowndes High School was malfunctioning in that it would not permit members of the staff to observe Kendrick Lamar

Johnson's movements while in said high school's "old gym.

264. Upon information and belief, Plaintiffs contend that the aforesaid surveillance system had been malfunctioning for an extensive period of time prior to January 10, 2013, and that despite the obvious need for repair of same, Defendants WES TAYLOR and JAY FLOYD either deliberately or negligently failed to get the aforesaid surveillance system repaired.

265. As a direct and proximal result of defendants' aforesaid failure, Kendrick Lamar Johnson was stranded upside down in a rolled up gym mat, and as a result of being unable to free himself, died at some time on or about January 10, 2013 or January 11, 2013.

266. Defendants' failure to arrange for the repair of said surveillance system is a ministerial and mandated by the Defendant Lowndes County School District's rules, regulations and standard operating procedures. As such, Defendants WES TAYLOR and JAY FLOYD exhibited reckless disregard for the safety of Kendrick Lamar Johnson, and thereby demonstrated grossly and wantonly negligent misconduct. As such, Defendants WES TAYLOR and JAY FLOYD are liable to Plaintiffs for the wrongful death of Kendrick Lamar Johnson.

## 16TH CAUSE OF ACTION
### Claim for Intentional Infliction of Emotional Distress as Against Defendants Wes Taylor and Jay Floyd pursuant to Title 42 U.S.C. "1983 and 1985(3))

267. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

268. The Defendants JAY FLOYD and each of the defendant board members for the Defendant LOWNDES COUNTY SCHOOL DISTRICT engaged in a conspiracy to cover up the misconduct of certain individuals, including but not limited to defendants Brandon Bell, Brian Bell, and Rick Bell, and as a consequence, was directed toward the Plaintiffs, as described herein. As such, said defendants' conduct was intentional, unlawful, and malicious. It is so outrageous that it is not tolerated by civilized society.

269. As a direct and proximate result of said Defendants' conduct, the Plaintiffs suffered serious mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

270. In their conduct, said Defendants acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from each of the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies and acts of corruption.

## 17th C AUSE OF ACTION
### (Claim for Negligent Infliction of Emotional Distress as Against All Defendants)

271. Plaintiffs incorporate the allegations contained in the preceding paragraphs 1-70 as if fully set forth herein.

272. The aforementioned acts, omissions and conduct of the Defendants were extreme, outrageous, malicious or with the total disregard or deliberate indifference to the constitutional and civil rights of the Plaintiffs and therefore, the Defendant was aware, knew or should have known that its acts, omissions and conduct would cause Plaintiffs extreme and severe emotional distress.

273. To the extent that the Defendants knew or should have known of the conduct that Kendrick Lamar Johnson was being subjected to, including, bullying, discrimination, and harassment, Defendants had a duty to Plaintiffs and/or owed Plaintiffs a duty to intervene so as to prevent further harassing conduct and the assault on Kendrick Lamar Johnson and therefore, the acts to Plaintiffs and injuries to Plaintiffs were foreseeable.

274. That Defendants breached its duty owed Plaintiffs by failing to intervene so as to prevent further harassment by students and said breach resulted in continued harassment, emotional and psychological harm to Plaintiffs and the ultimate physical assault and impact to Kendrick Lamar Johnson. To this end, the defendant Lowndes County School District is liable for infliction of emotional distress caused by its negligence in the foregoing regard.

## 18TH CAUSE OF ACTION

### Claim for Negligence as Against All Defendants)

275. Plaintiffs incorporate the allegations contained in the preceding paragraphs 1-74 as if fully set forth herein.

276. Inasmuch as Kendrick Lamar Johnson was in the care of the staff and administrators at Lowndes High School, Defendants had a duty of care to protect him from being harassed, discriminated and bullied by other students and staff alike. Likewise, the Defendants are responsible for supervising, disciplining, controlling and protecting children in its control, custody, possession and care, which it failed to do.

277. The Defendants breached their duty to Plaintiffs by failing to adequately implement policies, procedures, guidelines, training, supervision or instructions to its employees and students at LOWNDES HIGH SCHOOL so as to prevent bullying harassment of students.

278. As a direct and proximate result of the actions and omissions of the Defendants, including Defendants' prior knowledge of problems and complaints as registered by Plaintiff JACQUELYN JOHNSON, coupled with the Defendants' failure to exercise appropriate remedial measures, led to the continued harassment and ultimate death of Kendrick Lamar Johnson. The aforementioned injuries suffered by Kendrick Lamar Johnson were foreseeable, and therefore cause Defendants to become liable."

### 19th Cause of Action
### Claims Brought on Behalf of the Decedent's Estate

267. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

268. At all times material to this Complaint, Defendant LOWNDES COUNTY SCHOOL DISTRICT acted through its agents, employees, teachers, administrators, staff and representatives, including but not limited to Defendants FRED WETHERINGTON, WES TAYLOR and JAY FLOYD, each of whom were acting under color of state statutes, ordinances, regulations, customs and usages of the State of Georgia and, in their actions and appearances, pursuant to the scope of their authority.

269. At all times material to this Complaint, KENDRICK LAMAR JOHNSON was a seventeen (17) year old male child who was in the tenth (10th) grade and attending Lowndes High School located in Valdosta, Georgia. All conditions precedent to the filing of this Complaint have occurred, been satisfied, or been waived in that written notice has been previously provided to the Defendants.

### Facts Common to All Remaing Counts

270. During the school year of 2012 – 2013, KENDRICK LAMAR JOHNSON, an African-American student, was attending Lowndes High School in Valdosta, Lowndes County, Georgia. To this end, there existed a "special relationship" between the KENDRICK LAMAR JOHNSON and the Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY owed or had a duty to properly supervise the activities of all students who

were attending Lowndes High School and to protect KENDRICK LAMAR JOHNSON, who was in its care on or about January 10, 2013.

271.   Approximately one (1) year before the aforesaid incident of January 10, 2013, Defendant LOWNDES COUNTY SCHOOL DISTRICT, through its agents, employees, teachers, administrators, staff or representatives were on notice that KENDRICK LAMAR JOHNSON had been senselessly assaulted by another student who also attended Lowndes High School. In this regard, Plaintiff's representative, Plaintiff JACQUELYN JOHNSON, complained to administrative personnel of the Defendant LOWNDES COUNTY SCHOOL DISTRICT that her son, KENDRICK LAMAR JOHNSON, had reported to her that while on a school bus that had traveled to another school for an athletic competition that was sanctioned and arranged by Defendant LOWNDES COUNTY SCHOOL DISTRICT, he had been victimized by Brian Bell, a fellow student at Lowndes High School and teammate on the high school's football team. Plaintiff JACQUELYN JOHNSON also indicated to said administrative personnel and school officials at Defendants' Lowndes High School that, according to her son, he was improperly accused and blamed for instigating the aforesaid fight on the school bus. Accordingly, Plaintiff JACQUELYN JOHNSON requested that the aforesaid said administrative personnel and school officials at Lowndes High School allow her to watch the video recording from the school bus's surveillance system, but despite her right to do so, said request was summarily denied by representatives of the Defendant LOWNDES COUNTY SCHOOL DISTRICT.

272.   In connection with and following  Plaintiff JACQUELYN JOHNSON's lodging of the foregoing complaint, KENDRICK LAMAR JOHNSON was subjected to undeserved punishment, humiliation and various forms of mistreatment by members of the coaching staff of the Lowndes High School football program.

273.   Upon information and belief, the aforesaid dispute between Brian Bell and KENDRICK LAMAR JOHNSON was not properly investigated nor handled in an appropriate manner, and as a consequence, was allowed to remain unsettled and unresolved, all of which was known to or should have been known to officials and personnel employed by  Defendant LOWNDES COUNTY  SCHOOL DISTRICT. Moreover, upon information and belief, KENDRICK LAMAR JOHNSON reported to plaintiffs that subsequent to the aforesaid dispute between he and Brian Bell, Brandon Bell, older brother to Brian Bell and also a student at said Lowndes High School , confronted him (KENDRICK LAMAR JOHNSON) and stated to him that, "it ain't over."

274.   In connection with the aforementioned dispute and resulting mistreatment of KENDRICK LAMAR JOHNSON, Defendants thereafter failed to properly supervise and protect said Plaintiff from further mistreatment and harassment, including, but not limited to, other assaults and fatal injuries. Upon information and belief, Defendant SCHOOL DISTRICT s' failure to properly supervise its student population included its failure to properly monitor the activities of students throughout all areas of the Lowndes High School campus, including but not limited to locker rooms and utility closets, as well as its failure to maintain a

properly functioning video surveillance system.

275.     Defendant SCHOOL DISTRICT violated KENDRICK LAMAR JOHNSON's right to be free of mistreatment and harassment, whether at the hands of fellow students or school personnel. Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY violated the aforesaid right by condoning certain practices, policies and procedures that have resulted in the inadequate training of teachers, coaching staff and administrators on how to properly monitor and supervise students, protect them from assaults or the harassment of other students, as well as, investigate any such instances whenever they occur.

276 .     As a direct and proximal result of having a custom of failing to properly train its teachers, coaching staff and administrators on how to properly monitor and supervise students, protect them from assaults or the harassment of other students, and investigate any such instances whenever they occur, such failures by Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY were intentional or, at best, negligent and done with complete, reckless and callous disregard for the rights and privileges of KENDRICK LAMAR JOHNSON.

277 .     That as a direct and proximate result of Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY's aforesaid actions and omissions, on or about January 10, 2013, KENDRICK LAMAR JOHNSON was violently assaulted, severely injured, suffered great physical pain and mental anguish, and subjected to insult and loss of life, all of which took place at the hands of one (1) or more students while upon the property of

Lowndes High School and during its normal hours of operation.

## 20th cause of action
## Against All Defendants for Negligent Training and Supervision

Plaintiffs incorporate the allegations contained in the preceding paragraphs1-16 as if fully set forth herein.

278 .    At all times mentioned herein, Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY  recruited, hired, instructed, trained, employed, supervised and retained the teachers, administrators and faculty members to supervise, discipline, control and protect children in its control, custody, possession and care.

279 .    As KENDRICK LAMAR JOHNSON was in the care of Defendants, said Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY had a duty of care to protect KENDRICK LAMAR JOHNSON, from assaults and harassment, including but not limited to "bullying" by other students. In the foregoing regard, said Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY breached its duty to the students of Lowndes High School in general and specifically to KENDRICK LAMAR JOHNSON, by failing to adequately perform the activities cited in preceding paragraphs, more particularly by  failing to implement policies, procedures, training and supervision to faculty members and administrators, regarding investigating, remedying and prohibiting harassment and assaultive behavior on the part of students. Said policies or customs,

or lack thereof, amounted to and reflected said Defendant's deliberate indifference to the rights of KENDRICK LAMAR JOHNSON.

280 .      As a direct and proximate result of the acts and omissions of the Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY , including said defendants' knowledge of prior complaints by one (1) or more parents of KENDRICK LAMAR JOHNSON, said Defendant caused, encouraged or precipitated the ultimate assault of KENDRICK LAMAR JOHNSON on or about January 10, 2013.  The acts against and injuries to KENDRICK LAMAR JOHNSON  were foreseeable and hence the Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY were negligent and are therefore liable to the Estate of KENDRICK LAMAR JOHNSON for injuries he sustained.

### 21st cause of action -
### Against All Defendants for Negligent Infliction of Emotional Distress

Plaintiffs incorporate the allegations contained in the preceding paragraphs of 1-19 as if fully set forth herein.

281 .  The aforementioned acts, omissions and conduct of the Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY  were extreme, outrageous, malicious or with the  total disregard or deliberate indifference to the rights of the KENDRICK LAMAR JOHNSON  and therefore, said Defendants were aware, knew or should

have known that its acts, omissions and conduct would cause Plaintiff extreme and severe emotional distress.

282 . Upon information and belief, Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY knew or should have known of the conduct that KENDRICK LAMAR JOHNSON and other students were being subjected to in and about the premises of, including, fighting, bullying, and harassment, said Defendants had a duty to protect KENDRICK LAMAR JOHNSON and/or owed a him a duty to properly monitor and supervise all of its students and, whenever necessary, to promptly intervene so as to prevent injury to any student, including but not limited to KENDRICK LAMAR JOHNSON. Accordingly, the assault upon KENDRICK LAMAR JOHNSON and the injuries he sustained and experienced were foreseeable and the proximate result of said Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY having breached its duty to KENDRICK LAMAR JOHNSON by failing to adequately implement policies, procedures, guidelines, training, supervision or instructions to its employees and students attending Lowndes High School.

283 . As a direct and proximate result of the aforesaid outrageous acts and physical injuries suffered by KENDRICK LAMAR JOHNSON, he is entitled to recover for the emotional distress that he was forced to endure.

## 21st cause of action

**<u>Against All Defendants for Funeral Expenses</u>**

Plaintiffs incorporate the allegations contained in the preceding paragraphs of 1-22 as if fully set forth herein.

284 .    The aforementioned acts, omissions and conduct of the Defendants LOWNDES COUNTY SCHOOL DISTRICT, WES TAYLOR and JAY FLOY were the direct and proximate cause leading to the death of KENDRICK LAMAR JOHNSON on or about January 10, 2013. As a direct consequence of this child's death, the Estate of KENDRICK LAMAR JOHNSON is entitled to recover any and all amounts incurred in the way of the funeral expenses that were surrounding and connected to his burial.

285 .    As a consequence of the aforementioned death, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON contracted with Harrington's Funeral Home located in Valdosta, Georgia for purposes of arranging and providing all of the services and materials that were needed to accomplish a proper burial and "going home" ceremony for their son, KENDRICK LAMAR JOHNSON.

286.    The amount charged by Harrington's Funeral Home exceeds Five Thousand Dollars ($5,000.00), the exact amount of which shall be proven at the time of trial.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, the Plaintiffs request the following relief:

a. An award of compensatory damages for each Plaintiff, in an amount deemed

appropriate by the enlightened conscience of the trier of fact, jointly and severally, against the Defendants;

 b. An award of punitive damages, jointly and severally, against the Defendants;

 c. An award of pre-judgment and post-judgment interest;

 d. An award of costs, including, but not limited to, discretionary costs, attorneys' fees and expenses incurred in pursuing this case;

 e. A order directing Defendant MARYANNE GAFFNEY-KRAFT to make arrangements for the examination of the tissue specimens collected by Dr. William Anderson

 f. Any other and further relief this Court deems just and proper; and

 g. Any other and further relief to which they may be entitled.


This _17_ day of _August_ 2016

THE C. B. KING LAW FIRM

BY: _____
Chevene B. King, Jr.
Attorney for Plaintiffs
State Bar No.: 420105

Prepared by:


Prepared by:
Chevene B. King, Jr.
Post Office Drawer 3468
Albany, GA 31706
(229)436-0524
State Bar No.: 420105