# IN THE SUPERIOR COURT OF LOWNDES COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| KENNETH JOHNSON and JACQUELYN JOHNSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE |
| CABLE NEWS NETWORK, INC., | ) | NO: 2013-CV-1230 |
| | ) | |
| Intervenor | ) | |
| vs. | ) | |
| CHRIS PRINE, as Sheriff of Lowndes County, Georgia, as well as, in his individual capacity, and LOWNDES COUNTY SCHOOL DISTRICT, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

---

## AMENDED COMPLAINT OF KENNETH JOHNSON AND JACQUELYN JOHNSON

NOW COMES KENNETH JOHNSON and JACQUELYN JOHNSON, Plaintiffs in the above styled action, and who hereby sets forth this amended complaint to add the following causes of action against the Defendant CHRIS PRINE, in his official capacity as Sheriff of Lowndes County, Georgia, as well as, in his individual capacity, and demand for relief arising in connection therewith. Although this Complaint sets forth certain causes of action against the individuals and entities whose names or identities are recited herein below, this Complaint is not to be construed as a negation of Plaintiffs' claims against any other parties whose names or identities are not specifically set forth herein.

## JURISDICTION

1. The following causes of action asserted hereinafter are in supplementation and not in substitution of the action which was originally brought by plaintiffs herein for violations of the open records act, O.C.G.A.§50-18-70 et seq.

2. This Court has jurisdiction to adjudicate the claims asserted in this amended complaint. Venue is proper in this Court.

## FACTS COMMON TO ALL CLAIMS

3.. On January 10, 2013, KENDRICK LAMAR JOHNSON (hereinafter sometimes referred to as "plaintiffs' decedent" or "plaintiffs' son" or "plaintiffs' child"), an African-American student, was attending Lowndes High School in Valdosta, Lowndes County, Georgia.

4.. At some point during the afternoon of January 10, 2013, plaintiff's decedent failed to attend the balance of his scheduled classes.

5. Upon information and belief, plaintiff's decedent entered an area upon the Lowndes High School campus where, after either being induced by a fellow student to go to said location or because of plaintiff's decedent's relationship to a fellow student, plaintiffs' decedent encountered by Brandon Bell and Brian Bell, both of whom were fellow male students at said high school and the children of a local FBI agent, Rick Bell.

6. Upon information and belief, when plaintiff's decedent arrived at the aforementioned location, he was violently assaulted by persons, including but not limited to Brandon Bell and Brian Bell, and, in the course thereof, suffered a fatal blow which led to his death.

7. Following the death of plaintiffs' decedent, if not during the course of said assault, defendants placed the body of plaintiffs' decedent inside of a rolled-up gym mat and secluded

same in the far southwest corner of the gymnasium that is commonly referred to as the "old gym."

8. On the morning of January 11, 2013, Plaintiff JACQUELYN JOHNSON came to said high school to inquire as to the whereabouts of plaintiff's decedent who had failed to return home from said high school the evening before.

9. Upon information and belief, Lori Taylor and her younger sister Laina Taylor, who were students at said high school and who are the daughters of Lowndes County School District school superintendent Wes Taylor, alerted school officials as to the location of the body of plaintiffs' decedent while it was still in the said rolled-up gym mat.

10. While waiting in the administrative offices of said school, Plaintiff JACQUELYN JOHNSON was advised that the dead body of her son had been located in the old gym.

11. In the several hours which followed various members of the law enforcement agencies appeared at said high school for the alleged purpose of investigating the death of plaintiff's decedent.

12. Representatives of the various law enforcement agencies who arrived at the aforesaid high school shortly following the discovery of the body of plaintiffs' decedent included the Lowndes County Sheriff's Department, the City of Valdosta Police Department, the Valdosta-Lowndes, Regional Crime Laboratory ("VLRCL") and the Georgia Bureau of Investigation ("GBI").

13. In addition to the aforesaid law-enforcement agencies, one of the first responders to arrive at the aforesaid high school included two (2) emergency medical technicians ("EMT") who examined the body plaintiffs' decedent while it was still in the aforesaid old gym.

14. Of the various observations which were made by said EMTs, they noted that there was bruise to the right side of the jaw of plaintiffs' decedent. In preparing their report regarding their observations of the body of plaintiffs' decedent, said EMTs characterized the location of said body as a "crime scene."

15. Notwithstanding the aforesaid observations of said EMTs, who upon information and belief were the first and only medical experts to examine the body of plaintiffs' decedent while it was still in the aforesaid old gym, each of the defendant law enforcement officers failed to follow appropriate procedures to ensure against the contamination of the area surrounding where the body of plaintiffs' decedent was allegedly discovered or located.

16. After Plaintiff JACQUELYN JOHNSON was notified that the body that had been located in the gymnasium was believed to be her son, she along with other family members who arrived at the aforesaid high school, requested but were refused permission by persons acting under the authority and supervision of defendant  to identify the body.

17. Notwithstanding the discovery of a dead body and the presence of defendant law-enforcement officials, said defendants knowingly and with malicious intent failed to notify the Lowndes County Coroner for approximately six (6) hours following the alleged discovery of the body of plaintiffs' decedent.

18. The aforesaid failure of the defendant Sheriff CHRIS PRINE to immediately notify the Lowndes County Coroner was in deliberate violation of the laws of the state of Georgia, more specifically identified as O.C.G.A § 45-16-24, which states, in relevant part, that "it shall be the duty of any law enforcement officer or other person having knowledge of such death to notify immediately the corner or county medical examiner of the county in which the acts or events resulting in the death occurred or the body is found."

19. Notwithstanding the discovery of a dead body, the aforesaid observations of said EMTs, as well as, the location of blood of an unidentified source that was observed upon the surfaces of walls that were proximal to the location of the body of plaintiffs' decedent, Defendant CHRIS PRINE, expressed to the news media on January 11, 2013 that there was no evidence of "foul play" and that the cause of death was accidental based upon a theory that plaintiff's decedent died as a result of him attempting to retrieve a tennis shoe by entering into the center opening of the aforesaid rolled-up gym mat and thereafter becoming stuck and without the ability to free himself.

20. On or about January 12, 2013, Plaintiff KENNETH JOHNSON requested permission to view the body of plaintiffs' decedent, but was also refused permission by defendants.

21. Following the aforementioned denial of permission by defendants to allow plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON to view and identify the body of their deceased son, plaintiffs contacted the news media and conducted a press conference to voice their concerns regarding the kind of treatment that they were receiving from said defendant members of the law enforcement community, more particularly the Lowndes County Sheriff's Department and the Valdosta-Lowndes, Regional Crime Laboratory.

22. Upon information and belief, defendant Sheriff CHRIS PRINE and members of the Lowndes County Sheriff's Department, the City of Valdosta Police Department, and the Valdosta-Lowndes, Regional Crime Laboratory reconsidered their position regarding the Plaintiffs' request to view the body of their son and, as a consequence, granted them permission to come to the Valdosta-Lowndes, Regional Crime Laboratory for purposes of viewing the body.

23. On January 13, 2013, plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON went to the Valdosta-Lowndes, Regional Crime Laboratory where they were met by

defendant Sheriff CHRIS PRINE and other members of the Sheriff's Department for purposes of viewing the body of plaintiffs' decedent. On that occasion, plaintiff KENNETH JOHNSON entered the room where the body of plaintiffs' decedent was being stored and noted that the room temperature appeared to be much warmer than what he had anticipated inasmuch as he thought that said room and the vault that the decedent's body was in was designed to preserve the remains through a process similar to refrigeration.

24. At that time, defendant Sheriff CHRIS PRINE explained to plaintiffs that plaintiff's decedent had entered the center hole of the aforementioned gym mat "feet first" and that while at the bottom of the hole, plaintiffs' decedent bent over to retrieve his tennis shoe and became stuck in such a way that he could not free or remove himself from the hole.

25. Upon hearing the foregoing explanation, plaintiff KENNETH JOHNSON stated to Sheriff CHRIS PRINE that his explanation was not possible, whereupon STRYDE JONES stated to plaintiff KENNETH JOHNSON that he (KENNETH JOHNSON) did not understand that "when you die, your muscles relax and then you fall forward."

26. Approximately two (2) or more days later, an ex-employee of the Lowndes County Sheriff's Department contacted plaintiff KENNETH JOHNSON and stated to him that he (KENNETH JOHNSON) misunderstood what defendant Sheriff CHRIS PRINE and STRYDE JONES had attempted to explain to plaintiffs and that their explanation was meant to explain that plaintiff's decedent had entered the center hole of the gym mat head first instead of feet first.

27. Due to the aforesaid findings of "no foul play" and a theory offered by defendant Sheriff CHRIS PRINE, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON were desirous of having a further investigation into the cause and circumstances of their son's death.

28. Concurrent therewith, Plaintiffs contacted Harrington's Funeral Home and Antonio Harrington for purposes of properly handling the remains of plaintiff's decedent, as well as, making the arrangements for the funeral services and internment of his remains.

29. On or about January 14, 2013, the remains of Plaintiffs' minor child were transported by Stephen Wesley Owens of Owen's Transport Service from the Valdosta-Lowndes, Regional Crime Laboratory to the GBI's Crime Lab located in Macon, Georgia for purposes of undergoing an official autopsy. Upon completion of said autopsy, Stephen Wesley Owens transported the remains of plaintiff's decedent back to Valdosta during the early afternoon hours of January 14, 2013 delivered said remains of Plaintiffs' decedent to Harrington's Funeral Home, all of which was pursuant to an understanding and oral agreement entered into between Plaintiffs and Defendants.

30. Antonio Harrington expressed to Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON his concerns as to the aforesaid explanation for their child's death and recommended that they should get a "second opinion" as to the cause of death notwithstanding the then-unknown-findings of official autopsy. Plaintiffs concurred with Antonio Harrington's recommendation.

31. On or about January 16, 2013, an occasion on which Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON visited The Harrington's Funeral Home, said plaintiffs inquired of Antonio Harrington whether they could collect the clothing that plaintiff's decedent was wearing at the time that is body was discovered Lowndes High School. Responsive to said request, Antonio Harrington advised Plaintiffs that he was unaware that their child had any clothes when his remains were returned from the aforesaid GBI Crime Lab.

32. In addition to the aforesaid inquiry about their minor child's clothing, Plaintiffs discussed with Antonio Harrington the manner in which the remains would be prepared in contemplation of funeral proceedings. During said discussion, Antonio Harrington recommended that due to the level of decomposition that had been suffered to the face of Plaintiffs' minor child, that the funeral be a "closed casket" ceremony. In response, Plaintiffs vehemently opposed Antonio Harrington's recommendation and, thereafter, insisted that the ceremony be an "open casket" funeral. Upon being so advised, Antonio Harrington agreed to properly embalm the remains of plaintiff's decedent, as well as, make it presentable for the anticipated "open casket" funeral service. In connection therewith, , Antonio Harrington nor his staff were ever authorized by Plaintiffs to destroy or dispose of any of the plaintiffs' decedent's body parts, including but not limited to his internal organs.

33. In the course of attempting to ascertain the whereabouts of plaintiffs' decedent's clothing, Plaintiffs contacted the GBI Crime Lab in Macon, Georgia based upon Antonio Harrington's representations to them that the subject clothing was not returned with the remains of plaintiffs' decedent.

34. Upon making contact with employees at the aforesaid GBI Crime Lab, Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were advised that all personal effects, including but not limited to plaintiff's decedent's clothing, was placed in a body bag and returned to Valdosta, Georgia with the aforesaid remains.

35. In addition to making contact with the aforesaid GBI Crime Lab for purposes of locating the said clothing which was worn by their son, plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON inquired as to the length of time that it would take the GBI Crime Lab to complete the autopsy report.

36. After several months of repeatedly calling the GBI Crime Lab to establish the status of the autopsy report, on or about May 2, 2013 the autopsy report which had been authored and prepared by Dr. Maryanne Gaffney-Kraft was released to the Lowndes County Sheriff's Department and ultimately, to Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON. This autopsy report concluded that the cause of death of Plaintiffs' decedent was positional asphyxia and the manner of death was concluded to be accidental.

37. Inasmuch as Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were in receipt of conflicting evidence and reports, as well as, being beleaguered by many unanswered questions, Plaintiffs made arrangements to have the remains of their son's remains exhumed for purposes of conducting a second and independent autopsy.

38. Yet, in spite of the absence of any ordinance, regulation, or state law requiring that the next of kin obtain a court order before they would be allowed to remove the remains of their loved one, in this instance, the city manager the City Of Valdosta required that the Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON petition the Superior Court of Lowndes County for a court order before allowing them to exhume the remains of the plaintiffs' decedent.

39. On or about June 14, 2013, Plaintiffs' minor child was disinterred, and thereafter, the remains of plaintiff's decedent were transported to Orlando, Florida on June 15, 2013 for purposes of undergoing a second and independent autopsy by Dr. William R. Anderson, a licensed forensic pathologist in Orlando, Florida.

40. On or about June 15, 2013, as Dr. Anderson began to examine the inside of said minor child's abdomen, he devised that all of the internal organs were missing and that said decedent's body was stuffed with waded newspaper.

41. In addition, Dr. Anderson observed that the brain of Plaintiffs' decedent was also missing. Upon information and belief, the autopsy by Dr. Anderson was made more complicated and thus deprived him of the ability to conduct the type of autopsy that was otherwise contemplated and more definitive in nature.

42. Notwithstanding the foregoing circumstances, Dr. Anderson established that Plaintiffs' decedent had suffered an injury to the right side of his upper neck, and that the cause of death was blunt force trauma, an injury that was consistent with one that had been "inflicted" upon plaintiffs' decedent and "non-accidental" in nature.

43. Inasmuch as the right side of plaintiffs' decedent's upper neck had not been sectioned by Dr. Maryanne Gaffney-Kraft, the forensic pathologist who performed the official autopsy for the GBI, Dr. Anderson reached out to said defendant or her office to establish whether or not she wanted to examine his findings, including the tissue samples which were taken from plaintiffs decedent during his autopsy of June 15, 2013. Upon information and belief, Dr. Maryanne Gaffney-Kraft nor anyone from her agency ever accepted Dr. Anderson's aforesaid invitation to examine his tissue specimens and thus establish whether or not said defendant had missed a critical factor in reaching her opinion as to whether the cause of death was altogether accidental or possessed features indicating an assault or blunt force trauma. In fact, Dr. Anderson's invitation was roundly rejected.

44. Prior to the completion of the aforesaid official autopsy by Dr. Maryanne Gaffney-Kraft and GBI, an Open Records Act ("ORA") request, pursuant to OCGA §50-18-70 *et seq.*, was initially placed upon the Lowndes County Sheriff's Department on behalf of plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON on January 28, 2013.

45. Notwithstanding that defendant Sheriff CHRIS PRINE had announced that the Sheriff's Department had completed its investigation on or about May 4, 2013 and as a consequence thereof, was no longer exempt from complying with the plaintiffs' ORA request, it was not until October 30, 2013 and November 6, 2013 that defendant Sheriff CHRIS PRINE ultimately released the Sheriff's Department's full investigative file, including copies of surveillance images recorded at Lowndes high school on January 10, 2013 and January 11, 2013. Said defendant Sheriff's compliance with plaintiffs aforesaid Open Records Act request, however, was the result of a court order which was issued on October 30, 2013 directing the Sheriff's Department to comply, as opposed to a voluntary act.

46. Of the materials that were reproduced by said Sheriff's Department for plaintiffs' examination, plaintiffs were advised that certain documents or materials were being withheld for various reasons, including but not limited to the desire to protect the privacy of minors whose identity was otherwise disclosed or suggested in the documents.

47. In addition, said Sheriff's Department under the specific direction of defendant Sheriff CHRIS PRINE withheld photographs and moving images that plaintiffs were otherwise entitled to receive.

48. In addition to the refusal to disclose entire documents or allow for their review, said Sheriff's Department, under the specific direction of defendant Sheriff CHRIS PRINE, redacted many if not most of the documents it produced by eliminating any information that disclosed or suggested the identity of individuals it maintained or considered to be minors, as though the alleged minors were entitled to privacy or confidentiality under the Open Records Act, which they do not.

49. As a consequence of said Sheriff's Department's refusal to comply with the clear mandates of the Open Records Act, plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were forced to file a lawsuit against defendant Sheriff CHRIS PRINE.

50. The aforesaid refusal to comply with plaintiffs' ORA request constituted a deliberate and malicious effort to withhold information from plaintiffs who were legitimately entitled to receive same as a means of determining the true cause of their son's death, as well as, the identities and involvement of the individuals who were connected with or responsible for his death, including, but not limited to Brandon Bell and Brian Bell, the aforesaid sons of FBI Agent Rick Bell.

51. The aforesaid refusal by defendant Sheriff CHRIS PRINE and the various members of the Lowndes County Sheriff's Department was designed to also deliberately and maliciously cover-up the deliberate effort by said law enforcement agencies to conduct a flawed investigation into the death of plaintiffs' decedent and thereby protect persons including, but not limited to, said Brandon Bell and Brian Bell, the aforesaid sons of FBI Agent Rick Bell.

52. In addition, the aforesaid refusal by defendant Sheriff CHRIS PRINE to comply with plaintiffs' ORA request was designed to deliberately and maliciously cover-up how various members of Lowndes County Sheriff's Department and the Georgia Bureau of Investigation deliberately and maliciously mishandled their investigation in such a way that anyone who would ever be charged with plaintiffs decedent's death would not be criminally convicted or held accountable as a result of civil prosecution.

## SECOND CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

53. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

54. The defendant Sheriff CHRIS PRINE's conduct directed toward the Plaintiffs, as described herein, was intentional malicious. It is so outrageous that it is not tolerated by civilized society.

55. As a direct and proximate result of the Defendants' conduct, the Plaintiffs suffered serious mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

56. By virtue of his conduct, defendant Sheriff CHRIS PRINE acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish defendant Sheriff CHRIS PRINE and to deter him and anyone else from ever committing similar misconduct in the future.

## THIRD CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

57. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

58. At all material times herein, the defendant Sheriff CHRIS PRINE owed a duty to the Plaintiffs to act with the ordinary care of a reasonable person with respect to all aspects of any service or treatment which a member of the public is entitled to, including but not limited to, the competent handling of a criminal investigation, particularly in ones involving victims such as plaintiffs. These duties include, but are not limited to: the hiring, retention, training and

supervision of all agents, employees and representatives of the defendant Sheriff CHRIS PRINE and the Lowndes County Sheriff's Department.

59. The defendant Sheriff CHRIS PRINE also owed a duty to avoid and disassociate himself, as well as, members of the Lowndes County Sheriff's Department from the commission of any acts or conduct that was calculated to interfere with the lawful investigation and prosecution of any individuals or entities who may be engaged in seeking preferential treatment and protection from criminal prosecution.

60. At all times material herein, the defendant Sheriff CHRIS PRINE, by virtue of his direct involvement and that of those whom he was under a duty to supervise, sought to protect and give preferential treatment to said Brandon Bell and Brian Bell, the aforesaid sons of FBI Agent Rick Bell.

61. In the course of failing to provide appropriate supervision of those under his command, the defendant Sheriff CHRIS PRINE enabled his subordinates in association with other persons and entities to undermine a criminal investigation into the death of plaintiffs' decedent, and in doing so, caused and continue to cause the plaintiffs to suffer severe emotional distress and great pain and suffering.

## FOURTH CAUSE OF ACTION
## CONSPIRACY TO CAUSE INFLICTION OF EMOTIONAL DISTRESS

62. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

63. At all times material herein, the defendant Sheriff CHRIS PRINE conspired with and sought the cooperation of a number of individuals, including but not limited to FBI Agent Rick Bell, School System Superintendent Wes Taylor, Lieutenant Stryde Jones, Sergeant Jack

Winningham, GBI Crime Scene Specialist Wes Horne, funeral home director Antonio

Harrington, Steve Owens of Owens Transport, and Dr. Maryanne Gaffney-Kraft, all for the

purpose of covering up the commission of criminal conduct and activities, including but not

limited to those of Brandon Bell and Brian Bell as relates to the death of plaintiff's decedent.

64. On repeated occasions, the Lowndes County Sheriff's Department has maintained

that said Brandon Bell and Brian Bell were never considered to be suspects even though their

father, FBI Agent Rick Bell, is a law enforcement officer himself and someone who is keenly

aware of the importance of conducting fair, honest and thorough investigations, nevertheless

refused to allow his sons to be interviewed by investigators on at least two (2) or more separate

occasions.

65. In addition to the foregoing, the defendant Sheriff CHRIS PRINE's efforts to protect

and serve the interests of fellow law enforcement, including but not limited to FBI Agent Rick

Bell, involved obtaining the assistance of persons who desecrated the remains of their son.

65. As a direct and proximate result of the Defendants' conduct, the Plaintiffs suffered

serious mental injuries and emotional distress that no reasonable person could be expected to

endure or adequately cope with.

66. By virtue of the foregoing conduct, the defendant Sheriff CHRIS PRINE acted

intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious

disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and

exemplary damages from the Defendants in such amount as shall be necessary and appropriate to

punish the Defendants and to deter them and anyone else from ever committing similar

indecencies.

## FIFTH CAUSE OF ACTION
## VIOLATION OF STATE CONSTITUTION GUARANTEEING EQUAL PROTECTION

67. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

69. The Lowndes County Sheriff's Department, as previously alleged, has maintained that said Brandon Bell and Brian Bell were never considered to be suspects even though their father, FBI Agent Rick Bell refused to allow his sons to be interviewed by investigators on at least two (2) or more separate occasions.

70. In this regard, defendant Sheriff CHRIS PRINE violated the equal protection clause of the Constitution for the State of Georgia by engaging in race discrimination.

71. In this regard, the Lowndes County Sheriff's Department, on the other hand, insisted upon taking into custody for questioning an African-American male whose initials were "BB", the same as Brandon Bell and Brian Bell. At all times relevant here to, Brandon Bell and Brian Bell are Caucasian. Plaintiffs

72. In this regard, the Lowndes County Sheriff's Department, on the other hand, insisted upon taking into custody for questioning an African-American male whose initials were "BB", the same as Brandon Bell and Brian Bell. At all times relevant here to, Brandon Bell and Brian Bell are Caucasian. Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON are African-Americans.

73. As a direct and proximate result of the Defendants' conduct, the Plaintiffs suffered violation of their constitutional rights and the social stigma that no reasonable person could be expected to endure or adequately cope with.

74. By virtue of the foregoing conduct, the defendant Sheriff CHRIS PRINE acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious

disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request the following relief:

a.  An award of compensatory damages for each Plaintiff, in an amount deemed appropriate by the enlightened conscience of the trier of fact, jointly and severally, against the Defendants;

b.  An award of punitive damages, jointly and severally, against the Defendants;

c.  An award of pre-judgment and post-judgment interest;

d.  An award of costs, including, but not limited to, discretionary costs, attorneys' fees and expenses incurred in pursuing this case;

e.  Any other and further relief this Court deems just and proper; and

f.  Any other and further relief to which they may be entitled.

THE C.B. KING LAW FIRM

BY: _____
Chevene B. King, Jr.
Attorney for Plaintiffs

Prepared by:
Chevene B. King, Jr.
Post Office Drawer 3468
Albany, GA  31706
(229)436-0524
State Bar No.: 420105

## IN THE SUPERIOR COURT OF LOWNDES COUNTY
## STATE OF GEORGIA

KENNETH JOHNSON and JACQUELYN ) 
JOHNSON, 

      Plaintiffs, )

CABLE NEWS NETWORK, INC., )

      Intervenor
vs. )    CIVIL ACTION FILE

CHRIS PRINE, as Sheriff of Lowndes County, )
Georgia, as well as, in his individual capacity   NO: 2013-CV-1230
capacity, and LOWNDES COUNTY SCHOOL )
DISTRICT,

      Defendants. )

---

### CERTIFICATE OF SERVICE

    I hereby certify that I have served AMENDED COMPLAINT BY KENNETH JOHNSON AND JACQUELYN JOHNSON, by email and US mail on the following counsel of record:

Eric Schroeder, Esq.  
Bryan Cave, LLP  
One Atlantic Center-14th Floor  
1201 W. Peachtree Street, NW  
Atlanta, GA 30309-3488

James L Elliott, Esq.  
Elliott, Blackburn & Gooding, PC  
3016 N. Patterson Street  
Valdosta, GA 31602

L. Warren Turner, Jr., Esq.  
Post Office Box 157  
Valdosta, GA 31603

This 9th day of January 2015.

THE C.B. KING LAW FIRM

BY: _____

    Chevene B. King, Jr.  
    Attorney for Plaintiffs  
    State Bar No.: 420105

Prepared by:  
Chevene B. King, Jr.  
Post Office Drawer 3468  
Albany, GA 31706  
(229)436-0524