IN THE SUPERIOR COURT OF LOWNDES COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| KENNETH JOHNSON and JACQUELYN JOHNSON, | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE |
| | ) | NO: 2013-CV-706 |
| vs. | ) | |
| BRANDON BELL, et al. | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO ORDER REQUIRING MORE DEFINITE STATEMENT

NOW COME Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON, each of whom bring this action against as specified in the above styled caption and either individually or collectively, and pursuant to this Court's Order filed on July 10, 2015 requiring Plaintiffs to file within 30 days thereof an amended complaint showing a more definite statement as to the claims and allegations asserted therein, hereby amend their complaint by striking same in its entirety, save that of its caption, and substituting therewith the following:

### "PRELIMINARY STATEMENT

Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON are the parents of Kendrick Lamar Johnson, who died while attending school on or about January 10, 2013 at Lowndes High School located in Valdosta, Lowndes County, Georgia, bring this action against Defendants BRANDON BELL, BRIAN BELL, and RYAN HALL, each of whom were assisted

-3-

each other, as well as, by certain unknown individuals, hereinafter referred to as JANE DOE I
and JOHN DOE I, for causing the death of Kendrick Lamar Johnson. Each of the afore-named
defendants are liable to Plaintiffs for the wrongful death of their minor son, Kendrick Lamar
Johnson

Thereafter, the aforesaid defendants, along with each of the defendants named in the
above styled caption, deliberately and unlawfully conspired to hide and cover up: (a) the
perpetration of an assault and other circumstances upon Kendrick Lamar Johnson on or about
January 10, 2013, (b) their involvement as assailants or persons who assisted in causing said
assault or the death of Kendrick Lamar Johnson, ( c) the identities of persons who directly or
indirectly contributed to or assisted in causing the assault and ultimately the death of Kendrick
Lamar Johnson, and (d) the involvement of each other as participants in a conspiracy to
unlawfully interfere with an investigation by law enforcement agencies that purportedly was
designed to discover the true circumstances surrounding the death of Kendrick Lamar Johnson.

In addition, not only did each of the defendants identified in the above styled action,
maliciously, conspire and engage in a deliberate and corrupt effort to cover up the involvement
of Defendants Brandon Bell, Brian Bell, Ryan Hall, Jane Doe and John Doe as assailants and co-
conspirators, but the aforesaid conspiracy also deliberately, maliciously and unlawfully
interfered with the rights of Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON to
have access to the courts of this state and thereby frustrate their desire to seek legal redress.
Accordingly, each of the defendants named herein are liable to said plaintiffs for the damages
they have suffered due to a civil conspiracy carried out by them and which sought to interfere
with their due process and equal protection rights under the Constitution for the State of Georgia.
Accordingly, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON seek equitable

2

relief in the form of declaratory judgment and injunctive relief against all state actors, including but not limited to Defendants VERNON KEENAN, DR. MARY ANNE GAFFNEY-KRAFT, and RODNEY BRYAN, as well as all other defendants named herein and who are sued in their official capacity as members of the Georgia Bureau of Investigation.

In the course of interfering with the rights of Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON to have access to the courts and thus frustrate their desire to seek legal redress, each of the defendants have caused said plaintiffs to suffer great physical and emotional pain and, as a consequence, are liable for intentional infliction of emotional distress, as well as, other state law violations.

## JURISDICTION AND VENUE

1. This action is for and on behalf of the parents of plaintiffs Kenneth Johnson and Jacquelyn Johnson for the wrongful death of their minor son and decedent, Kendrick Lamar Johnson, who died on or about January 10, 2013. Each of the plaintiffs herein sues the defendants, in their various capacities as specified in the above styled caption.

2. Subject matter jurisdiction is properly invoked pursuant to the court's jurisdiction as permitted by State law. Venue is properly invoked insofar as one or more of the defendants are residents of Lowndes County, Georgia and, as such, provide a statutory basis for asserting that venue lies in this Court.

## PARTIES

3. Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON appear herein as individuals who are entitled to bring this action for the wrongful death because they are the

-3-

parents of Kendrick Lamar Johnson, who was a minor at the time of his death and who left no surviving spouse or children of his own.

4. At all times material to this Complaint, Defendant RICK BELL is an Agent of the Federal Bureau of Investigation ("F.B.I.") and who is being sued in his individual capacity. Defendant RICK BELL may be served with service of process at his residence in Lowndes County, Georgia or at the office of the F.B.I., located at 6061 Gate Pkwy N, Jacksonville, Florida 32256.

5. At all times material to this Complaint, Defendant BRANDON BELL was the oldest son of Defendant RICK BELL, an Agent with the F.B.I. and who is being sued in his individual capacity and as a child of Defendant RICK BELL. Defendant BRANDON BELL may be served with service of process at his residence on the campus of Valdosta State University, located in Valdosta, Lowndes County, Georgia.

6. At all times material to this Complaint, Defendant BRIAN BELL was the youngest son of Defendant RICK BELL, an Agent with the FBI and who is being sued in his individual capacity and as a child of Defendant RICK BELL.  Defendant BRIAN BELL may be served with service of process at the residence of his parents, Defendant RICK BELL and Karen Bell, which is located in the city of Point Verde Beach, St. Johns County, Florida.

7. At all times material to this Complaint, Defendant RYAN HALL may be served with service of process at 827 Ione Church Road, Pavo, Georgia.

8. At all times material to this Complaint, Defendant WILLIAM WESLEY "WES" TAYLOR was the Superintendent of the LOWNDES COUNTY SCHOOL DISTRICT and who is being sued in his individual capacity, as well as, his official capacity. Service of process may

also be accomplished by serving Defendant WILLIAM WESLEY "WES" TAYLOR at 1592 Norman Drive, Valdosta, Georgia.

9. At all times material to this Complaint, Defendant VERNON KEENAN was the Director of the Georgia Bureau of Investigation ("G.B.I.") and who is being sued in his individual and official capacities. Defendant VERNON KEENAN may be served with service of process at the headquarters of the G.B.I., located at 3121 Panthersville Road, Decatur, Georgia.

10. At all times material to this Complaint, Defendant CITY OF VALDOSTA is a municipal corporation located in Lowndes County, Georgia. This Defendant may be served with service of process by serving it upon its city manager, Larry H. Hanson, at 216 E. Central Avenue, Valdosta, Georgia.

11. At all times material to this Complaint, Defendant LARRY H. HANSON was the city manager for the city of Valdosta, Georgia. This Defendant is being sued in his individual and official capacity. He may be served with service of process by serving it upon him at 216 E. Central Avenue, Valdosta, Georgia.

12. At all times material to this Complaint, Defendant FRANK SIMMONS was the Chief of Police of the Valdosta Police Department and who is being sued in his individual, as well as, in his official capacity. Defendant FRANK SIMMONS may be served with service of process at 500 North Toombs Street, Valdosta, Georgia.

13. At all times material to this Complaint, Defendant STRYDE JONES was a Lieutenant of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant STRYDE JONES may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

14. At all times material to this Complaint, Defendant STEVE OWENS was the owner of Steve Owens Transport Service and who is being sued. Defendant STEVE OWENS may be served with service of process at 4659 Wheeler Road, Quitman, Georgia.

15. At all times material to this Complaint, Defendant JAMES D. THORNTON was a Criminalist of the Valdosta-Lowndes Regional Cime Laboratory and who is being sued in his individual, as well as, in his official capacity. Defendant JAMES D. THORNTON may be served with service of process at 1708 North Ashley Street, Valdosta, Georgia.

16. At all times material to this Complaint, Defendant WES HORNE was a Crime Scene Specialist of the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in his official capacity. Defendant WES HORNE may be served with service of process at the headquarters of the G.B.I., located at 3121 Panthersville Road, Decatur, Georgia.

17. At all times material to this Complaint, Defendant JACK WINNINGHAM was a Staff Sergean/Investigator of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant JACK WINNINGHAM may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

18. At all times material to this Complaint, Defendant DR. MARYANNE GAFFNEY-KRAFT was the Medical Examiner of the Georgia Bureau of Investigation and who is being sued in her individual, as well as, in his official capacity. Defendant DR. MARYANNE GAFFNEY-KRAFT_may be served with service of process at the headquarters of the G.B.I., located at 3121 Panthersville Road, Decatur, Georgia.

19. At all times material to this Complaint, Defendant STEVE TURNER was the Special Agent in Charge of the Region 9 Office of the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in his official capacity. Defendant STEVE TURNER may be

-6-

served with service of process at the headquarters of the G.B.I., located at 3121 Panthersville Road, Decatur, Georgia.

20. At all times material to this Complaint, Defendant KRISTEN PERRY was an Agent of the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in her official capacity. Defendant KRISTEN PERRY may be served with service of process at the headquarters of the G.B.I., located at 3121 Panthersville Road, Decatur, Georgia.

21. At all times material to this Complaint, Defendant LINDSAY MERCHANT was an Agent of the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in his official capacity. Defendant LINDSAY MERCHANT may be served with service of process at the headquarters of the G.B.I., located at 3121 Panthersville Road, Decatur, Georgia.

22. At all times material to this Complaint, Defendant MIKE CALLAHAN was an Agent of the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in his official capacity. Defendant MIKE CALLAHAN may be served with service of process at the headquarters of the G.B.I., located at 3121 Panthersville Road, Decatur, Georgia.

23. At all times material to this Complaint, Defendant AMY BRASWELL was an Agent of the Georgia Bureau of Investigation and who is being sued in his individual, as well as, in her official capacity. Defendant AMY BRASWELL may be served with service of process at the headquarters of the G.B.I., located at 3121 Panthersville Road, Decatur, Georgia.

24. At all times material to this Complaint, Defendant AARON PRITCHETT was a Sergeant of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant AARON PRITCHETT may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

25. At all times material to this Complaint, Defendant LIEUTENANT SHANNON SALTERS was a Criminalist of the Valdosta-Lowndes Regional Crime Laboratory and who is being sued in his individual, as well as, in his official capacity. Defendant LIEUTENANT SHANNON SALTERS ay be served with service of process at 1708 North Ashley Street, Valdosta, Georgia.

26. At all times material to this Complaint, Defendant RAY MCGRAW was a Crime Scene Specialist with the Valdosta-Lowndes Regional Crime Laboratory and who is being sued in his individual, as well as, in his official capacity. Defendant RAY MCGRAW may be served with service of process at 1708 North Ashley Street, Valdosta, Georgia.

27. At all times material to this Complaint, Defendant WANDA EDWARDS was a Captain of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in her official capacity. Defendant WANDA EDWARDS may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

28. At all times material to this Complaint, Defendant LOGAN HENDERSON was a Major of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant LOGAN HENDERSON may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

29. At all times material to this Complaint, Defendant RANDY LIGHTSEY was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant RANDY LIGHTSEY may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

30. At all times material to this Complaint, Defendant MICHAEL ADAMS was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his

-8-

official capacity. Defendant MICHAEL ADAMS may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

31. At all times material to this Complaint, Defendant JOHN MARION was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant JOHN MARION may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

32. At all times material to this Complaint, Defendant JACK PRIDDY was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant JACK PRIDDY may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

33. At all times material to this Complaint, Defendant KERRY QUINN was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant KERRY QUINN may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

34. At all times material to this Complaint, Defendant CHRISTI GRIFFIN was a Deputy of the Lowndes County Sheriff Office and who is being sued in her individual, as well as, in his official capacity. Defendant CHRISTI GRIFFIN may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

35. At all times material to this Complaint, Defendant BRYCE WHITENER was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant BRYCE WHITENER may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

36. At all times material to this Complaint, Defendant CHRISTOPHER BURKE was a Deputy of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant CHRISTOPHER BURKE may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

37. At all times material to this Complaint, Defendant TROY BLACK was a Detective of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant TROY BLACK may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

38. At all times material to this Complaint, Defendant HOWARD FISHER was a Detective of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant HOWARD FISHER may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

39. At all times material to this Complaint, Defendant MARK MASKULE was a Detective of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant MARK MASKULE may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

40. At all times material to this Complaint, Defendant ROY HART was a Detective of the Lowndes County Sheriff Office and who is being sued in his individual, as well as, in his official capacity. Defendant ROY HART may be served with service of process at 120 Prison-Farm Road, Valdosta, Georgia.

41. At all times material to this Complaint, Defendant RODNEY BRYAN was a death investigator with the Georgia Bureau of Investigation and who is being sued in his individual, as

well as, in his official capacity. Defendant RODNEY BRYAN may be served with service of process at the headquarters of the G.B.I., located at 3121 Panthersville Road, Decatur, Georgia.

## **FACTS COMMON TO ALL CLAIMS**

42.  On January 10, 2013, KENDRICK LAMAR JOHNSON (hereinafter sometimes referred to as "plaintiffs' decedent" or "plaintiffs' son" or "plaintiffs' child"), an African-American student, was attending Lowndes High School in Valdosta, Lowndes County, Georgia.

43.  At some point during the afternoon of January 10, 2013, plaintiff's decedent failed to attend the balance of his scheduled classes.

44.  Upon information and belief, plaintiff's decedent entered an area upon the Lowndes High School campus where, after being induced by a fellow female student, Defendant JANE DOE1, to go to said location, he was encountered by defendant BRANDON BELL and defendant BRIAN BELL, both of whom were fellow male students at said high school.

45.  Upon information and belief, when plaintiff's decedent arrived at the aforementioned location, he was violently assaulted by persons, including but not limited to defendants BRANDON BELL, BRIAN BELL, and RYAN HALL, in the course thereof, suffered a fatal injury which led to his death.

46.  Upon information and belief, following the aforesaid assault upon plaintiffs' decedent, defendants BRANDON BELL, BRIAN BELL, RYAN HALL, JANE DOE1 and certain individuals who are currently unknown to plaintiffs, but who is identified as JOHN DOE 1, not only failed to render aid to plaintiffs' decedent or notify school authorities of his condition, but instead, sought to hide the body of plaintiff's decedent.

47. Upon information and belief, following the aforesaid assault upon plaintiffs' decedent, defendants BRANDON BELL, BRIAN BELL, RYAN HALL, JANE DOE1 and JOHN DOE1 notified defendant Lowndes County School Superintendent WILLIAM "WES" TAYLOR, defendant RICK BELL, a Federal Bureau of Investigation ("FBI") Special Agent and father of Brandon and Brian Bell, and Lowndes County Sheriff Chris Prine of the circumstances surrounding the assault of plaintiffs' decedent, as well as, the location of his body.

48. Upon information and belief, Defendant RICK BELL, Defendant WILLIAM "WES" TAYLOR and Sheriff Chris Prine discussed amongst themselves the circumstances surrounding the assault of plaintiffs' decedent and entered into an agreement and plan to illegally cover up the true cause of death to plaintiffs' decedent, as well as, if not more importantly, the involvement of defendants BRANDON BELL, BRIAN BELL, RYAN HALL, JANE DOE1 and JOHN DOE1 in causing the fatal injuries suffered by plaintiffs' decedent.

49. Upon information and belief, the aforesaid agreement by Defendant RICK BELL, Defendant WILLIAM "WES" TAYLOR and Sheriff Chris Prine to hide and cover up the involvement of defendants BRANDON BELL, BRIAN BELL, RYAN HALL, JANE DOE1 and JOHN DOE1, as well as, the true cause of plaintiffs' decedent's death, amounted to an illegal conspiracy to obstruct justice, to interfere with  Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON's access to the courts, and to deny them their rights to due process and equal protection of the laws as set forth by the Constitution of the State of Georgia.

50. Upon information and belief, Defendant RICK BELL, Defendant WILLIAM "WES" TAYLOR and Sheriff Chris Prine engaged in conduct which was designed to carry out said conspiracy.

-12-

51. Upon information and belief, the conduct engaged in by Defendant RICK BELL, Defendant WILLIAM "WES" TAYLOR and Sheriff Chris Prine consisted of gaining access to the old gymnasium located at Lowndes High School and placing the body of plaintiffs' decedent upside down inside a rolled up gym mat and placing same in a corner of the aforesaid gymnasium with the idea that the body of plaintiffs' decedent would be discovered following the beginning of classes on January 11, 2013.

52. Upon information and belief, and in furtherance of said conspiracy, Sheriff Chris Prine solicited and engaged the involvement of subordinates and members of the Lowndes County Sheriff's Department for purposes of controlling the old gym and areas which were proximal to it. The purpose behind controlling these areas was to ensure the appearance that plaintiffs' decedent had died as a result of an unfortunate accident.

53. Those subordinates and members of the Lowndes County Sheriff's Department who were notified of the plan and conspiracy to disguise the true cause of Kendrick Johnson's death, as well as, the involvement of those responsible for causing same, included, but is not limited to Defendants JAMES THORTON, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, and JOHN MARION.

54. Upon information and belief, said conspiracy also involved the purported discovery of the body of plaintiffs' decedent by Lori Taylor and Liana Taylor, both of whom are the daughters of Defendant WILLIAM "WES" TAYLOR and students at Lowndes High School.

-13-

55. On the morning of January 11, 2013, Plaintiff JACQUELYN JOHNSON came to said high school to inquire as to the whereabouts of plaintiffs' decedent inasmuch as he had failed to return home from said high school the evening before.

56.  Upon information and belief, Lori Taylor and Laina Taylor, who were in the old gym and near the aforesaid gym mat containing Kendrick Johnson's body, alerted school officials as to the presence of the body in the said rolled-up gym mat while it was still in the said rolled-up gym mat.

57. Shortly thereafter, and while waiting in the administrative offices of said high school, Plaintiff JACQUELYN JOHNSON was advised that the dead body of her son had been located in the old gym.

58. In the several hours which followed various members of other law enforcement agencies appeared at said high school for the alleged purpose of investigating the death of plaintiff's decedent.

59. Of the various law enforcement agencies which arrived at the aforesaid high school shortly following the discovery of the body of plaintiffs' decedent, there were representatives of each of the law enforcement agencies from within Lowndes County, Georgia, including, but not limited to, the Lowndes County Sheriff's Department, the City of Valdosta Police Department, the Valdosta-Lowndes, Regional Crime Laboratory ("VLRCL") and the Georgia Bureau of Investigation ("GBI").

60. In addition to the aforesaid law-enforcement agencies, one of the first responders to arrive at the aforesaid high school included two (2) emergency medical technicians ("EMT") who examined the body plaintiffs' decedent while it was still in the aforesaid old gym.

61. Of the various observations which were made by said EMTs, they noted that there was a bruise to the right side of the jaw of plaintiffs' decedent. In preparing their report regarding their observations of the body of plaintiffs' decedent, said EMTs characterized the location of said body as a "crime scene."

62. Notwithstanding the aforesaid observations of said EMTs, who upon information and belief were the first and only medical experts to examine the body of plaintiffs' decedent while it was still in the aforesaid old gym, defendant law enforcement officers JAMES THORTON, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, and JOHN MARION (hereinafter sometimes referred to as "Defendant Lowndes County Deputies") furthered the aforesaid conspiracy by failing to follow appropriate investigative procedures to ensure against the contamination of the area surrounding where the body of plaintiffs' decedent was allegedly discovered or located.

63. Upon information and belief, members of the Georgia Bureau of Investigation, including but not limited to Defendants STEVE TURNER, RODNEY BRYAN, AMY BRASWELL, MIKE CALLAHAN, LINDSAY MARCHANT, KRISTEN PERRY, and WES HORNE (hereinafter sometimes referred to as "Defendant G.B.I. Agents") became aware of the aforesaid conspiracy and also joined the aforesaid conspiracy by failing to follow appropriate investigative procedures to ensure against the contamination of the area surrounding where the body of plaintiffs' decedent was allegedly discovered or located.

-15-

64. Upon information and belief, City of Valdosta Police Chief Defendant FRANK SIMMONS also became aware of the aforesaid conspiracy and joined the aforesaid conspiracy by failing to follow appropriate investigative procedures to ensure against the contamination of the area surrounding where the body of plaintiffs' decedent was allegedly discovered or located.

65. After Plaintiff JACQUELYN JOHNSON was notified that the body that had been located in the gymnasium was believed to be her son, she along with other family members who arrived at the aforesaid high school, requested but were refused permission by afore-named Defendant G.B.I. Agents, the afore-named Defendant Lowndes County Deputies, Defendant Frank Simmons, and Sheriff Chris Prine to identify the body of her son; all that is a part of and in furtherance of the aforesaid conspiracy.

66. Notwithstanding the discovery of a dead body and the presence of defendant law-enforcement officials, said defendants knowingly and with malicious intent failed to notify the Lowndes County Coroner for approximately six (6) hours following the alleged discovery of the body of plaintiffs' decedent.

67. The aforesaid failure of the defendant law-enforcement officials to immediately notify the Lowndes County Coroner was in deliberate violation of the laws of the state of Georgia, more specifically identified as O.C.G.A § 45-16-24, which states, in relevant part, that "it shall be the duty of any law enforcement officer or other person having knowledge of such death to notify immediately the corner or county medical examiner of the county in which the acts or events resulting in the death occurred or the body is found." The afore-named Defendant G.B.I. Agents, the afore-named Defendant Lowndes County Deputies, Defendant FRANK SIMMONS, and Sheriff Chris Prine deliberately failed to notify the County Coroner for Lowndes County in furtherance of the aforesaid conspiracy.

-16-

68. Notwithstanding the discovery of a dead body, the aforesaid observations of said EMTs, as well as, the location of blood of an unidentified source that was observed upon the surfaces of walls that were proximal to the location of the body of plaintiffs' decedent, Sheriff Chris Prine, expressed to the news media on January 11, 2013 that there was no evidence of "foul play" and that the cause of death was accidental based upon a theory that plaintiff's decedent died as a result of him attempting to retrieve a tennis shoe by entering into the center opening of the aforesaid rolled-up gym mat and thereafter becoming stuck and without the ability to free himself. The afore-named Defendant G.B.I. Agents, the afore-named Defendant Lowndes County Deputies, and Defendant FRANK SIMMONS, were aware of the announcements made by Sheriff Chris Prine and the falsity of same, and in furtherance of the conspiracy, deliberately failed to correct the reports made by Sheriff Chris Prine or to notify the appropriate governmental entities or other law enforcement personnel of the falsity of the aforesaid reports made by Sheriff Chris Prine , as well as, the conspiracy itself.

69. On or about January 12, 2013, Plaintiff KENNETH JOHNSON requested permission to view the body of plaintiffs' decedent, but in furtherance of the aforesaid conspiracy, was also refused permission by afore-named Defendant G.B.I. Agents, the afore-named Defendant Lowndes County Deputies, Defendant Frank Simmons, and Sheriff Chris Prine .

70. Following the aforementioned denial of permission by defendants to allow plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON to view and identify the body of their deceased son, plaintiffs contacted the news media and conducted a press conference to voice their concerns regarding the kind of treatment that they were receiving from said defendant members of the law enforcement community, more particularly Sheriff Chris Prine, Defendant STRYDE

-17-

JONES with the Lowndes County Sheriff's Department, and Defendant JAMES THORTON of the Valdosta-Lowndes, Regional Crime Laboratory.

71. Upon information and belief, Sheriff Chris Prine, the afore-named Defendant G.B.I. Agents, the afore-named Defendant Lowndes County Deputies, and Defendant FRANK SIMMONS, reconsidered their position regarding the Plaintiffs' request to view the body of their son and, as a consequence, granted them permission to come to the Valdosta-Lowndes, Regional Crime Laboratory for purposes of viewing the body.

72. On January 13, 2013, plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON went to the Valdosta-Lowndes, Regional Crime Laboratory where they were met by Sheriff Chris Prine, Defendant STRYDE JONES and Defendant JAMES THORTON for purposes of viewing the body of plaintiffs' decedent. On that occasion, plaintiff KENNETH JOHNSON entered the room where the body of plaintiffs' decedent was being stored and where he noted that the room temperature appeared to be much warmer than what he had anticipated inasmuch as he thought that said room and the vault that the decedent's body was being stored in was designed to preserve the remains through a process similar akin to refrigeration. Upon information and belief, each aforementioned defendant, including but not limited to Sheriff Chris Prine, Defendant STRYDE JONES and Defendant JAMES THORTON, was aware of the effort to advance the decomposition of Kendrick Johnson's remains as a part of the aforesaid conspiracy, and yet failed to take any action to prevent the destruction or elimination of the evidence that would otherwise be preserved through appropriate handling of said remains.

73. At that time, Sheriff Chris Prine explained to Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON that plaintiff's decedent had entered the center hole of the aforementioned gym mat "feet first" and that while at the bottom of the hole, plaintiffs' decedent

-18-

bent over to retrieve his tennis shoe and became stuck in such a way that he could not free or remove himself from the hole.

74. Upon hearing the foregoing explanation, Plaintiff KENNETH JOHNSON stated to Sheriff Chris Prine that his explanation was not possible, whereupon Defendant STRYDE JONES stated to Plaintiff KENNETH JOHNSON that he (KENNETH JOHNSON) did not understand that "when you die, your muscles relax and then you fall forward." The aforesaid explanation offered by Sheriff Chris Prine and Defendant STRYDE JONES was communicated to plaintiffs in furtherance of the aforesaid conspiracy.

75. Approximately two (2) or more days later, an ex-employee of the Lowndes County Sheriff's Department contacted plaintiff KENNETH JOHNSON and stated to him that he (KENNETH JOHNSON) misunderstood what Sheriff Chris Prine and defendant STRYDE JONES had attempted to explain to plaintiffs and that their explanation was meant to explain that plaintiff's decedent had entered the center hole of the gym mat head first instead of feet first.

76. Due to the aforesaid findings of "no foul play" and a theory offered by Sheriff Chris Prine, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON were desirous of having a further investigation into the cause and circumstances of their son's death.

77. Concurrent therewith, Plaintiffs contacted Harrington's Funeral Home and Antonio Harrington for purposes of properly handling the remains of plaintiff's decedent, as well as, making the arrangements for the funeral services and internment of his remains.

78. On or about January 14, 2013, the remains of Plaintiffs' minor child were transported by Defendant STEPHEN WESLEY OWENS of Defendant OWEN'S TRANSPORT SERVICE from the Valdosta-Lowndes, Regional Crime Laboratory to the GBI's Crime Lab located in Macon, Georgia for purposes of undergoing an official autopsy. Upon completion of said

autopsy, Defendant STEPHEN WESLEY OWENS transported the remains of plaintiff's decedent back to Valdosta during the early afternoon hours of January 14, 2013, delivered said remains of Plaintiffs' decedent to Harrington's Funeral Home, all of which was pursuant to an understanding and oral agreement entered into between Plaintiffs and Defendants.

79. Antonio Harrington expressed to Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON his concerns as to the aforesaid explanation for their child's death and recommended that they should get a "second opinion" as to the cause of death notwithstanding the then-unknown-findings of official autopsy. Plaintiffs concurred with Antonio Harrington's recommendation.

80. On or about January 16, 2013, an occasion on which Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON visited The Harrington's Funeral Home, said plaintiffs inquired of Antonio Harrington whether they could collect the clothing that plaintiff's decedent was wearing at the time that is body was discovered Lowndes High School. Responsive to said request, Antonio Harrington advised Plaintiffs that he was unaware that their child had any clothes when his remains were returned from the aforesaid GBI Crime Lab.

81. In addition to the aforesaid inquiry about their minor child's clothing, Plaintiffs never authorized Antonio Harrington nor his staff to destroy or dispose of any of the plaintiffs' decedent's body parts, including but not limited to his internal organs.

82. In the course of attempting to ascertain the whereabouts of plaintiffs' decedent's clothing, Plaintiffs contacted the G.B.I. Crime Lab in Macon, Georgia based upon Antonio Harrington's representations to them that the subject clothing was not returned with the remains of plaintiffs' decedent.

-20-

83. Upon making contact with employees at the aforesaid GBI Crime Lab, Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were advised that all personal effects, including but not limited to plaintiff's decedent's clothing, was placed in a body bag and returned to Valdosta, Georgia with the aforesaid remains.

84. In addition to making contact with the aforesaid GBI Crime Lab for purposes of locating the said clothing which was worn by their son, plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON inquired as to the length of time that it would take the GBI Crime Lab to complete the autopsy report. Upon information and belief, the aforesaid clothing disappeared while in the possession of Defendant STEPHEN WESLEY OWENS and as such, said defendant disposed of said clothing as a part of the aforesaid conspiracy to hide or cover up the true circumstances surrounding Kendrick Johnson's death.

85. After several months of repeatedly calling the GBI Crime Lab to establish the status of the autopsy report, on or about May 2, 2013 the autopsy report which had been authored and prepared Defendant MARYANNE GAFFNEY-KRAFT was released to the Defendant Lowndes County Sheriff's Department and ultimately, to Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON. This autopsy report concluded that the cause of death of Plaintiffs' decedent was positional asphyxia and the manner of death was concluded to be accidental.

86. Upon information and belief, the autopsy report which had been authored and prepared Defendant MARYANNE GAFFNEY-KRAFT and who was aided by Defendant RODNEY BRYAN, was false and misleading, and, as such, a part of the aforesaid conspiracy to hide or cover up the true circumstances surrounding Kendrick Johnson's death.

87. Inasmuch as Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON were in receipt of conflicting evidence and reports, as well as, being beleaguered by many unanswered

-21-

questions, Plaintiffs made arrangements to have the remains of their son's remains exhumed for purposes of conducting a second and independent autopsy.

88. Yet, in spite of the absence of any ordinance, regulation, or state law requiring that the next of kin obtain a court order before they would be allowed to remove the remains of their loved one, in this instance, the city manager the Defendants LARRY HANSEN and the CITY OF VALDOSTA required that the Plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON petition the Superior Court of Lowndes County for a court order before allowing them to exhume the remains of the plaintiffs' decedent. Upon information and belief, the aforesaid actions on the part of Defendants LARRY HANSEN and the CITY OF VALDOSTA were a part of the aforesaid conspiracy to interfere with Plaintiffs access to the courts for purposes of seeking the truth of what occurred to their son and, legal redress for any and all damages which they may have suffered.

89. On or about June 14, 2013, Plaintiffs' minor child was disinterred, and thereafter, the remains of plaintiff's decedent were transported to Orlando, Florida on June 15, 2013 for purposes of undergoing a second and independent autopsy by Dr. William R. Anderson, a licensed forensic pathologist in Orlando, Florida.

90. On or about June 15, 2013, as Dr. Anderson began to examine the inside of said minor child's abdomen, he devised that all of the internal organs were missing and that said decedent's body was stuffed with waded newspaper.

91. In addition, Dr. Anderson observed that the brain of Plaintiffs' decedent was also missing. Upon information and belief, the autopsy by Dr. Anderson was made more complicated and thus deprived him of the ability to conduct the type of autopsy that was otherwise contemplated and more informative in nature.

-22-

92. Notwithstanding the foregoing circumstances, Dr. Anderson established that Plaintiffs' decedent had suffered an injury to the right side of his upper neck, and that the cause of death was blunt force trauma, an injury that was consistent with one that had been "inflicted" upon plaintiffs' decedent and "non-accidental" in nature.

93. Inasmuch as the right side of plaintiffs' decedent's upper neck had not been sectioned by Defendant MARYANNE GAFFNEY-KRAFT, the forensic pathologist who performed the official autopsy for the GBI, Dr. Anderson reached out to said defendant or her office to establish whether or not she wanted to examine his findings, including the tissue samples which were taken from plaintiffs decedent during his autopsy of June 15, 2013.

94. Upon information and belief, Defendant MARYANNE GAFFNEY-KRAFT nor anyone from her agency ever accepted Dr. Anderson's aforesaid invitation to examine his tissue specimens and thus establish whether or not said defendant had missed a critical piece of evidence in reaching her opinion as to whether the cause of death was altogether accidental or possessed features indicating an assault or blunt force trauma. In fact, Dr. Anderson's invitation was roundly rejected.

95. Upon information and belief, the refusal of Defendant MARYANNE GAFFNEY-KRAFT to examine the aforesaid tissue specimens was a part of and in furtherance of the aforesaid conspiracy of which Defendant MARYANNE GAFFNEY-KRAFT had become a participant. Moreover, as a forensic pathologist with the Georgia Bureau of Investigation, Defendant MARYANNE GAFFNEY-KRAFT had a duty to examine the tissue specimens which Dr. Anderson collected during his autopsy as well as, his findings and conclusions as a fellow forensic pathologist.

-23-

96. Following the discovery of their son's missing organs, plaintiffs sought to inquire of Antonio Harrington whether he was aware of what had happened to the organs of plaintiff's decedent. Of the several responses which Antonio Harrington offered, he advised that the Coroner for Lowndes County, Georgia, had informed him that defendant RODNEY BRYAN, a death investigator with the G.B.I, told him via telephone that the viscera or internal organs were disposed of during the G.B.I.'s official autopsy due to decomposition.

97. Prior to the completion of the aforesaid official autopsy by the defendants MARYANNE GAFFNEY-KRAFT and the G.B.I., an Open Records Act ("ORA") request, pursuant to OCGA §50-18-70 *et seq*., was initially placed upon the Lowndes County Sheriff's Department on behalf of plaintiffs JACQUELYN JOHNSON and KENNETH JOHNSON on January 28, 2013.

98. Notwithstanding that Sheriff Chris Prine had announced that the Sheriff's Department had completed its investigation on or about May 4, 2013 and as a consequence thereof, was no longer exempt from complying with the plaintiffs' ORA request, it was not until October 30, 2013 and November 6, 2013 that Sheriff Chris Prine ultimately released the Sheriff's Department's full investigative file, including copies of surveillance images recorded at Lowndes high school on January 10, 2013 and January 11, 2013.

99. The Sheriff's compliance with plaintiffs aforesaid Open Records Act request, however, was not voluntary, but the result of a court order which was issued on October 30, 2013 and grossly deficient in several respects. The refusal of Sheriff Chris Prine to release the Sheriff's Department's full investigative file, was in furtherance of the aforesaid conspiracy and thus designed to withhold information from Plaintiffs and to interfere with their access to the courts for purposes of seeking legal redress.

-24-

100. Of the materials that were reproduced by said Sheriff's Department for plaintiffs' examination, plaintiffs were advised that certain documents or materials were being withheld for various reasons, including but not limited to the desire to protect the privacy of minors whose identity was otherwise disclosed or suggested in the documents.

101. As a result, said Sheriff's Department withheld photographs and moving images that plaintiffs were otherwise entitled to receive.

102. In addition to the refusal to disclose entire documents or allow for their review, said Sheriff's Department redacted many if not most of the documents it produced by eliminating any information that disclosed or suggested the identity of individuals it maintained or considered to be minors, as though the alleged minors were entitled to privacy or confidentiality under the Open Records Act, which they do not.

103. The aforesaid refusal to comply with plaintiffs' ORA request constituted a deliberate and malicious effort to withhold information from plaintiffs who were legitimately entitled to receive same as a means of determining the true cause of their son's death, as well as, the identities and involvement of the individuals who were connected with or responsible for his death.

104. The aforesaid refusal by Sheriff Chris Prine and each of the various other defendant law enforcement officers, including but not limited to Defendant Lowndes County Deputies and Defendant GBI Agents, conducted a kind of investigation that was in furtherance of the aforesaid conspiracy and, therefore, was designed to not only deliberately and maliciously cover-up the less-than-adequate effort by said law enforcement agencies to investigate the death of plaintiffs' decedent, but to also cover-up the identities of those individuals responsible for said decedent's death.

105. In addition, the aforesaid refusal by Sheriff Chris Prine to comply with plaintiffs' ORA request was designed to deliberately and maliciously cover-up how the defendants from the various law enforcement agencies deliberately and maliciously mishandled the subject investigation in such a way that anyone who might ever be charged with plaintiffs' decedent's death would never be convicted due to a patently flawed investigation.

106. Upon receipt of the Lowndes County Sheriff's Investigative File regarding the death of Kendrick Johnson, documents therein reveal that the only students whose parents, including but not limited to Defendant RICK BELL retained an attorney in response to two or more requests to be interviewed and who ultimately refused to be interviewed at all were Defendants BRIAN BELL and BRANDON BELL. Upon information and belief, the failure on the part of Defendant Lowndes County Deputies and Defendant GBI Agents to interview Defendants BRIAN BELL and BRANDON BELL was in furtherance of the aforesaid conspiracy and designed to shield Defendants BRIAN BELL and BRANDON BELL, as well as others, from possible criminal prosecution.

107. During the latter part of November 2014, the Lowndes County Sheriff's office chose to interview for the first time members of the high school's wrestling team in response to allegations that school documents showed that the alibi of Defendants BRANDON BELL and BRIAN BELL were questionable. Upon information and belief, this failure of to promptly interview the high school's wrestling team was in furtherance of the said conspiracy.

108. As a result of Plaintiffs discovering that their son's organs were missing, that their son's clothing was missing, as well as, the failure of Defendant Lowndes County Deputies and Defendant GBI Agents to interview Defendants BRIAN BELL and BRANDON BELL, plaintiffs

-26-

filed petition the County Coroner's Office for Lowndes County seeking to have the coroner convene a coroner's inquest.

109. In response, Plaintiffs aforesaid request and petition, Bill Watson, Coroner for Lowndes County, Georgia, refused to convene a coroner's inquest on the grounds that he regarded the findings of Defendant MARYANNE GAFFNEY-KRAFT to be conclusive. Upon information and belief, the aforesaid corner's refusal to conduct a coroner's inquest was the result of unlawful intimidation on the part of defendant Lowndes County School Superintendent WILLIAM "WES" TAYLOR, defendant Federal Bureau of Investigation ("FBI") Special Agent and father of Brandon and Brian Bell, RICK BELL, and Lowndes County Sheriff Chris Prine.

110. Upon information and belief, Coroner Bill Watson received unlawful and malicious threats from defendant Lowndes County School Superintendent WILLIAM "WES" TAYLOR, defendant Federal Bureau of Investigation ("FBI") Special Agent and father of Brandon and Brian Bell, RICK BELL, and Lowndes County Sheriff Chris Prine, all as a part of the aforesaid conspiracy to interfere with plaintiffs' access to the courts and efforts to seek legal redress.

### FIRST CAUSE OF ACTION
**WRONGFUL DEATH**
(Against Defendants BRANDON BELL,  BRIAN BELL, RICK BELL, RYAN HALL,
JOHN DOE and JANE DOE)

The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

111. Plaintiffs are husband and wife, not divorced, and are the parents of Kendrick Lamar Johnson, who died on January 10, 2013, at the age of 17 years, leaving no spouse or children.

-27-

112. Prior to January 10, 2013, defendant BRIAN BELL attacked plaintiff's decedent while on a school bus that had taken the high school's football team to a game that was being played out of town. As a result of the brief fight which followed, defendant BRANDON BELL told plaintiffs' decedent that "it ain't over."

113. At all times relevant herein, defendants BRANDON BELL and BRIAN BELL had been seeking revenge for the fight that had taken place on the aforesaid school bus.

114. On January 10, 2013, defendants BRANDON BELL, BRIAN BELL, RICK BELL, RYAN HALL, JOHN DOE and JANE DOE caused an unjustified assault upon plaintiffs' decedent.

115. The aforesaid assault upon plaintiffs' decedent was also in response to a parental command made by defendant RICK BELL, who also engaged in parental ratification of the misconduct by defendants BRANDON BELL and BRIAN BELL. Accordingly, defendant RICK BELL is also liable for the wrongful death of plaintiffs' decedent pursuant to O.C.G.A. Sec. 51-2-2.

116. As a direct and proximate result of the defendants BRANDON BELL, BRIAN BELL, RICK BELL, RYAN HALL, JOHN DOE and JANE DOE's unlawful and reckless disregard for the rights of others, plaintiffs' decedent suffered a violent and needless death.

117. Plaintiffs have been damaged through losing their youngest son and through his homicide in an amount that shall be proven at the time of trial.

## SECOND CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

.    The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

-28-

118. Each of the Defendants named herein and whose specific conduct is identified in the preceding section entitled "Facts Common to All Claims," Paragraphs 42 to 110, inclusive, engaged in a conspiracy to conduct an orchestrated and corrupt effort to cover up the misconduct of certain individuals, more particularly that of defendants BRANDON BELL,  BRIAN BELL, and RICK BELL, and as a consequence, was directed toward the Plaintiffs, as described herein. As such, said defendants' conduct was intentional, unlawful, and malicious. It is so outrageous that it is not tolerated by civilized society.

119. As a direct and proximate result of the conduct as set forth and identified in Paragraphs 42 to 110, herein, the Plaintiffs suffered serious mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

120.  In their conduct, each of the Defendants named herein, and as specifically set forth in Paragraphs 42 to 110, herein, acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from each of the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies and acts of corruption.

### THIRD CAUSE OF ACTION
### FAILURE TO PROPERLY HIRE, TRAIN, AND SUPERVISE
### (Against Defendants Vernon Keenan, Frank Simmons, and City of Valdosta)

. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

121. At all material times, the Defendants VERNON KEENAN, FRANK SIMMONS, and CITY OF VALDOSTA owed a duty to the Plaintiffs to properly hire, train and supervise all

individuals whom it placed in a position of responsibility relative to the proper execution of a criminal investigation.

122. The aforementioned duties include, but are not limited to: the hiring, retention, training and supervision of all agents, employees and representatives of the Defendants VERNON KEENAN, FRANK SIMMONS, and CITY OF VALDOSTA in connection with the criminal investigation; their association with other persons and entities to accomplish the performance of a proper investigation; the individual, proper and respectful performance of all steps of the related processes; and the ascertainment that all such duties were being fully and properly undertaken and performed.

123. Said Defendants' conduct, in their individual capacities, were so willful, wanton, and malicious that plaintiffs are entitled to punitive damages against them in their individual capacities.

### FOURTH CAUSE OF ACTION
### VIOLATION OF PLAINTIFFS' RIGHT TO DUE PROCESS UNDER STATE LAW
**(Against Defendants Vernon Keenan, Shannon Salters, Ray Mcgraw, Jack Winningham, Wanda Edwards, Stryde Jones, Aaron Pritchett, Logan Henderson, Randy Lightsey, Michael Adams, Jack Priddy, Kerry Quinn, Christi Griffin, Bryce Whitener, Christopher Burke, Troy Black, Howard Fisher, Mark Maskule, Roy Hart, John Marion Frank Simmons, Steve Turner, Rodney Bryan, Amy Braswell, Mike Callahan, Lindsay Marchant, Kristen Perry, Wes Horne, Rodney Bryan, and Maryanne Gaffney-Kraft)**

The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

124. At all material times, the Defendants VERNON KEENAN, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER

BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, JOHN MARION FRANK SIMMONS, STEVE TURNER, RODNEY BRYAN, AMY BRASWELL, MIKE CALLAHAN, LINDSAY MARCHANT, KRISTEN PERRY, WES HORNE, RODNEY BRYAN, AND MARYANNE GAFFNEY-KRAFT owed a duty to the Plaintiffs to properly investigate the circumstances surrounding the death of their son, Kendrick Lamar Johnson, and in the course thereof, determine the identities of all individuals who were in any way responsible for causing their son's death.

125. As law enforcement officers and state actors, the aforesaid defendants identified in the paragraph above violated the due process clause under the State Constitution for the State of Georgia by neglecting their duty to properly investigate the circumstances surrounding the death of plaintiffs' aforesaid son.

126. As a result of the failure of Defendants VERNON KEENAN, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, JOHN MARION FRANK SIMMONS, STEVE TURNER, RODNEY BRYAN, AMY BRASWELL, MIKE CALLAHAN, LINDSAY MARCHANT, KRISTEN PERRY, WES HORNE, RODNEY BRYAN, AND MARYANNE GAFFNEY-KRAFT to perform the investigation into the death of plaintiffs' son as set forth in the preceding paragraph, as well as, by interfering with their due process right to have access to the courts for legal redress, the aforesaid defendants have violated the due process clause under the State Constitution for the State of Georgia.

127. Said Defendants' conduct, in their individual and official capacities, have damaged

plaintiffs, and as a consequence, are demanding compensation in an amount that shall be proved

at trial.

<u>**FIFTH CAUSE OF ACTION**</u>
**VIOLATION OF PLAINTIFFS' RIGHT TO EQUAL PROTECTION
UNDER STATE LAW**
**(Against Defendants Vernon Keenan, Shannon Salters, Ray Mcgraw, Jack Winningham,
Wanda Edwards, Stryde Jones, Aaron Pritchett, Logan Henderson, Randy Lightsey,
Michael Adams, Jack Priddy, Kerry Quinn, Christi Griffin, Bryce Whitener, Christopher
Burke, Troy Black, Howard Fisher, Mark Maskule, Roy Hart, John Marion Frank
Simmons, Steve Turner, Rodney Bryan, Amy Braswell, Mike Callahan, Lindsay Marchant,
Kristen Perry, Wes Horne, Rodney Bryan, and Maryanne Gaffney-Kraft)**

The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every

allegation contained in the preceding paragraphs and further allege:

128.  At all material times, the Defendants VERNON KEENAN, SHANNON SALTERS,

RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON

PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK

PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER

BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, JOHN

MARION FRANK SIMMONS, STEVE TURNER, RODNEY BRYAN, AMY BRASWELL,

MIKE CALLAHAN, LINDSAY MARCHANT, KRISTEN PERRY, WES HORNE, RODNEY

BRYAN, AND MARYANNE GAFFNEY-KRAFT owed a duty to the Plaintiffs to properly

investigate the circumstances surrounding the death of their son, Kendrick Lamar Johnson, and in

the course thereof, determine the identities of all individuals who were in any way responsible for

causing their son's death.

129. As law enforcement officers and state actors, the aforesaid defendants identified in

the paragraph above violated the equal protection clause under the State Constitution for the State

of Georgia by neglecting their duty to properly investigate the circumstances surrounding the death of plaintiffs' aforesaid son and, minimally in a manner that would have been the same as that afforded any other individuals had plaintiffs been Caucasian or members of the white race.

130. As a result of the failure of Defendants VERNON KEENAN, SHANNON SALTERS, RAY MCGRAW, JACK WINNINGHAM, WANDA EDWARDS, STRYDE JONES, AARON PRITCHETT, LOGAN HENDERSON, RANDY LIGHTSEY, MICHAEL ADAMS, JACK PRIDDY, KERRY QUINN, CHRISTI GRIFFIN, BRYCE WHITENER, CHRISTOPHER BURKE, TROY BLACK, HOWARD FISHER, MARK MASKULE, ROY HART, JOHN MARION FRANK SIMMONS, STEVE TURNER, RODNEY BRYAN, AMY BRASWELL, MIKE CALLAHAN, LINDSAY MARCHANT, KRISTEN PERRY, WES HORNE, RODNEY BRYAN, AND MARYANNE GAFFNEY-KRAFT to perform the investigation into the death of plaintiffs' son as set forth in the preceding paragraph, as well as, by interfering with their due process right to have access to the courts for legal redress, the aforesaid defendants have violated the equal protection clause under the State Constitution for the State of Georgia.

131. Said Defendants' conduct, in their individual and official capacities, have damaged plaintiffs, and as a consequence, are demanding compensation in an amount that shall be proved at trial.

## SIXTH CAUSE OF ACTION
### PLAINTIFFS' PETITION FOR INJUNCTIVE RELIEF
### (Against Defendants Vernon Keenan and Maryanne Gaffney-Kraft)

The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

132. At all material times, the Defendant VERNON KEENAN, is a supervising official within the Georgia Bureau of Investigation and as such, has the authority to direct Defendant MARYANNE GAFFNEY-KRAFT to perform the duties set forth by her terms of employment as a forensic pathologist for the Georgia Bureau of Investigation, and, as required by law.

133. At all material times, Defendant MARYANNE GAFFNEY-KRAFT has a duty to perform the services set forth by her terms of employment as a forensic pathologist for the Georgia Bureau of Investigation, and, as otherwise required by law.

134. Following the aforesaid receipt of an autopsy report that was based upon an autopsy that was performed by Dr. William Anderson of Orlando, Florida, which disputed the official findings of the autopsy performed by Defendant MARYANNE GAFFNEY-KRAFT several months before, Defendant MARYANNE GAFFNEY-KRAFT was requested by Dr. Anderson to examine tissue specimens when he removed from the the remains of plaintiffs' decedent.

135. Moreover, based upon the the official findings of the autopsy performed by Defendant MARYANNE GAFFNEY-KRAFT, said defendant omitted any acknowledgment that she reviewed or considered a medical report submitted by the EMT's (emergency medical technicians) who observed the body of plaintiffs' decedent at the time that it was first discovered. The medical report submitted by the EMT's revealed the presence of a bruise at a location which was consistent with Dr. Anderson's findings.

136. As taxpayers and citizens of the State of Georgia, plaintiffs are owed a duty on the part of Defendant MARYANNE GAFFNEY-KRAFT to exercise reasonable judgment in carrying out her role as a forensic pathologist associated with the investigation into the cause of death of Plaintiffs' son, Kendrick Lamar Johnson, regardless of whether said defendant agrees with the findings of others within her field of expertise.

137. To date, Defendant MARYANNE GAFFNEY-KRAFT nor her supervisor, Defendant VERNON KEENAN, has shown an inclination or desire to examine tissue specimens which Dr. Anderson removed from an area of the remains of plaintiffs' decedent and that was never "sectioned" and thus examined nor addressed by Defendant MARYANNE GAFFNEY-KRAFT. This failure on the part of Defendant MARYANNE GAFFNEY-KRAFT constitutes a violation of state law requiring that death and other such investigations be performed in a competent and reasonable manner.

138. Plaintiffs have no adequate legal remedy available to them and the injury that will result is imminent and irreparable.

139. As a consequence, plaintiffs pray that this court will direct Defendant VERNON KEENAN and Defendant MARYANNE GAFFNEY-KRAFT to make arrangements for the examination of the tissue specimens collected by Dr. William Anderson and upon doing so, give proper consideration to such evidence as dictated by her honest and professional judgment.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request the following relief:

a. An award of compensatory damages for each Plaintiff, in an amount deemed appropriate by the enlightened conscience of the trier of fact, jointly and severally, against the Defendants;

b. An award of punitive damages, jointly and severally, against the Defendants;

c. An award of pre-judgment and post-judgment interest;

d. An award of costs, including, but not limited to, discretionary costs, attorneys' fees and expenses incurred in pursuing this case;

-35-

e. A temporary restraining order directing Defendant MARYANNE GAFFNEY-KRAFT

to make arrangements for the examination of the tissue specimens collected by Dr.

William Anderson

f. Any other and further relief this Court deems just and proper; and

g. Any other and further relief to which they may be entitled.

This _16th_ day of _August_, 2015.

THE C.B. KING LAW FIRM

BY: _____
       Chevene B. King, Jr.
       Attorney for Plaintiffs

Prepared by:
Chevene B. King, Jr.
Post Office Drawer 3468
Albany, GA  31706
(229)436-0524
State Bar No.: 420105

## RULE 5.2 CERTIFICATE OF SERVICE

I do hereby certify that I have this day served PLAINTIFFS' AMENDED

COMPLAINT PURSUANT TO COURT ORDER OF JULY 1, 2015 to the following

counsel of record:

Patrick T. O'Connor
Paul H. Threkeld
Lauren E. H. Meadows
OLIVER MANER, LLP
P. O. Box 10186
Savannah, GA 31412

Mark Glidewell
BRANNEN, SEARCY & SMITH LLP
P.O. Box 8002
Savannah, Ga 31412

L. Warren Turner, Jr.
P.O. Box 157
Valdosta, Ga 31603-0157

James Elliott
ELLIOTT, BLACKBURN & GOODING, P.C.
3016 N. Patterson St.
Valdosta, Georgia 31602-1711

M. Brice Ladson
LADSON LAW FIRM, P.C
P.O. Box 2819
Richmond Hill, Ga 31324

George T. Talley
Timothy M. Tanner
COLEMAN TALLEY, LLP
P.O. Box 5437
Valdosta, Ga 3 I 603-5437

Wayne S. Melnick
FREEMAN MATHIS & GARY
100 Galleria Pkwy. S.E. Ste. 1600
Atlanta, Ga 30339-5948

Ronald S. Boyter, Jr.
OFFICE OF THE ATTORNEY
GENERAL, STATE OF GEORGIA
40 Capitol Square, SW
Atlanta, Ga 30334

This 12th day of August, 2015.

_____
Chevene B. King, Jr.
Georgia Bar No. 420105
Attorney for Plaintiffs
Kenneth and Jacquelyn Johnson

THE C. B. KING LAW FIRM
P.O. Box 3468
Albany Ga 31706-3468
(229) 436-0524 / (229) 883-6382 (fax)
thecbkinglawfirm@bellsouth.net

LOWNDES COUNTY, GEORGIA
I certify this to be a true and correct
copy of the original on file and of
record in my office this
___ day of March, 20__
Beth C. Greene,
Clerk of Superior, State
and Juvenile Courts
By: _____
Deputy Clerk