IN THE ~~SUPERIOR~~ State COURT OF LOWNDES COUNTY
STATE OF GEORGIA

LOWNDES CO. FI. GEORGIA

2014 JAN 31 PM 4:57

*Beth C. Greene*
CLERK OF SUPERIOR STATE

|  |  |  |
|---|---|---|
| KENNETH JOHNSON and JACQUELYN JOHNSON,<br>            Plaintiffs, | * <br> * <br> * <br> * | CIVIL ACTION<br><br>FILE NO.: 2014SCV43 |
| vs. | * <br> * <br> * | **JURY TRIAL DEMANDED** |
| HARRINGTON'S FUNERAL HOME, INC.;<br>ANTONIO HARRINGTON, an individual; and<br>DOES 1 through 10,<br>            Defendants. | * <br> * <br> * <br> * <br> * | |

LOWNDES COUNTY, GEORGIA
I certify this to be a true and correct
copy of the original on file and of
record in my office this
29 day of October, 20 15
Beth C. Greene,
Clerk of Superior, State
and Juvenile Courts
By _____
Deputy Clerk

## COMPLAINT FOR DAMAGES

NOW COME Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON, each of

whom bring this action against the Defendants HARRINGTON'S FUNERAL HOME, INC.,

ANTONIO HARRINGTON, and DOES 1 through 10 (hereinafter sometimes referred

collectively to as "Defendants" or "Defendant FUNERAL HOME" or "Defendant

HARRINGTON" or "Defendant DOES 1 through 10"), hereby alleges, on knowledge as to

themselves, but otherwise on information and belief, show this Honorable Court as follows:

## NATURE OF ACTION

1. This lawsuit challenges the morally despicable, fraudulent, unlawful and unfair

business practices of Defendants HARRINGTON'S FUNERAL HOME, INC., ANTONIO

HARRINGTON and DOES 1 through 10. Defendant ANTONIO HARRINGTON- who is the

owner, operator, and manager of Defendant HARRINGTON'S FUNERAL HOME - has

intentionally, willfully and secretly desecrated the remains of Plaintiffs' minor child, KENDRICK LAMAR JOHNSON, who died on or about January 10, 2013 under mysterious circumstances while attending classes at the Lowndes High School located in Valdosta, Georgia.

2. This lawsuit also maintains that Defendants HARRINGTON'S FUNERAL HOME, INC., ANTONIO HARRINGTON and DOES 1 through 10 set upon a course of action, individually and in concert with one another, that was designed to deceive and perpetrate upon Plaintiffs a fraud which was designed to mislead and make difficult Plaintiffs' efforts to establish the true cause and manner of death as it relates to their minor child, KENDRICK LAMAR JOHNSON.

3. The actions of Defendants or morally despicable and cause severe economic and non-economic damages to Plaintiffs, as more fully set forth and defined below.

## PARTIES, JURISDICTION, VENUE AND SERVICE OF PROCESS

4. Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON (hereinafter "Plaintiffs") are citizens and residents of the State of Georgia and reside at 920 Ponderosa Drive, Valdosta, Lowndes County, Georgia. By bringing this action they subject themselves to the jurisdiction and venue of this Court.

5. Defendant HARRINGTON'S FUNERAL HOME, INC. Is a domestic corporation, incorporated in the State of Georgia, with its principal place of business at 713 Lake Park Road, Valdosta, Georgia 31601. Jurisdiction is proper over Defendant HARRINGTON'S FUNERAL HOME, INC. in this Court because it is principally located in the County where this action is filed. Defendant HARRINGTON'S FUNERAL HOME, INC. May be served with process by this Court's issuing the Summons and Complaint, to the Sheriff of Lowndes County, and the

Sheriff or an agent thereof delivering the Summons and a copy of this Complaint upon HARRINGTON'S FUNERAL HOME, INC.'s registered agent for service of process, Antonio Harrington, at 713 Lake Park Road, Valdosta, Georgia 31601.

6. Defendant ANTONIO HARRINGTON is a citizen of Georgia, residing at 713 Lake Park Road, Valdosta, Lowndes County, Georgia 31601, and is subject to the jurisdiction of this Court. Defendant ANTONIO HARRINGTON may be served with process by this Court's issuing a second original Summons and Complaint, to the Sheriff of Lowndes County, and the Sheriff or an agent thereof delivering the Summons and a copy of this Complaint upon Defendant ANTONIO HARRINGTON at the aforesaid address.

7. The true names and capacities of Defendants DOES 1 through 10, inclusive, whether individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiffs, who therefore sues said defendants by such fictitious names. Plaintiffs are informed and belief in thereon allege that each of the defendants designated herein as DOE are in some manner responsible for the accident occurrence as set forth herein. Plaintiffs will ask this Court for leave of court to amend this Complaint to show the true names and capacities of Defendants DOES 1 through 10, inclusive, as well as the manner in which each DOE defendant is responsible, when the same has been ascertained.

8. Plaintiffs are informed and believe, and upon such basis allege, that at all times herein mentioned, each of the defendants herein was an agent, servant, employee, co-conspirator, hardware, joint venture, wholly owned and controlled subsidiary and/or alter ego of each of the remaining defendants, and was at all times acting within the course and scope of said agency, service, employment, conspiracy, partnership and/or joint venture.

9. Defendants, and each of them, aided and abetted, encouraged and rendered substantial

assistance in accomplishing the wrong conduct and their wrongful goals and other wrongdoing complained of herein. In taking action, as particular rise to your end, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of, each of the defendants acted with an wariness of its primary wrongdoing and realize that its conduct would substantially assist in the accomplishment of the wrongful conduct, wrong goals, and wrongdoing.

10. Venue is proper in this Court because the events giving rise to this action occurred in Lowndes County, Georgia, and all Defendants, as previously identified herein, are residents of Lowndes County, Georgia.

## BACKGROUND FACTS

11 On or about January 11, 2013, the body of Plaintiffs' minor child, who was 17 years of age at the time of his death, was discovered rolled up in a gym mat which was located in the far southeast corner of one of the aforesaid high school's two (2) gymnasiums.

12. Due to the inexplicable appearance and location of said child's body, an investigation was initiated by the Lowndes County Sheriff's Department, in conjunction with and assisted by members of the Valdosta Police Department and the Georgia Bureau of Investigation ("GBI").

13. Within a matter of approximately eight (8) hours following the arrival of members of the aforementioned law-enforcement agencies, and after conducting interviews of approximately 18 individuals, out of more than 3000 individuals who were situated upon the aforesaid high school campus at the time at which Plaintiffs' minor child went missing, Lowndes County Sheriff Chris Prine announced to the media that there was "no evidence of foul play."

14. Due to the aforesaid findings of "no foul play" and a theory offered by Sheriff Chris

Prine that based upon an alleged belief that Plaintiffs' minor child got stuck in an upside down position within the aforesaid rolled up gym mat all of which occurred while reaching for a shoe, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON were desirous of having a further investigation into the cause and circumstances of their minor child's death.

15. In connection therewith, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON contacted Defendants HARRINGTON'S FUNERAL HOME and ANTONIO HARRINGTON for purposes of handling the remains of their minor child, as well as, making the arrangements for the funeral services and internment of said child.

16. On or about January 14, 2013, the remains of Plaintiffs' minor child were transported by Stephen Wesley Owens of Owen's Transport Service from the Valdosta Crime Lab to the GBI's Crime Lab located in Macon, Georgia for purposes of undergoing an official autopsy. Upon completion of said autopsy, the remains of Plaintiffs' minor child were transported back to Valdosta.

17. During the early afternoon hours of January 14, 2013, the aforesaid Stephen Wesley Owens delivered the remains of Plaintiffs' minor child to Defendant HARRINGTON'S FUNERAL HOME based upon an understanding and oral agreement entered into between Plaintiffs and Defendants on or about January 13, 2013.

18. However, during contract negotiations between Plaintiffs and Defendants and preliminary to the Defendant FUNERAL HOME's receipt of said minor child's remains, Defendant ANTONIO HARRINGTON expressed to Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON his concerns as to the aforesaid explanation for their child's death and further recommended that they should get a "second opinion" as to the cause of death notwithstanding the then-unknown-findings of official autopsy.

19. On or about January 16, 2013, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON executed certain documents at the request of Defendant ANTONIO HARRINGTON that memorialized the aforementioned oral agreement between Plaintiffs and Defendants.

20. On or about January 16, 2013, an occasion on which Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON visited the Defendant FUNERAL HOME, said plaintiffs inquired of Defendant ANTONIO HARRINGTON whether they could collect the clothing that their minor child was wearing at the time that is body was discovered Lowndes High School. Responsive to said request, Defendant ANTONIO HARRINGTON advised Plaintiffs that he was unaware that their minor child had any clothes when his remains were returned from the GBI Crime Lab. In addition, Defendant ANTONIO HARRINGTON informed Plaintiffs that upon asking other employees at the Defendant FUNERAL HOME as to the possible whereabouts of the aforesaid clothes, he was advised that no clothes accompanied their minor child's remains.

21. In addition to the aforesaid inquiry about their child's clothing, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON discussed with Defendant ANTONIO HARRINGTON the manner in which the remains would be prepared in contemplation of funeral proceedings. During that discussion, Defendant ANTONIO HARRINGTON recommended that due to the level of decomposition that had been suffered to the face of Plaintiffs' minor child, that the funeral be a "closed casket" ceremony. In response, Plaintiffs opposed Defendant ANTONIO HARRINGTON's recommendation and thereafter, Insisted that the ceremony be an "open casket" funeral. Upon being so advised, Defendant ANTONIO HARRINGTON was expected to proceed with providing the agreed-upon services, including but not limited to making certain that the body had been properly embalmed, as well as, presentable for the anticipated

funeral service.

22. In the course of attempting to ascertain the whereabouts of their minor child's clothing, Plaintiffs contacted the GBI Crime Lab in Macon, Georgia based upon Defendant ANTONIO HARRINGTON's representations to them that the subject clothing was not returned with their minor child's remains. At all times mentioned herein, and upon information and belief, Defendants ANTONIO HARRINGTON and DOES 1 through 10 understood that one of the reasons Plaintiffs were interested in retrieving the aforesaid clothing was because of its potential evidentiary value in helping to assist in their investigation as to how their minor child died and who was responsible.

23. Upon making contact with employees at the aforesaid GBI Crime Lab, Plaintiffs were advised that all personal effects, including but not limited to their minor child's clothing, was placed in a body bag and returned to Valdosta, Georgia with the aforesaid remains.

24. On or about May 2, 2013 the autopsy report that had been authored and prepared by employees of aforesaid GBI Crime Lab was released to the Lowndes County Sheriff's Department and ultimately, to Plaintiffs. This autopsy report concluded that the cause of death of a Plaintiffs' minor child was positional aphyxia and the manner of death was concluded to be accidental.

25. Inasmuch as Plaintiffs were in receipt of conflicting evidence and reports, as well as, being beleaguered by many unanswered questions, Plaintiffs made arrangements to have the remains of their minor child exhumed for purposes of conducting a second and independent autopsy. In that regard, Plaintiffs sought and received the assistance of Defendants ANTONIO HARRINGTON and HARRINGTON'S FUNERAL HOME as it related to meeting the requirements of the City of Valdosta's rules and regulations for disinterring bodies from its

cemetery properties.

26. At all times mentioned herein, Defendants ANTONIO HARRINGTON and DOES 1 through 10 understood that Plaintiffs were disinterring their minor child's remains for purposes of transporting same to Dr. William R. Anderson, a licensed forensic pathologist in Orlando, Florida for the aforesaid second autopsy. At no time throughout the entire process of either preparing necessary documents or physically removing their minor child's remains from the ground did Defendants ANTONIO HARRINGTON advise Plaintiffs of the true condition of said child's remains.

27. On or about June 14, 2013, Plaintiffs' minor child was disinterred, and after remaining at the rear of HARRINGTON'S FUNERAL HOME overnight, the remains of said minor child were transported to Orlando, Florida on June 15, 2013.

28. On or about June 15, 2013, as Dr. Anderson began to examine the inside of said minor child's abdomen, he devised that all of the internal organs were missing and that said child's body was stuffed with waded newspaper. In addition, Dr. Anderson learned that the brain of Plaintiffs' minor child was also missing. Upon information and belief, the autopsy by Dr. Anderson was made more complicated and deprived him of the ability to conduct the type of autopsy that was otherwise contemplated and more definitive in nature.

29. Notwithstanding the foregoing circumstances, Dr. Anderson established that Plaintiffs' minor child had suffered an injury to the right side of his upper neck and that the cause of death was blunt force trauma, an injury that was consistent with one that had been "inflicted" upon said minor child and "non-accidental" in nature.

30. Upon returning said minor child's remains to Valdosta, Georgia following the aforesaid autopsy, Defendant ANTONIO HARRINGTON simply inquired as to "how did the

autopsy go" without ever advising Plaintiffs that he was previously aware of the fact that the body their minor child had been stuffed with newspaper and, more importantly, that his inner organs were missing. Upon information and belief, Defendants were not only aware that the organs of their minor child were missing, but actively undertook measures to dispose of said organs in an effort to interfere with the Plaintiffs' investigation into the true cause and manner of their minor child's death. Moreover, when asked by Plaintiff KENNETH JOHNSON whether said minor child was missing any of his organs at time of the body's returned from the GBI Crime Lab, Defendant ANTONIO HARRINGTON responded, "Maybe one or two." On a subsequent date, Defendant ANTONIO HARRINGTON advised in a letter dated October 4, 2013 that "[d]ue to the position of the body at death, the viscera from his internal organs were destroyed, through natural process and henceforth were discarded by the [GBI's pathologist] before the body was sent back to Valdosta." The GBI has denied that any of the foregoing statement or explanation by Defendant ANTONIO HARRINGTON is true.

## FIRST CAUSE OF ACTION

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

31. At all material times, the Defendants held themselves out to be reputable, experienced, caring and trustworthy entities engaged in the business of dignified and respectful handling of including, but not limited to, all phases from the handling of their minor child's remains to the proper funeral as arranged for by Plaintiffs.

32. The Defendants, represented to the public at large and, in particular, to the Plaintiffs

that they would properly, carefully, professionally, decently, and respectfully preserve their mind or child's remains, in a manner conforming with the law, with human dignity and with the wishes of the Plaintiffs as specified in their agreements.

33. In conducting the activities and making the representations described herein, these Defendants breached the covenants of good faith and fair dealing, implicit in their contracts and imposed upon them by law, by failing to abide by their agreements and promises to perform the proper handling of their minor child's remains respectfully and with dignity, by abusing the trust that the Plaintiffs placed in them, by improperly handling their minor child's remains, and by falsely stating that their minor child's remains had been properly treated and/or in concealing the true methods and results of the handling of the remains.

34. As a direct and proximate result of the Defendants' breaches of the covenants of good faith and fair dealing, the Plaintiffs have incurred damages in the amount previously paid to the Defendants and have incurred and will incur additional monetary losses and have suffered and will continue to suffer physical injury, shock, outrage, extreme anxiety, worry, mortification, distress, grief, and sorrow upon the discovery of the Defendants mishandling, abuse and desecration of their minor child's remains.

35. In performing their acts, omissions, false representations, and concealments herein alleged, the Defendants acted intentionally, knowingly, with oppression, fraud, and malice and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## SECOND CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY/SPECIAL DUTY

36. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

37. By offering funeral-related services and by representing to the Plaintiffs and their decedent that they would perform the for handling and release their minor child's remains in the dignified and respectful manner requested and authorized, the Defendants knowingly and intentionally entered into a special relationship of trust and confidence with the Plaintiffs and their minor child. In entering into agreements to embalm the remains, the Defendants undertook to respectfully, responsibly, and lawfully discharge these duties.

38. The Defendants were, therefore, charged with a fiduciary or special duty to the Plaintiffs and their minor child to fully and faithfully perform these duties.

39. By mishandling, abusing, and desecrating their minor child's remains as described herein, in making misleading representations, including, but not limited to, all phases of the autopsy, laboratory testing, and delivery of their minor child's remains to the proper funeral home arranged for by the Plaintiffs would be and had been properly performed and by failing to properly perform or accomplish those services that the Defendants had expressly or impliedly agreed to perform, the Defendants, and each of them, breached the fiduciary duties owed by them to the Plaintiffs and their minor child.

40. Further, the failure of each and every Defendants to faithfully perform the disposition related duties, including the failure to ensure that Defendant HARRINGTON'S FUNERAL HOME properly and respectfully handled Plaintiffs' m Mor child's remains, contributed to and caused injury to Plaintiffs as a whole. But for the failure of each Defendant to properly discharge

their duties, Defendant HARRINGTON'S FUNERAL HOME's horrific practices would have been discovered and stopped before the organs of their minor child's remains were irretrievably discarded in bulk such that their minor child's remains are incapable of being properly identified and respected by the family.

41. As a direct and proximate result of the Defendants' breaches of their fiduciary duties, the Plaintiffs have been damaged and injured as set forth above.

42. The Defendants' conduct in breach of their fiduciary obligations was intentional, knowing, done with oppression, fraud, and malice and done in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## THIRD CAUSE OF ACTION

### FRAUD AND DECEIT

43. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

44. The Plaintiffs are informed and believe, and thereon allege that the Defendants made representations through written agreements, written materials, and oral representations to the Plaintiffs, knowing that the representations were false, incomplete and misleading at the time they were made.

45. By making such false and deceitful representations, and by omitting and concealing the true facts, such as the destruction and disposal or absence of their minor child's organs, the

Defendants, and each of them, intended to deceive the Plaintiffs to entrust their minor child's remains to them for proper funeral home arrangements.

46. The Plaintiffs believed that the representations, which were false, incomplete and misleading, were, in fact, true and complete. Relying on the truth and completeness of these representations, the Plaintiffs entered into agreements with the Defendants and trusted and reasonably relied on the Defendants to follow the arranged procedures and promises set forth herein, including but not limited to preserving the body for a second autopsy.

47. This reliance was justified and reasonable in that the Defendants, through their written and oral representations, held themselves out to be reputable, experienced and trustworthy entities in the business of handling their minor child's remains and following the services arranged for by the Plaintiffs and other related services.

48. The Plaintiffs first became aware and could first reasonably have become aware that these representations were false, incomplete and misleading on or about June 14, 2013.

49. As a proximate result of the Defendants fraud and deceit, the Plaintiffs have suffered damages and injuries described herein.

50. The Defendants' fraud and deceit was intentional, knowing, done with oppression, fraud and malice and done in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## FOURTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

51. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

52. When the Defendants made the representations described herein, Plaintiffs had no reasonable grounds for believing them to be untrue. The Defendants failed to exercise reasonable care or competence in making these representations and in obtaining the information communicated.

53. The Defendants made these representations with the intent to induce the Plaintiffs to enter into disposition agreements with the Defendants and with the intent to induce the Plaintiffs to trust and rely upon the Defendants to perform or accomplish the services promised, including the individual respectful and proper handling by the proper embalming of their minor child's remains, as well as, preserving the body for purposes of conducting a second autopsy.

54. The Plaintiffs believed that the representations were true and complete. Relying on the trust and completeness of these representations, the Plaintiffs entered into funeral related agreements with the Defendants and trusted and relied on the Defendants to perform the services and promises set forth therein.

55. This reliance was justified and reasonable in that the Defendants, through their written and oral representations, held themselves out to be reputable, experienced and trustworthy entities in the business of handling their minor child's remains and related services.

56. In fact, the representations were false, incomplete and misleading.

57. The Plaintiffs first became aware and could first reasonably have become aware that these representations were false, incomplete and misleading on or about June 15, 2013.

58. As a proximate result of the Defendants' negligent misrepresentations, the Plaintiffs have suffered damages and injuries described herein.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE

59. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

60. At all material times, the Defendants owed a duty to the Plaintiffs to act with the ordinary care of a reasonable person with respect to all aspects of the services promised including, but not limited to the handling of their minor child's remains for purposes of conducting a proper funeral, as well as, preserving the body for a second autopsy. These duties include but are not limited to following the laws of the State of Georgia in regard to disposition of remains, following its own policies in regard to the proper disposition of remains, the exercise of reasonable acts in hiring, retention, training, and supervision of all agents, employees, and representatives of the Defendants, in connection with such services and transactions, the management and administration of the services and transaction, the association with other persons and entities to accomplish the performance of such services, the individual, proper and respectful performance of all steps of the related processes, and the ascertainment that all such services were being fully and properly undertaken and performed.

61. The Defendants negligently and carelessly failed to discharge these duties.

62. As a proximate cause of the Defendants' negligence, the Plaintiffs have been damaged and injured as described herein.

## SIXTH CAUSE OF ACTION

## NEGLIGENCE PER SE

63. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every

allegation contained in the preceding paragraphs and further allege:

64. The Plaintiffs, as parents of KENDRICK LAMAR JOHNSON, had or have a personal quasi-property right to ensure the proper handling, burial, and preservation of said minor child's remains.

65. The Plaintiffs expressed their wishes to the Defendants regarding the manner in which the remains were to be handled.

66. The Defendants had the opportunity to comply with the Plaintiffs' expressed wishes.

67. Defendants were negligent in at least the following ways:

a.) Failing to implement and/or enforce policies and procedures that would have guarded against or prevented the mishandling of their minor child's remains.

b.) Knowingly allowing their minor child's remains to be mishandled which resulted in the injuries and damages to Plaintiffs.

68. Plaintiffs are among the people that O.C.G.A. § 31-10-20 was intended to protect.


## SEVENTH CAUSE OF ACTION

## WILLFUL INTERFERENCE WITH REMAINS AND INTENTIONAL MISHANDLING OF CORPSE

69. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

70. The Plaintiffs, as parents of KENDRICK LAMAR JOHNSON, had or have a personal quasi-property right to ensure the proper handling and burial of their minor child's remains.

71. The Plaintiffs expressed their wishes to the Defendants regarding the manner in

which the remains were to be handled.

72. The Defendants had the opportunity to comply with the Plaintiffs' expressed wishes.

73. The Defendants, however, willfully and deliberately mishandled their minor child's remains and interfered with the rights and responsibilities of the Plaintiffs to effect the proper disposition of the remains with the utmost dignity, and in accordance with their wishes, requests, and beliefs.

74. The Defendants' mishandling of their minor child's remains and their interference with the rights of the Plaintiffs precluded the Plaintiffs from exercising their rights and performing their responsibilities of appropriately disposing of their minor child's remains.

75. As a direct, known, forseeable, and proximate result of the intentional mishandling of the remains by the Defendants, the Plaintiffs have suffered and continue to suffer injury and damages.

76. In mishandling the remains of their minor child, the Defendants acted intentionally, knowingly, with oppression, fraud and malice, and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## EIGHTH CAUSE OF ACTION

## NEGLIGENT INTERFERENCE WITH REMAINS AND MISHANDLING OF A CORPSE

77. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every

allegation contained in the preceding paragraphs and further allege:

78. The Plaintiffs, as KENDRICK LAMAR JOHNSON's next of kin, had or have a person quasi-property right to ensure the proper handling and burial of their minor child's remains.

79. The Plaintiffs expressed their wishes to the Defendants regarding the manner in which the remains were to be handled.

80. The Defendants had the opportunity to comply with the Plaintiffs' expressed wishes.

81. The Defendants negligently, recklessly, and carelessly mishandled their minor child's remains and interfered with the rights and responsibilities of the Plaintiffs to dispose of the remains in ways authorized by the Plaintiffs, ways that were contrary to their wishes, requests, and beliefs.

82. The Defendants' conduct was accomplished through violation of policies and mishandling of their minor child's remains, resulting from the Defendants' own negligence and negligent entrustment of their minor child's remains to persons who lacked the qualifications, training, sensitivity, experience and integrity required to handle the remains properly and by the Defendants' negligent failure to control, supervise, and investigate the actions of such persons and entities to ensure they complied with applicable policies and laws.

83. As a direct and proximate result of the Defendants' negligent interference with their minor child's remains, the Plaintiffs have suffered and continue to suffer damages and injuries.

## NINTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

84. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every

allegation contained in the preceeding paragraphs and further allege:

85.  The Defendants' conduct directed toward the Plaintiffs, as described herein, was intentional and/or reckless. It is so outrageous that it is not tolerated by civilized society.

86.  As a direct and proximate result of the Defendants' conduct, the Plaintiffs suffered serious mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

87.  In their conduct, the Defendants acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## TENTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

88.  The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

89.  At all material times, the Defendants owed a duty to the Plaintiffs to act with the ordinary care of a reasonable person with respect to all aspects of the services promised, including but not limited to, preserving and keeping from disposal or destruction their minor child's remains. These duties include, but are not limited to: the hiring, retention, training and supervision of all agents, employees and representatives of the Defendants, in connection with such services and transactions; the association with other persons and entities to accomplish the performance of such services; the individual, proper and respectful performance of all steps of

the related processes; and the ascertainment that all such services were being fully and properly undertaken and performed.

90. The Defendants negligently and carelessly failed to discharge these duties.

91. As a proximate cause of the Defendants' negligence, the Plaintiffs have suffered serious and severe mental injuries and emotional distress that no reasonable person could be expected, or deserves, to endure.

## ELEVENTH CAUSE OF ACTION

### UNJUST ENRICHMENT

92. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

93. The Defendants have been and will continue to be unjustly enriched at the expense of the Plaintiffs by accepting payments from the Plaintiffs for services which they not only failed to render as promised, but which were provided in a completely inappropriate, unauthorized, and egregious manner.

94. It would be inequitable and contrary to law to permit the Defendants to retain the benefits they have wrongfully gained through these actions.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request the following relief:

a. An award of compensatory damages for each Plaintiff, in an amount deemed appropriate by the enlightened conscience of the trier of fact, jointly and severally, against the Defendants;

b. An award of punitive damages, jointly and severally, against the Defendants;

c.  An award of pre-judgment and post-judgment interest;

d.  An award of costs, including, but not limited to, discretionary costs, attorneys' fees

and expenses incurred in pursuing this case;

e.  Any other and further relief this Court deems just and proper; and

f.  Any other and further relief to which they may be entitled.


THE C.B. KING LAW FIRM

BY: _____

Chevene B. King, Jr.
Attorney for Plaintiffs


Prepared by:
Chevene B. King, Jr.
Post Office Drawer 3468
Albany, GA  31706
(229)436-0524
State Bar No.:  420105

## <u>VERIFICATION</u>

Personally appeared before me, an officer duly authorized to administer oaths, came

KENNETH JOHNSON and JACQUELYN JOHNSON who state under oath that each of them is

one of the plaintiffs named in the above and foregoing Complaint and that the facts contained

within said Complaint are true and correct.

_____
KENNETH JOHNSON, Plaintiff

_____
JACQUELYN JOHNSON, Plaintiff

Sworn to and subscribed before me this

31st day of January, 2014

Barbara Crittenden
Notary Public

Notary Public, Lowndes County, Georgia
My Commission Expires October 19, 2015

LOWNDES COUNTY GEORGIA
FILED IN OFFICE

# IN THE STATE COURT OF LOWNDES COUNTY
## STATE OF GEORGIA

2014 FEB -5 AM 10: 02

Beth C. Greene

| | | |
|---|---|---|
| KENNETH JOHNSON and JACQUELYN JOHNSON, | * | |
| Plaintiffs, | * | CIVIL ACTION |
| | * | FILE NO.: __2014SCV43__ |
| vs. | * | |
| | * | **JURY TRIAL DEMANDED** |
| HARRINGTON'S FUNERAL HOME, INC.; ANTONIO HARRINGTON, an individual; and DOES 1 through 10, Defendants. | * | |
| | * | |
| | * | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT
## FOR DAMAGES

NOW COME KENNETH JOHNSON and JACQUELYN JOHNSON, plaintiffs in the

above styled action (hereinafter "Plaintiffs") and who amend the allegations contained in their

complaint for damages by striking said complaint in its entirety, with the exception of their afore

signed verification, and in substitution thereof, hereby submit the following attachment.

This __4th__ day of __February__, 20 _14_.

THE C.B. KING LAW FIRM

Chevene B. King, Jr.

Prepared by:
Chevene B. King, Jr.
Post Office Box 3468
Albany, Georgia 31706
229/436-0524
State Bar No.: 42010

LOWNDES COUNTY, GEORGIA
I certify this to be a true and correct
copy of the original on file and of
record in my office this
__21__ day of __October__, 20 _15_.
Beth C. Greene,
Clerk of Superior, State
and Juvenile Courts
By: _____
Deputy Clerk

# IN THE STATE COURT OF LOWNDES COUNTY
## STATE OF GEORGIA

KENNETH JOHNSON and JACQUELYN     *
JOHNSON,     *
       Plaintiffs,     *
    *
    *
vs.     *
    *
    *
HARRINGTON'S FUNERAL HOME, INC.;     *
ANTONIO HARRINGTON, an individual; and     *
DOES 1 through 10,     *
       Defendants.     *
    *

CIVIL ACTION

FILE NO.: **2014SCV43**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES

NOW COME Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON, each of whom bring this action against the Defendants HARRINGTON'S FUNERAL HOME, INC., ANTONIO HARRINGTON, and DOES 1 through 10 (hereinafter sometimes referred collectively to as "Defendants" or "Defendant FUNERAL HOME" or "Defendant HARRINGTON" or "Defendant DOES 1 through 10"), hereby alleges, on knowledge as to themselves, but otherwise on information and belief, show this Honorable Court as follows:

## NATURE OF ACTION

1. This lawsuit challenges the morally despicable, fraudulent, unlawful and unfair business practices of Defendants HARRINGTON'S FUNERAL HOME, INC., ANTONIO HARRINGTON and DOES 1 through 10. Defendant ANTONIO HARRINGTON- who is the owner, operator, and manager of Defendant HARRINGTON'S FUNERAL HOME - has

intentionally, willfully and secretly desecrated the remains of Plaintiffs' minor child,

KENDRICK LAMAR JOHNSON, who died on or about January 10, 2013 under mysterious

circumstances while attending classes at the Lowndes High School located in Valdosta, Georgia.

2. This lawsuit also maintains that Defendants HARRINGTON'S FUNERAL HOME,

INC., ANTONIO HARRINGTON and DOES 1 through 10 set upon a course of action,

individually and in concert with one another, that was designed to deceive and perpetrate upon

Plaintiffs a fraud which was designed to mislead and make difficult Plaintiffs' efforts to establish

the true cause and manner of death as it relates to their minor child, KENDRICK LAMAR

JOHNSON (hereinafter sometimes referred to as "minor child" or "decedent").

3. The actions of Defendants or morally despicable and cause severe economic and non-

economic damages to Plaintiffs, as more fully set forth and defined below.

## PARTIES, JURISDICTION, VENUE AND SERVICE OF PROCESS

4. Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON (hereinafter

"Plaintiffs") are citizens and residents of the State of Georgia and reside at 920 Ponderosa Drive,

Valdosta, Lowndes County, Georgia. By bringing this action they subject themselves to the

jurisdiction and venue of this Court.

5. Defendant HARRINGTON'S FUNERAL HOME, INC. Is a domestic corporation,

incorporated in the State of Georgia, with its principal place of business at 713 Lake Park Road,

Valdosta, Georgia 31601. Jurisdiction is proper over Defendant HARRINGTON'S FUNERAL

HOME, INC. in this Court because it is principally located in the County where this action is

filed. Defendant HARRINGTON'S FUNERAL HOME, INC. may be served with process by

this Court's issuing the Summons and Complaint, to the Sheriff of Lowndes County, and the

Sheriff or an agent thereof delivering the Summons and a copy of this Complaint upon

HARRINGTON'S FUNERAL HOME, INC.'s registered agent for service of process, Antonio

Harrington, at 713 Lake Park Road, Valdosta, Georgia 31601.

6. Defendant ANTONIO HARRINGTON is a citizen of Georgia, residing at 713 Lake

Park Road, Valdosta, Lowndes County, Georgia 31601, and is subject to the jurisdiction of this

Court. Defendant ANTONIO HARRINGTON may be served with process by this Court's

issuing a second original Summons and Complaint, to the Sheriff of Lowndes County, and the

Sheriff or an agent thereof delivering the Summons and a copy of this Complaint upon

Defendant ANTONIO HARRINGTON at the aforesaid address.

7. The true names and capacities of Defendants DOES 1 through 10, inclusive, whether

individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiffs, who

therefore sue said defendants by such fictitious names. Plaintiffs are informed and believe and

thereon allege that each of the defendants designated herein as DOE are in some manner

responsible for the acts and occurrences as set forth herein. Plaintiffs will ask this Court for leave

of court to amend this Complaint to show the true names and capacities of Defendants DOES 1

through 10, inclusive, as well as the manner in which each DOE defendant is responsible, when

the same has been ascertained.

8. Plaintiffs are informed and believe, and upon such basis allege, that at all times herein

mentioned, each of the defendants herein was an agent, servant, employee, co-conspirator,

partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the

remaining defendants, and was at all times acting within the course and scope of said agency,

service, employment, conspiracy, partnership and/or joint venture.

9. Defendants, and each of them, aided and abetted, encouraged and rendered substantial

assistance in accomplishing the wrong conduct and their wrongful goals and other wrongdoing complained of herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of, each of the defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist in the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

10. Venue is proper in this Court because the events giving rise to this action occurred in Lowndes County, Georgia, and all Defendants, of those previously identified herein, are residents of Lowndes County, Georgia.

## BACKGROUND FACTS COMMON TO ALL CLAIMS

11 On or about January 11, 2013, the body of Plaintiffs' minor child, who was 17 years of age at the time of his death, was discovered rolled up in a gym mat which was located in the far southeast corner of one of the aforesaid high school's two (2) gymnasiums.

12. Due to the inexplicable appearance and location of said minor child's body, an investigation led by the Lowndes County Sheriff's Department, in conjunction with and assisted by members of the Valdosta Police Department and the Georgia Bureau of Investigation ("GBI").

13. Within a matter of less than eight (8) hours following the arrival of members of the aforementioned law-enforcement agencies, and after conducting interviews of approximately 18 individuals, out of more than 3000 individuals who were situated upon the aforesaid high school campus at the time at which Plaintiffs' minor child went missing, Lowndes County Sheriff Chris Prine announced to the media that there was "no evidence of foul play."

14. Due to the aforesaid findings of "no foul play" and a theory offered by Sheriff Chris

Prine that based upon an alleged belief that Plaintiffs' minor child got stuck in an upside down position within the aforesaid rolled up gym mat all of which occurred while reaching for a shoe, Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON were desirous of having a further investigation into the cause and circumstances of their minor child's death.

15. Concurrent therewith, Plaintiffs contacted Defendants HARRINGTON'S FUNERAL HOME and ANTONIO HARRINGTON for purposes of properly handling the remains of their minor child, as well as, making the arrangements for the funeral services and internment of said child.

16. On or about January 14, 2013, the remains of Plaintiffs' minor child were transported by Stephen Wesley Owens of Owen's Transport Service (hereinafter "Owens") from the Valdosta Crime Lab to the GBI's Crime Lab located in Macon, Georgia for purposes of undergoing an official autopsy. Upon completion of said autopsy, Owens transported the remains of Plaintiffs' minor child back to Valdosta during the early afternoon hours of January 14, 2013 delivered said remains of Plaintiffs' minor child to Defendant HARRINGTON'S FUNERAL HOME, all of which was pursuant to an understanding and oral agreement entered into between Plaintiffs and Defendants.

17. However, during contract negotiations between Plaintiffs and Defendants and preliminary to the Defendant FUNERAL HOME's receipt of said minor child's remains, Defendant ANTONIO HARRINGTON expressed to Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON his concerns as to the aforesaid explanation for their child's death and further recommended that they should get a "second opinion" as to the cause of death notwithstanding the then-unknown-findings of official autopsy. Plaintiffs concurred with Defendant ANTONIO HARRINGTON's recommendation.

18. At all times mentioned herein, defendants knew and understood that the aforesaid recommendation of getting a "second opinion" would involve Plaintiffs arranging for an independent or second autopsy, and that in light of such, Defendants were not to destroy or dispose of the internal organs belonging to Plaintiffs' minor child.

19. On or about January 16, 2013, an occasion on which Plaintiffs KENNETH JOHNSON and JACQUELYN JOHNSON visited the Defendant FUNERAL HOME, said plaintiffs inquired of Defendant ANTONIO HARRINGTON whether they could collect the clothing that their minor child was wearing at the time that is body was discovered Lowndes High School. Responsive to said request, Defendant ANTONIO HARRINGTON advised Plaintiffs that he was unaware that their minor child had any clothes when his remains were returned from the GBI Crime Lab.

20. In addition to the aforesaid inquiry about their minor child's clothing, Plaintiffs discussed with Defendant ANTONIO HARRINGTON the manner in which the remains would be prepared in contemplation of funeral proceedings. During said discussion, Defendant ANTONIO HARRINGTON recommended that due to the level of decomposition that had been suffered to the face of Plaintiffs' minor child, that the funeral be a "closed casket" ceremony. In response, Plaintiffs vehemently opposed Defendant ANTONIO HARRINGTON's recommendation and, thereafter, insisted that the ceremony be an "open casket" funeral. Upon being so advised, Defendant ANTONIO HARRINGTON was expected to proceed with providing the agreed-upon services, including but not limited to making certain that the body had been properly embalmed, as well as, presentable for the anticipated funeral service. In connection therewith, Defendants were never authorized by Plaintiffs to destroy or dispose of any of the decedent's body parts, including but not limited to his internal organs.

22. In the course of attempting to ascertain the whereabouts of their minor child's clothing, Plaintiffs contacted the GBI Crime Lab in Macon, Georgia based upon Defendant ANTONIO HARRINGTON's representations to them that the subject clothing was not returned with their minor child's remains. At all times mentioned herein, and upon information and belief, Defendants ANTONIO HARRINGTON and DOES 1 through 10 understood that notwithstanding the expectation that said defendant was to make the face of Plaintiffs' minor child presentable, defendants were not authorize to remove, destroy, or dispose of any parts of said child's remains due to the prospect of a second autopsy and its potential evidentiary value in helping to assist in their investigation as to how their minor child died and who was responsible.

22. Upon making contact with employees at the aforesaid GBI Crime Lab, Plaintiffs were advised that all personal effects, including but not limited to their minor child's clothing, was placed in a body bag and returned to Valdosta, Georgia with the aforesaid remains.

23. On or about May 2, 2013 the autopsy report that had been authored and prepared by employees of aforesaid GBI Crime Lab was released to the Lowndes County Sheriff's Department and ultimately, to Plaintiffs. This autopsy report concluded that the cause of death of Plaintiffs' minor child was positional aphyxia and the manner of death was concluded to be accidental.

24. Inasmuch as Plaintiffs were in receipt of conflicting evidence and reports, as well as, being beleaguered by many unanswered questions, Plaintiffs made arrangements to have the remains of their minor child exhumed for purposes of conducting a second and independent autopsy. In that regard, Plaintiffs received the assistance of Defendants ANTONIO HARRINGTON and HARRINGTON'S FUNERAL HOME as it related to meeting the requirements of state and city health code rules and regulations for disinterring bodies from its

cemetery properties.

25. At all times mentioned herein, Defendants ANTONIO HARRINGTON and DOES 1 through 10 understood that Plaintiffs were disinterring their minor child's remains for purposes of transporting same to Dr. William R. Anderson, a licensed forensic pathologist in Orlando, Florida for the aforesaid second autopsy. At no time throughout the entire process of either preparing related documents or physically removing their minor child's remains from the ground did Defendant ANTONIO HARRINGTON advise Plaintiffs of the true condition of said child's remains.

26. On or about June 14, 2013, Plaintiffs' minor child was disinterred, and after remaining at the rear of HARRINGTON'S FUNERAL HOME overnight, the remains of said minor child were transported to Orlando, Florida on June 15, 2013.

27. On or about June 15, 2013, as Dr. Anderson began to examine the inside of said minor child's abdomen, he devised that all of the internal organs were missing and that said child's body was stuffed with waded newspaper. In addition, Dr. Anderson learned that the brain of Plaintiffs' minor child was also missing. Upon information and belief, the autopsy by Dr. Anderson was made more complicated and thus deprived him of the ability to conduct the type of autopsy that was otherwise contemplated and more definitive in nature.

28. Notwithstanding the foregoing circumstances, Dr. Anderson established that Plaintiffs' minor child had suffered an injury to the right side of his upper neck, and that the cause of death was blunt force trauma, an injury that was consistent with one that had been "inflicted" upon said minor child and "non-accidental" in nature.

29. Upon returning said minor child's remains to Valdosta, Georgia following the aforesaid autopsy, Defendant ANTONIO HARRINGTON simply inquired as to "how did the

autopsy go" without ever advising Plaintiffs that he was previously aware of the fact that the body their minor child had been stuffed with newspaper and, more importantly, that his inner organs were missing. Upon information and belief, Defendants were not only aware that the organs of their minor child were missing, but actively undertook measures to dispose of said organs in an effort to interfere with the Plaintiffs' investigation into the true cause and manner of their minor child's death. Moreover, when asked by Plaintiff KENNETH JOHNSON whether said minor child was missing any of his organs at time of the body's returned from the GBI Crime Lab, Defendant ANTONIO HARRINGTON responded, "Maybe one or two." On a subsequent date, Defendant ANTONIO HARRINGTON advised in a letter dated October 4, 2013 that "[d]ue to the position of the body at death, the viscera from his internal organs were destroyed, through natural process and henceforth were discarded by the [GBI's pathologist] before the body was sent back to Valdosta." The GBI has denied that any of the foregoing statement or explanation by Defendant ANTONIO HARRINGTON is true.

## FIRST CAUSE OF ACTION
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

30. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

31. At all material times, the Defendants held themselves out to be reputable, experienced, caring and trustworthy entities engaged in the business of dignified and respectful handling of including, but not limited to, all phases from the handling of their minor child's remains to the proper funeral as arranged for by Plaintiffs.

32. The Defendants, represented to the public at large and, in particular, to the Plaintiffs

that they would properly, carefully, professionally, decently, and respectfully preserve their mind or child's remains, in a manner conforming with the law, with human dignity and with the wishes of the Plaintiffs as specified in their agreements.

33. In conducting the activities and making the representations described herein, these Defendants breached the covenants of good faith and fair dealing, implicit in their contracts and imposed upon them by law, by failing to abide by their agreements and promises to perform the proper handling of their minor child's remains respectfully and with dignity, by abusing the trust that the Plaintiffs placed in them, by improperly handling their minor child's remains, and by falsely stating that their minor child's remains had been properly treated and/or in concealing the true methods and results of the handling of the remains.

34. As a direct and proximate result of the Defendants' breaches of the covenants of good faith and fair dealing, the Plaintiffs have incurred damages in the amount previously paid to the Defendants and have incurred and will incur additional monetary losses and have suffered and will continue to suffer physical injury, shock, outrage, extreme anxiety, worry, mortification, distress, grief, and sorrow upon the discovery of the Defendants mishandling, abuse and desecration of their minor child's remains.

35. In performing their acts, omissions, false representations, and concealments herein alleged, the Defendants acted intentionally, knowingly, with oppression, fraud, and malice and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## SECOND CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY/SPECIAL DUTY

36. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

37. By offering funeral-related services and by representing to the Plaintiffs that they would perform the for handling and release their minor child's remains in the dignified and respectful manner requested and authorized, the Defendants knowingly and intentionally entered into a special relationship of trust and confidence with the Plaintiffs and their minor child. In entering into agreements to embalm the remains, the Defendants undertook to respectfully, responsibly, and lawfully discharge these duties.

38. The Defendants were, therefore, charged with a fiduciary or special duty to the Plaintiffs and their minor child to fully and faithfully perform these duties.

39. By mishandling, abusing, and desecrating their minor child's remains as described herein, in making misleading representations, including, but not limited to, all phases of the autopsy, laboratory testing, and delivery of their minor child's remains to the proper funeral home arranged for by the Plaintiffs would be and had been properly performed and by failing to properly perform or accomplish those services that the Defendants had expressly or impliedly agreed to perform, the Defendants, and each of them, breached the fiduciary duties owed by them to the Plaintiffs and their minor child.

40. Further, the failure of each and every Defendants to faithfully perform the disposition related duties, including the failure to ensure that Defendant HARRINGTON'S FUNERAL HOME properly and respectfully handled Plaintiffs' m Mor child's remains, contributed to and caused injury to Plaintiffs as a whole. But for the failure of each Defendant to properly discharge

their duties, Defendant HARRINGTON'S FUNERAL HOME's horrific practices would have

been discovered and stopped before the organs of their minor child's remains were irretrievably

discarded in bulk such that their minor child's remains are incapable of being properly identified

and respected by the family.

41. As a direct and proximate result of the Defendants' breaches of their fiduciary duties,

the Plaintiffs have been damaged and injured as set forth above.

42. The Defendants' conduct in breach of their fiduciary obligations was intentional,

knowing, done with oppression, fraud, and malice and done in reckless and conscious disregard

of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary

damages from the Defendants in such amount as shall be necessary and appropriate to punish the

Defendants and to deter them and anyone else from ever committing similar indecencies upon

human remains.

### THIRD CAUSE OF ACTION
### FRAUD AND DECEIT

43. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every

allegation contained in the preceding paragraphs and further allege:

44. The Plaintiffs are informed and believe, and thereon allege that the Defendants made

representations through written agreements, written materials, and oral representations to the

Plaintiffs, knowing that the representations were false, incomplete and misleading at the time

they were made.

45. By making such false and deceitful representations, and by omitting and concealing

the true facts, such as the destruction and disposal or absence of their minor child's organs, the

Defendants, and each of them, intended to deceive the Plaintiffs to entrust their minor child's

remains to them for proper funeral home arrangements.

46. The Plaintiffs believed that the representations, which were false, incomplete and misleading, were, in fact, true and complete. Relying on the truth and completeness of these representations, the Plaintiffs entered into agreements with the Defendants and trusted and reasonably relied on the Defendants to follow the arranged procedures and promises set forth herein, including but not limited to preserving the body for a second autopsy.

47. This reliance was justified and reasonable in that the Defendants, through their written and oral representations, held themselves out to be reputable, experienced and trustworthy entities in the business of handling their minor child's remains and following the services arranged for by the Plaintiffs and other related services.

48. The Plaintiffs first became aware and could first reasonably have become aware that these representations were false, incomplete and misleading on or about June 14, 2013.

49. As a proximate result of the Defendants fraud and deceit, the Plaintiffs have suffered damages and injuries described herein.

50. The Defendants' fraud and deceit was intentional, knowing, done with oppression, fraud and malice and done in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.


## FOURTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

51. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every

allegation contained in the preceding paragraphs and further allege:

52. When the Defendants made the representations described herein, Plaintiffs had no reasonable grounds for believing them to be untrue. The Defendants failed to exercise reasonable care or competence in making these representations and in obtaining the information communicated.

53. The Defendants made these representations with the intent to induce the Plaintiffs to enter into disposition agreements with the Defendants and with the intent to induce the Plaintiffs to trust and rely upon the Defendants to perform or accomplish the services promised, including the individual respectful and proper handling by the proper embalming of their minor child's remains, as well as, preserving the body for purposes of conducting a second autopsy.

54. The Plaintiffs believed that the representations were true and complete. Relying on the trust and completeness of these representations, the Plaintiffs entered into funeral related agreements with the Defendants and trusted and relied on the Defendants to perform the services and promises set forth therein.

55. This reliance was justified and reasonable in that the Defendants, through their written and oral representations, held themselves out to be reputable, experienced and trustworthy entities in the business of handling their minor child's remains and related services.

56. In fact, the representations were false, incomplete and misleading.

57. The Plaintiffs first became aware and could first reasonably have become aware that these representations were false, incomplete and misleading on or about June 15, 2013.

58. As a proximate result of the Defendants' negligent misrepresentations, the Plaintiffs have suffered damages and injuries described herein.

## FIFTH CAUSE OF ACTION
### NEGLIGENCE

59. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

60. At all material times, the Defendants owed a duty to the Plaintiffs to act with the ordinary care of a reasonable person with respect to all aspects of the services promised including, but not limited to the handling of their minor child's remains for purposes of conducting a proper funeral, as well as, preserving the body for a second autopsy. These duties include but are not limited to following the laws of the State of Georgia in regard to disposition of remains, following its own policies in regard to the proper disposition of remains, the exercise of reasonable acts in hiring, retention, training, and supervision of all agents, employees, and representatives of the Defendants, in connection with such services and transactions, the management and administration of the services and transaction, the association with other persons and entities to accomplish the performance of such services, the individual, proper and respectful performance of all steps of the related processes, and the ascertainment that all such services were being fully and properly undertaken and performed.

61. The Defendants negligently and carelessly failed to discharge these duties.

62. As a proximate cause of the Defendants' negligence, the Plaintiffs have been damaged and injured as described herein.

## SIXTH CAUSE OF ACTION
### NEGLIGENCE PER SE (O.C.G.A. § 31-21-44.2)

63. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

64. The Plaintiffs, as parents of KENDRICK LAMAR JOHNSON, had or have a personal quasi-property right to ensure the proper handling, burial, and preservation of said minor child's remains.

65. The Plaintiffs expressed their wishes to the Defendants regarding the manner in which the remains were to be handled.

66. The Defendants had the opportunity to comply with the Plaintiffs' expressed wishes.

67. Defendants were negligent in at least the following ways:

a.) Failing to implement and/or enforce policies and procedures that would have guarded against portions of their minor child's remains to be thrown away.

b.) Knowingly allowing portions of their minor child's remains to be thrown away and as a result of which, resulted in the injuries and damages to Plaintiffs.

68. Plaintiffs are among the people that O.C.G.A. § 31-21-44.2 was intended to protect.


## SEVENTH CAUSE OF ACTION
### WILLFUL INTERFERENCE WITH REMAINS AND INTENTIONAL MISHANDLING OF CORPSE

69. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

70. The Plaintiffs, as parents of KENDRICK LAMAR JOHNSON, had or have a personal quasi-property right to ensure the proper handling and burial of their minor child's remains.

71. The Plaintiffs expressed their wishes to the Defendants regarding the manner in which the remains were to be handled.

72. The Defendants had the opportunity to comply with the Plaintiffs' expressed wishes.

73. The Defendants, however, willfully and deliberately mishandled their minor child's remains and interfered with the rights and responsibilities of the Plaintiffs to effect the proper disposition of the remains with the utmost dignity, and in accordance with their wishes, requests, and beliefs.

74. The Defendants' mishandling of their minor child's remains and their interference with the rights of the Plaintiffs precluded the Plaintiffs from exercising their rights and performing their responsibilities of appropriately disposing of their minor child's remains.

75. As a direct, known, forseeable, and proximate result of the intentional mishandling of the remains by the Defendants, the Plaintiffs have suffered and continue to suffer injury and damages.

76. In mishandling the remains of their minor child, the Defendants acted intentionally, knowingly, with oppression, fraud and malice, and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## EIGHTH CAUSE OF ACTION
### NEGLIGENT INTERFERENCE WITH REMAINS AND MISHANDLING OF A CORPSE

77. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

78. The Plaintiffs, as KENDRICK LAMAR JOHNSON's next of kin, had or have a person quasi-property right to ensure the proper handling and burial of their minor child's

remains.

79. The Plaintiffs expressed their wishes to the Defendants regarding the manner in which the remains were to be handled.

80. The Defendants had the opportunity to comply with the Plaintiffs' expressed wishes.

81. The Defendants negligently, recklessly, and carelessly mishandled their minor child's remains and interfered with the rights and responsibilities of the Plaintiffs to dispose of the remains in ways authorized by the Plaintiffs, ways that were contrary to their wishes, requests, and beliefs.

82. The Defendants' conduct was accomplished through violation of policies and mishandling of their minor child's remains, resulting from the Defendants' own negligence and negligent entrustment of their minor child's remains to persons who lacked the qualifications, training, sensitivity, experience and integrity required to handle the remains properly and by the Defendants' negligent failure to control, supervise, and investigate the actions of such persons and entities to ensure they complied with applicable policies and laws.

83. As a direct and proximate result of the Defendants' negligent interference with their minor child's remains, the Plaintiffs have suffered and continue to suffer damages and injuries.

## NINTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

84. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceeding paragraphs and further allege:

85. The Defendants' conduct directed toward the Plaintiffs, as described herein, was intentional and/or reckless. It is so outrageous that it is not tolerated by civilized society.

86. As a direct and proximate result of the Defendants' conduct, the Plaintiffs suffered serious mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

87. In their conduct, the Defendants acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of the Plaintiffs. The Plaintiffs are, therefore, entitled to punitive and exemplary damages from the Defendants in such amount as shall be necessary and appropriate to punish the Defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## TENTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

88. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

89. At all material times, the Defendants owed a duty to the Plaintiffs to act with the ordinary care of a reasonable person with respect to all aspects of the services promised, including but not limited to, preserving and keeping from disposal or destruction their minor child's remains. These duties include, but are not limited to: the hiring, retention, training and supervision of all agents, employees and representatives of the Defendants, in connection with such services and transactions; the association with other persons and entities to accomplish the performance of such services; the individual, proper and respectful performance of all steps of the related processes; and the ascertainment that all such services were being fully and properly undertaken and performed.

90. The Defendants negligently and carelessly failed to discharge these duties.

91. As a proximate cause of the Defendants' negligence, the Plaintiffs have suffered serious and severe mental injuries and emotional distress that no reasonable person could be expected, or deserves, to endure.

## ELEVENTH CAUSE OF ACTION
### UNJUST ENRICHMENT

92. The Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

93. The Defendants have been and will continue to be unjustly enriched at the expense of the Plaintiffs by accepting payments from the Plaintiffs for services which they not only failed to render as promised, but which were provided in a completely inappropriate, unauthorized, and egregious manner.

94. It would be inequitable and contrary to law to permit the Defendants to retain the benefits they have wrongfully gained through these actions.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request the following relief:

a. An award of compensatory damages for each Plaintiff, in an amount deemed appropriate by the enlightened conscience of the trier of fact, jointly and severally, against the Defendants;

b. An award of punitive damages, jointly and severally, against the Defendants;

c. An award of pre-judgment and post-judgment interest;

d. An award of costs, including, but not limited to, discretionary costs, attorneys' fees and expenses incurred in pursuing this case;

e.  Any other and further relief this Court deems just and proper; and

f.  Any other and further relief to which they may be entitled.

THE C.B. KING LAW FIRM

BY: _____
      Chevene B. King, Jr.
      Attorney for Plaintiffs

Prepared by:
Chevene B. King, Jr.
Post Office Drawer 3468
Albany, GA  31706
(229)436-0524
State Bar No.:  420105